UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RESH, INC,<br><br>        Plaintiff,<br><br>    v.<br><br>ROBERT CONRAD, INC. d/b/a SKIMLITE MANUFACTURING, et al.,<br><br>        Defendants. | Case No.  5:22-cv-01427-EJD<br><br>**CLAIM CONSTRUCTION ORDER** |

Plaintiff Resh, Inc. brings this suit against Defendants Robert Conrad, Inc., d/b/a Skimlite Manufacturing; James R. Conrad; and Barrett R. Conrad for infringement of U.S. Patent No. 11,141,852, entitled "Telepole Apparatus and Related Methods." The parties dispute the construction of eight terms. After considering the intrinsic and extrinsic evidence, as well as the parties' arguments at hearing, the Court construes the disputed terms as set forth below.

**I.  BACKGROUND**

Defendant Robert Conrad, Inc., d/b/a Skimlite Manufacturing ("Skimlite"), is a California corporation principally owned by Defendants James and Barrett Conrad (father and son, respectively). Pl. CC Br. 1–2. Skimlite has been selling and manufacturing swimming pool poles since the 1950s, primarily poles that utilize twisting and clamping technology to extend and lock the poles' lengths. First Am. Compl. ("FAC") ¶¶ 49–51.

Plaintiff Resh, Inc. ("Resh") is a California corporation run by husband and wife, Eric and Jenel Gonzalez Resh. FAC ¶ 2. Eric Resh started working as a pool man in the late 1980s cleaning other people's swimming pools and has since "invented and patented a number of improved swimming pool tools to assist pool men as well as homeowners." Pl. CC Br. 2. This

includes the patent-in-suit, U.S. Patent No. 11,141,852 invention for "Telepole Apparatus and Related Methods." Resh's pool poles use a button and detent to extend and lock the pole length instead of twisting and untwisting like Skimlite's poles.

The Complaint alleges that Skimlite had been manufacturing "twist-and-clamp" pool poles for nearly 60 years until Defendant James Conrad encountered Resh's "button detent" poles at a 2012 trade show. FAC ¶¶ 70–71. Since then, Skimlite has allegedly been designing infringing pool poles using Resh's button detent technology. Specifically, Skimlite's new "SnapLite" poles use a self-described "snap button lock" technology. *Id.* ¶ 79.

## II.   LEGAL STANDARD

### A.   Claim Construction

Claim construction is a question of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (citation omitted). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id*. (citation omitted).

When construing disputed terms, courts begin with "the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (citations omitted). That is because "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (citation omitted). The words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1312–13 (citations omitted). A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313. Thus, courts "have long emphasized the importance of the

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
2

specification in claim construction." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (citation omitted). They have explained that the specification is "always highly relevant" and "[u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The prosecution history of a patent—which "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office]"—is also intrinsic evidence of a claim term's meaning. *Id.* at 1317. But since the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Any limitation or disclaimer of claim scope based on prosecution history must constitute "unmistakable [and] unambiguous evidence of disclaimer." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (internal citations omitted).

Finally, the court is also authorized to consider extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 (internal citations omitted). Although the court may consider evidence extrinsic to the patent and prosecution history, such evidence is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1317–18 (citation omitted). While extrinsic evidence may be useful in claim construction, ultimately "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence" and may not be used to "contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.* at 1319, 1324.

**B.     Indefiniteness**

Section 112 requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C § 112(b). The Supreme Court has held that a patent is invalid for indefiniteness if its claims—read in light of the specification delineating the patent

1    and the prosecution history—fail to inform a person of ordinary skill in the art about the scope of

2    the invention with reasonable certainty. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S.

3    898, 901 (2014). The dispositive question is whether the claims—and not specific claim terms—

4    would fail to provide notice of the invention's scope. *Cox Commc'ns, Inc. v. Sprint Commc'n Co.

5    LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016). Indefiniteness must be proven by clear and convincing

6    evidence. *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III.   CLAIM CONSTRUCTION

The parties originally identified 10 disputed terms in their joint claim construction statement. However, in their responsive claim construction brief, Defendants withdrew two of their disputed terms. The Court, therefore, only addresses the eight remaining terms.

