UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RESH, INC,<br><br>    Plaintiff,<br><br>v.<br><br>BARRETT CONRAD, et al.,<br><br>    Defendants. | Case No. 22-cv-01427-EJD   (VKD)<br><br>**ORDER RE FEBRUARY 13, 2024 DISCOVERY DISPUTE; ADMINISTRATIVE MOTION TO SEAL**<br><br>Re: Dkt. Nos. 95, 96 |

Plaintiff Resh, Inc. ("Resh") and defendants Robert Conrad, Inc. ("Skimlite"), Barrett Conrad, and James Conrad ask the Court to resolve their dispute concerning certain questions the named inventor was instructed by counsel not to answer during his deposition. Dkt. No. 95. The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court orders Resh to produce the named inventor for further deposition to answer Skimlite's questions regarding how he prepared the drawings of the alleged invention.[1]

**I.   BACKGROUND**

In this action, Resh alleges that defendants infringe its U.S. Patent No. 11,141,852, which is directed to a telescoping pole for cleaning pools. Dkt. No. 1 ¶ 24, Ex. A. Eric Resh is the

---

[1] Along with this joint discovery dispute letter, Skimlite filed an administrative motion to consider whether another party's material should be sealed regarding two pages of Mr. Resh's deposition. *See* Dkt. No. 96. In it, Skimlite represents that these pages contain information designated by Resh as "highly confidential—attorneys' eyes only" under the parties' stipulated protective order. *Id.* at 2. Resh has not filed a timely statement or declaration requesting this material be sealed, as required by Civil Local Rule 79-5(f)(3). Accordingly, the Court denies the administrative motion to seal and unseals the provisionally sealed materials at Dkt. No. 96-3. *See* Civil L.R. 79-5(f)(3), (g)(2).

1    named inventor of the '852 patent. *Id.* Defendant Skimlite took Mr. Resh's deposition on January
2    30, 2024. Dkt. No. 95-1. During the deposition, Mr. Resh testified that "after [he] talked to [his]
3    patent attorney," he "started making drawings" of the alleged invention using the Microsoft Paint
4    software program. *Id.* (Resh dep. 55:2-56:5). Mr. Resh explained that he has been unable to find
5    the drawings he made. *Id.* (Resh dep. 56:10-22).

6        Mr. Resh testified that after he filed an application for a patent on the alleged invention, he
7    took steps to put the pole "into production." *Id.* (Resh dep. 64:14-22). As part of that effort, Mr.
8    Resh testified that he showed the drawings he had made using Microsoft Paint to a representative
9    of a company that had previously made nets for Resh, although at a different point in his
10   testimony he seemed to say he was not sure whether he had shown those drawings or other
11   drawings to the representative. *See id.* (Resh dep. 64:25-66:25; 72:19-21).

12       Apparently, Mr. Resh had two prior art pool poles in his possession at the time he made the
13   drawings of his alleged invention. *See* Dkt. No. 95 at 1. He was asked a series of question
14   regarding whether and how he used the prior art poles in preparing the drawings. Resh's counsel
15   instructed him not to answer the following questions:

16       "Q. Did you refer to them [i.e. the prior art poles] when you were working
17   on your drawings of your idea?'

18       "Q. Did you use the Shure or Mr. Longarm poles [as references] when
     you were making your MS Paint drawings?"
19
20       "Q. And when you were making the drawing in Figure 1 [of the '852
     patent],did you use [the Mr. Longarm pole] as a reference?"

21

22   Dkt. No. 95-1 (Resh dep.61:15-16; 62:19-21; 72:3-4). In addition, when Skimlite's counsel asked
23   whether his patent attorney had instructed him to prepare the Microsoft Paint drawings of the
24   alleged invention, Rush's counsel instructed Mr. Resh not to answer that question. *Id.* (Resh dep.
25   62:13-14).

26       Skimlite moves to compel Mr. Resh's answers to these questions. Resh objects that the
27   questions seek disclosure of information protected by the attorney-client privilege and the attorney
28   work product doctrine.

## II. LEGAL STANDARD

The parties do not directly address whether the Court should apply Federal Circuit law or Ninth Circuit law.[2] Here, the dispute concerns drawings of the alleged invention made by an inventor. Neither party explains how the unanswered questions regarding Mr. Resh's access to and use of prior art poles in preparing these drawings are relevant to any claim or defense. However, the Court understands from the pleadings and from prior discovery disputes that defendants contend that the two prior art poles anticipate the asserted claims of the '852 patent. *See, e.g.*, Dkt. No. 41. Because a determination of the applicability of the attorney-client privilege and the attorney work product doctrine implicates the substantive patent law issue of invalidity, the Court concludes that Federal Circuit law applies. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (2000) (applying Federal Circuit law to the question of whether attorney-client privilege protects invention records relevant to the issue of inequitable conduct).