### A.   "elongated [outer/inner] tube" (Claim 1)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| A first axially extended external tube; a second axially extended internal tube; with cross-sections configured and sized so that the second tube can be placed within the first tube and thereby have an "inner/outer" relationship with each other, with the tubes making a "long pole for manually skimming a pool," in contrast to being short like the mounting bracket 34 shown in the McFarland '181 patent | Indefinite (none) | Plain and ordinary meaning |

Defendants claim that this term is indefinite because of the descriptor "elongated." Defs. CC Br. 13–14. Because the terms "outer tube" and "inner tube" appear in other terms without "elongated," they argue that the canon of claim differentiation would teach that an "elongated outer tube" is different from just an "outer tube." Plaintiff proposes a construction of "elongated" to mean "with the tubes making a 'long pole for manually skimming a pool,' in contrast to being short like the mounting bracket 34 shown in the McFarland '181 patent." Pl. CC Br. 7.

The Court disagrees with Defendants' argument that "elongated" renders the entire Claim

1 indefinite, such that a person of ordinary skill in the art ("POSITA") could not determine the invention's scope with reasonable certainty. Defendants first rely on the doctrine of claim differentiation to demand that some meaning be ascribed to "elongated" in Claim 1 that is not already captured by the phrases "outer tube" and "inner tube" in Claims 2 and 20. Def. CC Br. 13–14; *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims."). Here, however, an "elongated [outer/inner] tube" *can* be differentiated because only Claim 1—and not Claims 2 or 20—contains a separate limitation describing the functional lengths of the invention. '852 Patent col. 17 l. 50–55. This length limitation also provides objective and functional boundaries for a POSITA to understand the degree of "elongated," thereby providing further definiteness to the term. *See generally infra* Section III(C).

Plaintiff contend that the prosecution history provides further definiteness because it indicates that "elongated" is intended to distinguish the '852 pole from a "short" pole utilized in the McFarland '181 invention. Pl. CC Br. 7–8; Defs. CC Br. 14–15. The McFarland '181 invention is an apparatus for "mounting a pool skimmer or strainer net alongside an edge of a pool in order to clear the pool of floating debris as the water circulates in the pool." Smith Decl., Ex. 9 ("'181 Patent"), 1:9–13. The prosecution history indeed reflects the '852 patentee's efforts to distinguish a telescoping pole from the '181 Patent's "short stub" by emphasizing the "significant lever arm distance" between a user and a tool affixed to the end of the pole. Smith Decl., Ex. 2 ("'852 History"), at 59, ECF No. 50-2, at 59 (noting that "the user is gripping the extended pole at a location near the *remote* end of a substantially long pole, typically a significant distance from the attachment holes").

Defendants, however, respond to Plaintiff's arguments by noting the plain and ordinary meaning of "elongated" (which they contend is "longer than it is wide") would not distinguish the '852 Patent from the '181 Patent's "short stub" pole, which is also technically longer than it is wide, albeit by a smaller margin. Def. CC Br. 15. The Court cannot confirm the dimensions of

the '181 Patent's "short" pole from the presented evidence nor is it fully convinced that the plain and ordinary meaning of "elongated" is necessarily the definition Defendants have advanced. In any event, because the Court finds that Claim 1 does contain objective boundaries for the term "elongated," a POSITA—who is familiar with both telescoping pool poles and mounted pool-side skimmers, and who has reviewed the '852 Patent's prosecution history—would have reasonable certainty as to the scope of the "elongated" term in Claim 1.

In summary, the Court does not find the term "elongated" to be indefinite and will accord this term its plain and ordinary meaning.

### B. "said selective sliding action of the tubes causing the respective distance between the grip . . . and said actuated detent . . . to change" (Claim 1)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| A user's choice to actuate the detent allows the tubes to slide with respect to each other, which results in the movement (toward or away from each other) of the grip and the detent | Indefinite (none) | Plain and ordinary meaning |

Defendants argue that this claim term is indefinite because it describes an action that must be taken to effectuate the claim language and, therefore, is claiming both an apparatus and a method for use. As a result, a "manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." Defs. CC Br. 21 (citing *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)). Specifically, Defendants are focused on the language "causing the respective distance . . . to change," which they argue indicates that a sliding action must occur to ascertain infringement.

The Court begins by noting that Plaintiff's proposed construction ("a user's choice to actuate the detent allows the tubes to slide with respect to each other") is a non-starter. The reference to a "user" is nearly directly analogous to claims that the Federal Circuit has found to be indefinite for mixing method and apparatus limitations. *See, e.g,. IPXL*, 430 F.3d at 1384 ("the

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER

6

user uses the input means"); *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1336 (Fed. Cir. 2014) ("user completes" and "user selects"). However, Plaintiff also suggests that the Court may construe this limitation by its plain meaning. CC Hr'g Tr. 70:9–13.

      Turning then to this term's original language in the claims, the Court finds that this term's plain and ordinary meaning describes only the apparatus and its capabilities without also capturing a method for usage. To start, the subject of the disputed term ("said selective sliding action") refers to the immediately preceding condition: "said first end [of the inner tube] being received in said slidable relationship within said outer tube." '852 Patent col. 17 l. 43–45. Because these terms are couched as events (*e.g.*, "being received," "sliding action . . . causing"), Defendants submit that this limitation requires a user to first engage the "selective sliding action" in a way that "caus[es] the respective distance . . . to change" before infringement could be ascertained. Defs. CC Br. 21. This stilted syntactical interpretation, however, misses the forest for the trees. A POSITA understands that the invention is a telescoping pole, the core premise of which is that they "[c]ommonly . . . utilize two separate lengths of tubing," configured so that one tube slides within another and may be locked at certain lengths. '852 Patent col. 2 l. 18–23. In this context, therefore, the passive gerunds "being received" and "causing" would be understood as characterizing the invention's telescoping functions, not as active verbs describing a user's actions. Contrary to the language that *IPXL* and *H-W Tech* found to be indefinite (*i.e.*, "users uses," "user completes," "user selects"), the phrases "sliding action *of the tubes*" and "causing" do not presuppose any such user—it is the *tubes'* sliding that *causes* the pole's length to change, which simply describes the telescoping pole's capability. When the tubes slide, the length of the pole changes. The Court does not read this term to also be claiming the "method" of a user using the telescoping pole as intended.

      In short, Defendants' proposed construction relies on a wooden interpretation that projects a faceless user onto the "sliding action of the tubes," an interpretation that is not supported by the intrinsic evidence or the basic background available to a POSITA. Accordingly, the Court rejects Defendants' indefiniteness argument and will accord the term its plain and ordinary meaning.

C. **"the lengths . . . being sufficient to permit a user . . . to manipulate the . . . tool . . . against the bottom of a swimming pool while the user is standing on the side of the pool" (Claim 1)**

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| The interlocked tubes are long enough to allow a user standing on the side of the pool to hold the grip end of the pole and push a cleaning tool at the other end of the pole against the bottom of the pool | Indefinite (none) | Plain and ordinary meaning |

Defendants argue that this term is indefinite because the necessary length to permit a user to perform these actions depends on the depth of the pool and how far away a user is from the pool's edge. Defs. CC Br. 11–12. As a result, a POSITA cannot assess whether a product infringes on the patent without experimenting on every new pool, so the argument goes. Plaintiff counters that the entire point of the invention is to allow a pool cleaner to adjust the pole's length to accommodate different pools. Pl. Reply Br. 12–13. Plaintiff proposes a construction that adds language that "the interlocked tubes are *long enough* to allow a user" to use the tool to clean the bottom of a pool but also accepts that the plain meaning is acceptable. CC Hr'g Tr. 73:11–14.

The Court finds that this term is not indefinite and will accord the term its plain and ordinary meaning. Defendants' indefiniteness argument would effectively demand specific length limitations from a patent claiming an *adjustable* telescoping pole. This theory is not supported by the specification, which expressly acknowledges that the specific length of a pool pole will "depend[] on a number of factors, such as the depth of the pool, the strength of the person using the tool, the particular tool being used." '852 Patent col. 2 l. 23–26. Second, even if the precise boundaries of the pole's length and the claim's scope are not described down to the inch, a POSITA would understand that this term sets out a functional minimum for the product's length, *i.e.*, the length needs to be "sufficient" for a user to clean a pool. '852 Patent col. 17 l. 51–55.

As a result, the plain and ordinary meaning of this term would avoid the indefiniteness discussed in *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008),

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER

8

which is Defendants' primary cited authority.  Unlike in *Halliburton* where practitioners would have been required to comprehensively test whether a gel was mechanically "fragile" enough to infringe the patent, the length of a pole is readily apparent and needs no such *ad hoc* pool-by-pool testing.  Shoehorning *Halliburton*'s reasoning into the facts of this case—which Defendants attempt by contending that a POSITA must "test[] the pole in every circumstance for every user" to determine if a particular pole's length would infringe—would be antithetical to the basic premise of an adjustable pole.  *See* '852 Patent col. 2 l. 18–29.  Moreover, the Federal Circuit has consistently noted that claims are not "not per se indefinite merely because they contain functional language"; indeed, in certain circumstances such as the one here, "functional language promotes definiteness because it helps bound the scope of the claims by specifying the operations that the [invention] must undertake."  *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016).  Here, the functional language set forth in Claim 1 specifies that the pool pole should be at least long enough to clean pools.  Such a term requires no construction.

### D. "hollow along at least substantially its length" (Claim 2)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| The inner tube has an unfilled or hollowed-out space within it, along most or all of its length | Indefinite (none) | Plain and ordinary meaning |

Defendants dispute this term on two grounds: (1) Plaintiff cannot cite to any tube that is hollow *along less* than its entire length, *i.e.*, all tubes Plaintiff identified are hollow along their entire length; and (2) even if there are some tubes that are hollow along less than its full length, the adverb "substantially" does not give any clarity as to how much of the tube can or cannot be hollow.  Defs. CC Br. 17–18.  Plaintiff's proposed construction states that "the inner tube has an unfilled or hollowed-out space within it, along most or all of its length," utilizing the adjective "most" instead of the adverb "substantially."  Pl. CC Br. 11–12.  Plaintiff also notes that some pool poles may use a buoyancy plug positioned at the end of the inner tube that would plug some portion of the tube's hollow space, thereby rendering the tube not entirely hollow.  *Id.*

Because the parties' dispute appears to revolve around the contours of the adverb

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
9

"substantially," the Court will focus its analysis on whether "substantially" renders this claim indefinite. As a general matter, "[i]t is well settled law that terms of degree such as 'about,' 'relatively,' 'partially,' and 'substantially' do not automatically brand a claim indefinite." *Affymetrix, Inc. v. Hyseq, Inc.*, 132 F. Supp. 2d 1212, 1229 (N.D. Cal. 2001). These terms are sufficiently "definite when the patent 'provides some standard for measuring that degree . . . where the patent provides examples, or where the claims themselves recite functional limitations that determine the meaning of the terms." *Impinj, Inc. v. NXP USA, Inc.*, 2021 WL 4221659, at *3 (N.D. Cal. Sept. 16, 2021) (internal citations omitted).

      Here, the Court finds that the patent claims and specification provide sufficient examples and standards for a POSITA to measure the degree of "substantially" in the disputed term. First, the specification states that a "preferred lightweight design may be at least partially hollow *along the length* of the tube(s)." '852 Patent col. 6 l. 50–54 (emphasis added). In this recitation, there is no qualification as to what portion of the tube should be hollow—the tube is partially hollow along its *entire* length.[1] This excerpt also indicates that the term "hollow along at least substantially its length" provides some functional boundaries—the tube should be hollow enough to lightweight the pole design. *See Impinj*, 2021 WL 4221659, at *4 (rejecting indefinite arguments where "there is a functional limitation that determines whether the shape meets the claims"); *Legacy Separators LLC v. Halliburton Energy Servs. Inc*, 2016 WL 3017140, at *9 (S.D. Tex. May 26, 2016) (rejecting indefiniteness where a POSITA "would understand that the use of the word 'substantially' means as much separation as possible 'to obtain good performance and life from the ESP'"). Second, as Defendants concede, the '852 Patent contains several different examples of tube configurations with hollow portions that are hollow along their entire length. Def. CC Br. 17 (citing '852 Patent figs. 3b, 3c 3d, 4a). Although Defendants flag this as evidence that there is no tube configuration that is less than entirely hollow, they also do not

---

[1] It is worth clarifying that the Court does not consider the qualifier "at least partially" in this excerpt, because the qualifier only modifies "hollow" and not the length of the tube. This is distinguishable from the disputed term "along at least substantially its length," where the qualifier modifies the length, not the tube's hollowness.

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
10

adduce any evidence that suggests a POSITA would lack reasonable certainty when confronted with such hypothetical tube configurations. To the contrary, the specification's consistent use of fully hollow examples would provide useful guidance to the POSITA as to the meaning and scope of this term. *See Impinj*, 2021 WL 4221659, at *4 ("[T]he specification provides multiple examples of shapes that meet these claim requirements. That also provides guidance.") (internal citation omitted). Finally, the disputed adverb "substantially" appears again in a later claim that Defendants do not challenge for indefiniteness, where it is also mentioned in relation to the length of the pole. Specifically, Claim 6 notes that the inner and outer tubes are in a keyed relationship that exists "at *all or substantially all* of the positions in which said inner tube can be selectably position within said outer tube." '852 Patent col. 18 l. 27–29 (emphasis added). And consistent with the other two points, the close association with "all" provides yet another indication that "substantially" should be construed as some proportion that is near the tube's full length.

Although this disputed term does not specify with mathematical precision as to the exact proportion of a pole that must be hollow, "[s]ome modicum of uncertainty . . . is the price of ensuring the appropriate incentives for innovation." *Nautilus*, 572 U.S. at 909; *see also Sonix*, 844 F.3d at 1377 ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement."). With respect to this term, the Court finds that intrinsic evidence provides sufficient examples and language that would permit a POSITA to determine the scope of this claim with reasonable certainty.

E. **"keyed" (Claims 1, 6–8, 24)**

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Shaped to prevent relative rotation of the tubes | Plain and ordinary meaning, which is "[having/has] a groove or channel for a key" | Shaped to prevent relative rotation of the tubes |

Defendants contend that "keyed" should be accorded its plain and ordinary meaning, which they define as "having a groove or channel for a key." Defs. CC Br. 4–8. Plaintiff argues that Defendants' construction is improperly narrow and proposes a construction for "keyed" that would mean "shaped to prevent relative rotation of the tubes." Pl. CC Br. 12–13.

Turning first to Plaintiff's construction, the Court finds this construction to be supported by the intrinsic evidence. Throughout the patent specification and claims, *each and every* reference to "keyed" is accompanied by elaboration that the keyed pieces should not rotate with respect to each other. *See, e.g.*, '852 Patent col. 8 l. 8–11; col. 12 l. 48–63; col. 15 l. 56–61; col. 17 l. 34–36; col. 18 l. 24–46; col. 20 l. 36–38. Where a potentially broad term (*e.g.*, keyed) is consistently and uniformly accompanied by a separate limitation (*e.g.*, preventing relative rotation of the tubes), the Federal Circuit has incorporated that separate limitation into the construction of the term. *See, e.g.*, *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (construing "fuel injection system component" to mean only "fuel filter" because every reference in the description specified a fuel filter); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) (construing "board" to mean only wooden boards because the "written description and prosecution history *consistently* use the term 'board' to refer to wood decking materials cut from a log") (emphasis added); *AquaTex Indus., Inc. v. Techniche Sols.*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (construing "fiberfill" to mean only synthetic fiber because it was consistently used to refer to synthetic materials and never natural materials). Even Defendants' own extrinsic evidence supports a construction of "keyed" that contains a rotational limitation. Smith Decl., Ex. 7, at 442, ECF No. 50-7, at 11 ("Keys . . . are used on shafts to *secure rotating elements*.") (emphasis added). A POSITA reviewing the patent's consistent usage of "keyed" would understand that "keyed" tubes are shaped and designed to prevent them from rotating with respect to each other— indeed, the POSITA would have no occasion to entertain a concept of "keyed" *without* a rotational limitation, as none exist in the patent.

Defendants contend that the separate references of the rotational limitation would rebut a functional construction of "keyed," because to do so would render superfluous all those separate and express recitations of the rotation limitation. Defs. CC Br. 7–8. Although the Court acknowledges that the doctrine of claim differentiation would generally counsel against construing "keyed" to contain a rotational limitation, the Federal Circuit has also clarified that "this doctrine is not a rigid rule but rather is one of several claim construction tools." *ICU Med., Inc. v. Alaris*

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
12

*Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009) (rejecting argument that a term cannot include a limitation lest another claim be rendered superfluous); *see also Tools Aviation, LLC v. Digital Pavilion Elecs. LLC*, 2021 WL 5920142, at *13 (E.D.N.Y. Dec. 15, 2021) ("Although an invention claimed in purely structural terms generally resists functional limitation, it is entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language.") (internal quotation marks, brackets, and citation omitted).  In this case, the overwhelming consistency by which "keyed" is associated with the rotational limitation supports rebutting the canon of claim differentiation.  Moreover, construing "keyed" to encompass a rotational limitation would be consonant with and resolve Defendants' insistence that "keyed" cannot be equated with "matched."  Defs. CC Br. 7 ("Matched profiles and keying are different.").

In adopting Plaintiff's construction, the Court rejects Defendants' construction of "keyed," which reads the term to require that the tubes have a "groove or channel for a key."  The intrinsic evidence simply does not support such a limitation.  <u>First</u>, the terms "groove" or "channel" appear nowhere in the specification or the claims, much less with any proximity to "keyed."  Defendants are only able to cite to Figure 14 as support, which reflects a cross-section design described as "one potential embodiment" and notably *not* described as "keyed."  '852 Patent col. 15 l. 66 – col. 16 l. 5.  In any event, "importing [a] limitation from an embodiment in the figures . . . is improper."  *Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1377 (Fed. Cir. 2022).  <u>Second</u>, Defendants assembled their construction by purportedly first consulting a mechanical engineering textbook that associates keys with "keyways," and then consulting a general dictionary's definition of "keyway" to arrive at the phrase "a groove or channel for a key."  Defs. CC Br. 5 (citing Smith Decl. Exs. 7, 8).  The linguistic contortion required to reach Defendants' construction undermines their attempt to portray this definition as the plain and ordinary meaning for "keyed."  <u>Finally</u>, although the specification describes some potential embodiments that could resemble the "groove or channel" design Defendants reference, the specification does not use the term "keyed" to describe these specific types of design or embodiment.  *See* '852 Patent col. 14 l. 11–16 ("In another alternative embodiment of the present invention, the inner tube may be

provided with *notches* [] *about its circumference . . . that correspond to protrusions/tabs . . . to prevent the inner tube from excessively or undesirably rotating within the outer tube during use.*"); col. 15 l. 66 ("In one potential embodiment . . . an outer tube may be provided with an *inward/interior-facing protrusion* [] within its profile, and an inner tube may correspondingly have an *indention* [] within its profile."). In any event, even if some tubes with a "groove or channel" may also be considered "keyed" under the Court's construction so long as the groove or channel prevents unwanted rotation, there is no intrinsic support for Defendants' contention that "keyed" *necessarily* includes a "groove or channel."

Accordingly, given the consistent intrinsic and extrinsic evidence available in this case, the Court construes "keyed" to mean "shaped to prevent relative rotation of the tubes."

### F.   "relatively lightweight material" (Claim 19)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Not a heavy material | Indefinite (none) | Plain and ordinary meaning |

Defendants argue that "relatively lightweight" is indefinite because, even if "lightweight" can be understood to mean aluminum or fiberglass (materials that are referenced in the specification), a POSITA would not know what "relatively" lightweight means. Defs. CC Br. 12–13. Defendants also point out that the indefiniteness is exacerbated by the fact that the specification is inconsistent in giving examples of "lightweight" materials. *Id.* Plaintiff proposes a construction of "not a heavy material."

Although this term is not a paragon of clarity on its own, the Court finds that Defendants have failed to demonstrate by clear and convincing evidence that a POSITA would not be able to ascertain the scope of Claim 19 with reasonable certainty. Because "relatively" is a term of degree, the Court must consider whether the patent contains sufficient "objective boundaries" for a POSITA to determine the scope of what is a "relatively lightweight material." *See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1349 (Fed. Cir. 2022). Here, the specification describes a wide variety of materials and their relative qualities: handles made of hard wood are stronger but also weigh more than soft wood handles; metal tubes may be heavy

and bend under pressure; and synthetic handles like plastic or fiberglass may also be heavy, lack strength, or fail for other reasons. *See* '852 Patent col. 1 l. 46–57. More specifically, the specification notes that telepole tubing is typically made from "aluminum, fiberglass, or some other light, yet relatively strong material" (*id.* col. 2 l. 30–31), but it also remarks that the invention "can be practiced using any of a wide variety of suitable processes and materials" and that "[m]aterials are not limited in any way and could extend from metals to plastics, to resins of all types" (*id.* col. 10 l. 44–57). Aluminum also appears multiple times throughout the specification with Claim 19 specifically citing aluminum as a "relatively lightweight" material. *See id.* col. 2 l. 30–31; col. 6 l. 46–48; col. 19 l. 16–18. These examples indicate that the composition limitation in Claim 19 is "broad, but [] not uncertain." *Niazi*, 30 F.4th at 1349; *see also id.* ("[E]xamples in the written description helped provide sufficient guidance to render the claims not invalid as indefinite."); *see also Actavis Lab'ys UT, Inc. v. UCB, Inc.*, 2016 WL 3678987, at *9 (E.D. Tex. July 11, 2016) (declining to find "relatively rigid" as indefinite, noting that "the term 'relatively' clarifies that the claim is not referring to absolute rigidity"). A POSITA would be familiar with the materials used to manufacture pool poles, and the specification's examples would provide objective boundaries to cabin Claim 19's "relatively lightweight" term.

To the extent that Defendants contend that the specification is inconsistent in its characterizations of fiberglass, the Court does not find the specification's language to be so fatally contradictory as to render the term "relatively lightweight" indefinite. The passages in question are as follows: (1) "[i]t is also common for handles on shovels, rakes, brooms, etc. to be made from synthetic materials such as plastic or *fiberglass*; such handles likewise *may be heavy*, lack strength or fail for other reasons," '852 Patent col. 1 l. 53–57 (emphasis added); and (2) "[t]ypically, telepole tubing is made from aluminum, *fiberglass*, or some other *light, yet relatively strong* material." *Id.* col. 2 l. 30–31 (emphasis added). Contrary to Defendants' argument, these excerpts are not inconsistent when read in their corresponding contexts. The first passage mentions fiberglass as used for a shovel or broom handle, whereas the second passage discusses fiberglass as a material for telescoping poles. The first passage's criticisms of fiberglass handles

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
15

are also couched in the disjunctive—the handles "*may be* heavy, lack strength *or* fail for other reasons."[2] The Court will not construe this discussion of prior art in the specification to mean that fiberglass is a categorically "heavy" material or allow it to cast doubt onto Claim 19's "relatively lightweight" term. *See Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1363 (Fed. Cir. 2019) (rejecting perceived inconsistency argument because "examples in the specification may be used to inform . . . *without being directly construed into the claim*") (emphasis added). The Federal Circuit has likewise declined to construe claims as indefinite based on a single perceived inconsistency in the patent specification, especially where a POSITA could readily differentiate between the two characterizations. *See Niazi Licensing*, 30 F.4th at 1350 (reversing indefiniteness holding where the perceived inconsistency arose from a "single sentence in the written description" regarding stiffness and flexibility); *Guangdong Alison Hi-Tech*, 936 F.3d at 1363.

In summary, although the term and the specification's commentary could be clearer, the Court does not find that Defendants have demonstrated by clear and convincing evidence that "relatively lightweight material" fails to give a POSITA notice about the scope of Claim 19.

### G. "readily slide" (Claim 21)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| The tubes can move smoothly with respect to each other without much difficulty as the user extends and/or collapses the pole | Indefinite (none) | Plain and ordinary meaning |

Defendants argue that this term is indefinite by virtue of the adverb "readily." They point out that other claims require the tubes to be "slidable" or "slidably positioned"; therefore, "readily slide" must mean something else that is more than just slidable. Defs. CC Br. 20. Plaintiff proposes a construction that states, "the tubes can move smoothly with respect to each other

---

[2] The disjunctive nature of this remark is further evidenced by the observation that a material's heaviness is often inversely correlated with a lack of strength. *See* '852 Patent col. 1 l. 49–51 ("Sometimes manufacturers use harder woods to reduce such breakage; however, hard woods tend to weigh more than softer woods.").

without much difficulty as the user extends and/or collapses the pole." Pl. CC Br. 13–14.

Defendants are correct that, under the doctrine of claim differentiation, the use of "readily slide" in Claim 21 is presumed to result in a difference in meaning and scope from the recitation of "slide" in Claims 1, 2, 8, 9, and 20. *See Clearstream*, 206 F.3d at 1446. The Court, however, does not find that a POSITA would be confused by the term "readily slide," to the point that they cannot reasonably ascertain whether a set of tubes would fall within this limitation. As described in the specification, a POSITA familiar with telepoles and the prior art would understand that such poles involve outer and inner tubes, sometimes with a "gripping element [that] serves to prevent the inner tube from *sliding completely* into the outer tube." '852 Patent 3:16–18 (emphasis added). The POSITA would also know that poles with cam elements can sometimes "*freely slide* within the outer tube" and at other times "appl[y] a pressure against the inner walls of the outer tube and 'locks' the inner tube in place." *Id.* 3:24–38; *see also id.* 4:14–19 ("[T]he cam may also spontaneously align itself with the inner walls of the tube, thus permitting the tubes to *readily slide* past one another.") (emphasis added). And finally, a POSITA will also notice the multiple instances where the specification describes the invention's inner tube as being able to "readily slide" in relation to a collar or outer tube. *Id.* 11:1–6; 13:6–10. These examples provide objective boundaries for a POSITA to determine the scope of how "readily" the tubes may slide.

The Court finds that the intrinsic evidence provides sufficient examples and guidance such that a POSITA can understand the scope and meaning of "readily slide" with reasonable certainty.

### H.   "generally round with at least one flat side" (Claim 24)

| Plaintiff's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Having a cross-section that is approximately circular and also includes a generally level or even portion | "a D-shape"; otherwise, indefinite | Having a cross-section that has at least one flat side and at least one round or non-flat side |

Defendants propose that this term be construed to mean "a D-shape." Otherwise, they argue that this term would be indefinite because "generally round" is unclear. Defs. CC Br. 10. Plaintiff proposes a construction that this term means "approximately circular and also includes a

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
17

generally level or even portion."

As a preliminary matter, the Court will dispense with Defendants' indefiniteness argument, because the specification contains numerous figures of cross-sections and embodiments that would fall under this term. *See* '852 Patent col. 8 l. 57–65; *see also id.* figs. 3, 3a, 3b, 3c, 3d. These embodiments provide sufficiently concrete examples that would allow a POSITA to determine the objective bounds and scope of this claim. Additionally, the prosecution history also reveals that the term "generally round" describes a functional limitation that reduces the discomfort of gripping a pole with sharp edges. *See* '852 History, at 87 ("The hexagonal profile/shape and relatively sharp elongated edges of Mr. LongArm's inner tube would be very uncomfortable and even painful to grasp . . . when cleaning a swimming pool."). Read alongside the intrinsic evidence, the Court does not find that the term "generally round" renders Claim 24 indefinite.

With respect to the parties' competing constructions, the Court finds neither acceptable. Defendants' proposed construction of a "D-shape" cross-section is far too narrow, as the express language of the term contemplates "*at least* one flat side." This indicates that there may be more than one flat side to the cross-section, as evidenced by the possible embodiments in Figures 3, 3a, 3b, 3c, and 3d. '852 Patent 8:57–65. Plaintiff's construction of "approximately circular" and "generally level," however, is too broad. First, the specification only mentions "circular" once and does not equate it with "round"; rather, it associates "circular" with "*uniformly* round." *See* '852 Patent col. 16 l. 20–21 (describing "an outer tube whose profile is not uniformly round/circular along its length"). A construction involving uniform roundness would exclude several referenced embodiments that are visibly *not* uniformly round and contain off-set straight edges. *See* '852 Patent figs. 3, 3a, 3b, 3c, 3d. Second, the Court is skeptical about Plaintiff's attempt to construe "one flat side" to mean "a generally level or even portion." Claim 24 expressly recites a flat side without any qualification—Plaintiff's injection of "generally" broadens the scope of the claim beyond this language and is not supported by any intrinsic or extrinsic evidence presented. Accordingly, the Court declines to adopt either party's proposed constructions.

Instead, the Court will construe this disputed term to refer to a tube cross-section that has

"at least one flat side and at least one round or non-flat side." This construction gives meaning to Claim 24's requirements for both round and flat elements to the cross-section, as well as avoids conflating "round" with "circular" as noted above. This construction also includes all the various cross-section embodiments mentioned in the specifications, while excluding cross-sections that do not contain *any* round elements.

## IV.   CONCLUSION

For the reasons set forth above, the Court construes the disputed terms, as follows:

| Claim Terms | Court's Construction |
| --- | --- |
| "elongated" | Plain and ordinary meaning |
| "said selective sliding action of the tubes causing the respective distance between the grip . . . and said actuated detent . . . to change" | Plain and ordinary meaning |
| "the lengths . . . being sufficient to permit a user . . . to manipulate the . . . tool . . . against the bottom of a swimming pool while the user is standing on the side of the pool" | Plain and ordinary meaning |
| "hollow along at least substantially its length" | Plain and ordinary meaning |
| "keyed" | Shaped to prevent relative rotation of the tubes |
| "relatively lightweight material" | Plain and ordinary meaning |
| "readily slide" | Plain and ordinary meaning |
| "generally round with at least one flat side" | Having a cross-section that has at least one flat side and at least one round or non-flat side |

**IT IS SO ORDERED.**

Dated: December 7, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:22-cv-01427-EJD
CLAIM CONSTRUCTION ORDER
19