The attorney-client privilege protects from discovery a client's confidential communications to an attorney for the purpose of obtaining legal advice, as well an attorney's confidential communications to a client for the purpose of providing legal advice. *In re Spalding,* 203 F.3d at 805 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390, 396 (1981)). The rule is no different in the Ninth Circuit. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "The work-product doctrine protects from discovery documents, tangible things, or compilations of materials that were prepared in anticipation of litigation by a party or its representative." *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1362 (Fed. Cir. 2017) (citing *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011)); *see also* Fed. R. Civ. P. 26(b)(3). Typically, the doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's attorney. *Upjohn*, 449 U.S. at 390-91; *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947).

---

[2] Skimlite argues that the matter can be decided "under the basic tenants of privilege law," including principles of waiver. *See* Dkt. No. 95 at 3. Resh appears to rely exclusively on Federal Circuit law. *See id.* at 7-8 (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) and *McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242 (N.D. Ill. 2000) (applying *In re Spalding*)).

1   As the party asserting attorney-client privilege and work product protection, Resh bears the
2   burden of proving that the privilege or protection applies.

### III. DISCUSSION

Resh appears to argue that because the inventor, Mr. Resh, began preparing drawings only after communicating with his patent attorney (and at that attorney's direction),[3] he may not be questioned about how he prepared those drawings. Resh cites no authority for this position. None of the questions quoted above requires the disclosure of any communications with an attorney, so the attorney-client privilege does not apply. The fact that the drawings may have appeared in a draft patent application, or in another communication to an attorney, who then used them to prepare a patent application, does not insulate an inventor from questions about whether and how he may have referred to prior art in documenting his alleged invention.

*Spalding* is not to the contrary. In that case, the Federal Circuit held that an "invention record,"[4] which was sent to a corporate legal department for purposes of initiating patent prosecution, was "a communication made for the purpose of obtaining legal advice," and therefore the invention record itself was protected from disclosure by the attorney-client privilege. *In re Spalding*, 203 F.3d at 805-06. Here, Resh *concedes* that the drawings themselves are discoverable. *See* Dkt. No. 95 at 7. Thus, while Skimlite may not obtain discovery of any invention record or other communication made to Resh's patent attorney for purposes of prosecuting the patent, Skimlite may properly inquire about how the drawings of the invention were made and whether the inventor used or referenced the prior art in making the drawings in question. *See Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C 09-05897 RS (PSG),

---

[3] It is unclear why Resh's counsel instructed Mr. Resh not to answer when he was asked whether his patent attorney instructed him to prepare the drawings, *see* Dkt. No. 95-1 (Resh dep. 62:13-17), as Resh purports to provide an answer to that question in the joint discovery dispute submission, *see* Dkt. No. 95 at 6.

[4] As the *Spalding* court explained, "[i]nvention records are standard forms generally used by corporations as a means for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action. They are usual short documents containing space for such information as names of inventors, description and scope of invention, closest prior art, first date of conception and disclosure to others, dates of publication, etc." *In re Spalding*, 203 F.3d at 802 n.2.

4

2011 WL 1599646, at *2 (N.D. Cal. Apr. 27, 2011) ("*Spalding* does not insulate otherwise discoverable information simply because it is included in a privileged communication. The decision merely clarified that privileged communications themselves . . . are not discoverable even if the subject matter of the communication is discoverable.").

To the extent Resh contends that because a patent attorney directed Mr. Resh to prepare drawings of the alleged invention, the attorney work product doctrine insulates Mr. Resh from responding to Skimlite's question, Resh is mistaken. Nothing in the record suggests that the drawings were prepared in anticipation of litigation. Resh cites no authority for the proposition that work product protection applies generally to all patent prosecution activities. Indeed, the prevailing authority is to the contrary. *See Mardiros v. City of Hope*, No. 2:19-cv-02196 MCS MAA, 2021 WL 3126987, at *2 (C.D. Cal. June 3, 2021); *In re Gabapentin Patent Litigation*, 214 F.R.D. 178, 184 (D.N.J. 2003); *McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 259-61 (N.D. Ill. 2000). Thus, the attorney work product doctrine does not apply.

## IV.    CONCLUSION

The questions Skimlite posed to Mr. Resh in deposition, and which he was instructed not to answer, do not seek discovery of information protected by the attorney-client privilege or the attorney work product doctrine. Accordingly, they must be answered. Resh must produce Mr. Resh for a further deposition to answer Skimlite's questions regarding how he prepared the drawings of the alleged invention, including the specific questions quoted above. Mr. Resh's further deposition shall occur within 14 days of this order, unless the parties agree to a different date.

**IT IS SO ORDERED.**

Dated: February 23, 2024

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge