1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6                                     SAN JOSE DIVISION

7

8    RESH, INC.,                              Case No.   22-cv-01427-EJD

                     Plaintiff,               **ORDER GRANTING IN PART AND
9                                             DENYING IN PART MOTION TO
                                              DISMISS**
10        v.

11   BARRETT CONRAD, et al.,                  Re: ECF No. 102

                     Defendants.
12

13

14          This patent infringement action involves two manufacturers of telescoping poles used to

15   clean swimming poles.  Plaintiff Resh, Inc. alleges that Defendants Skimlite Manufacturing Inc.

16   ("RCI"), James Conrad ("Conrad Sr."), and Barrett Conrad ("Conrad Jr.") (collectively,

17   "Defendants") infringe U.S. Patent No. 11,141,852, entitled "Telepole Apparatus and Related

18   Methods" (the "'852 Patent").  Defendants move to dismiss the Second Amended Complaint

19   pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), as well as to strike certain

20   allegations under Rule 12(f).  Defendants' Mot. to Dismiss ("Motion" or "Mot."), ECF No. 115.

21          On May 15, 2024, the Court took the fully briefed Motion under submission without oral

22   argument.  Having reviewed the parties' briefing, the Court GRANTS IN PART and DENIES IN

23   PART Defendants' Motion.[1]

24
_____

25   [1] The Court is in receipt of Defendants Motion for Relief from the Patent Standing Order.  ECF
     No. 116.  Plaintiff Resh Inc. opposed the motion.  ECF No. 120.  That motion is DENIED AS
26   MOOT.  However, to the extent either party seeks to file another motion for summary judgment
     on an issue not raised in the parties' pending cross motions for summary judgment (ECF Nos. 126,
27   129) following the Court's order granting in part and denying in part Defendants' motion to
     dismiss the second amended complaint, that party may seek leave to do so.
28   Case No.: 22-cv-01427-EJD
     ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
                                              1

United States District Court
Northern District of California

1   I.      **BACKGROUND**

2           The parties are familiar with the background of this matter, and the Court incorporates the

3   background statement provided in the Court's prior orders.

4           On March 31, 2023, the Court granted in part Defendants' motion to dismiss the original

5   complaint.  ECF No. 71 ("MTD Order").  On March 4, 2024, the Court granted Defendants'

6   motion to dismiss the first amended complaint for failing to meet the requirements of Rule 8(a).

7   ECF No. 102 ("FAC Order").  On March 25, 2024, Plaintiff filed a second amended complaint.

8   ECF No. 114 ("SAC").  Defendants moved to dismiss the SAC on April 8, 2024.  *See* Motion.

9   II.     **LEGAL STANDARD**

10          Rule 8(a) requires that a complaint contain "a short and plain statement of the claim

11  showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to

12  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

13  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

14  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must "plead[] factual content that

15  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

16  alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

17  (citing *Twombly*, 550 U.S. at 556).

18          Although "a court must accept as true all of the allegations contained in a complaint,"

19  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In patent

21  cases, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly*

22  standard by reciting the [patent] claim elements and merely concluding that the accused product

23  has those elements. There must be some factual allegations that, when taken as true, articulate why

24  it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of*

25  *Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  "A plaintiff is not required to plead infringement on an

26  element-by-element basis."  *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337,

27  1350 (Fed. Cir. 2018)).  However, a plausible claim requires at least some factual allegations to

28  Case No.: 22-cv-01427-EJD
    ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    support a plausible inference that the product at issue satisfies a claim limitation. *See id.* at 1355.

2        Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any

3    redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Immaterial

4    matter is "that which has no essential or important relationship to the claim for relief or the

5    defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

6    Similarly, impertinent matter does not pertain, and is not necessary, to the issues in question.  *Id.*

7    "Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues

8    involved in the action." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp.2d

9    1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted).  A motion to strike

10   will generally not be granted unless it is clear the matter to be stricken could not have any possible

11   bearing on the subject matter of the litigation. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F.

12   Supp. 2d 556, 566 (C.D. Cal. 2005).

### III.    DISCUSSION

14       Defendants collectively and individually move to dismiss the SAC on several grounds.

15   The Court begins by addressing grounds raised by all Defendants and proceeds to evaluate the

16   individual Defendants' arguments.

####     A.    Rule 12(b)(6)

#####         1.    Generalized Allegations

19       In its order dismissing the First Amended Complaint, the Court cautioned Plaintiff that the

20   amended complaint still improperly grouped the Defendants together when it should specify

21   which allegation pertains to which Defendant.   FAC Order 8.  Defendants argue that the SAC

22   continues to suffer from the same defect and should be dismissed for continuing to plead

23   generalized allegations.  Mot. 4–5.  Resh responds that its use of the plural term "Defendants" was

24   intentional and appropriate.  Opp. 1–3.

25       Turning to SAC, the Court acknowledges that Resh removed the improper generalized

26   allegations flagged by the Court in its prior order.  *See* SAC ¶ 63 (revising allegation to specify

27   entity Resh sued as opposed to Defendants generally); *see generally id.* (removing allegation that

28   Case No.: 22-cv-01427-EJD
     ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   "depending on the context in which it is used herein, the term 'Defendants' is intended to include

2   not only RCI and Conrad Sr. and Conrad Jr., but also any/or all other Defendants or any individual

3   entities.").

4          With the above pleading issues corrected, the Court will not dismiss the SAC because of

5   Resh's use of the term "Defendants."  Where the SAC refers to "Defendants" plural, the Court

6   finds that doing so was appropriate in light of Resh's theories that "Defendants Conrad Sr. and

7   Conrad Jr. control Defendant RCI, and have done so separately and/or jointly at all times relevant

8   to this lawsuit" (SAC ¶ 6), and "Defendants Conrad Sr. and Conrad Jr. also are personally liable

9   for RCI's infringing activities in this district because RCI is the alter ego of Defendants Conrad Sr.

10  and Conrad Jr." (*id.* ¶23).[2]

11         Defendants also argue that the generalized pleadings make it "exceedingly difficult, if not

12  impossible, for individual Defendants to respond to Plaintiffs' allegations."  Mot. 5 (*citing In re*

13  *iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).  The Court

14  disagrees and finds the allegations, as revised, provide sufficient detail for Defendants to

15  understand and respond to.  To the extent Defendants contend they are unable to respond to an

16  allegation, they can so state in their answer.

17              **2.      Allegations on "Information and Belief"**

18         Defendants next argue that the SAC should be dismissed for continuing to rely "on

19  information and belief" to support allegations after fact discovery has closed.  In support,

20  Defendants identify two allegations that it contends are false or misleading.  *See* Opp. 6 (citing

21  SAC ¶¶ 53–55).  As an initial matter, the Court agrees with Resh that the Answer is the proper

22  procedural avenue for denying allegations in the complaint.  Additionally, Defendants contend that

23  certain allegations "directly contradict" testimony already taken in this case.  But this is not a basis

24  to dismiss the complaint for failure to state a claim.  Defendants' cited cases concern different

25  procedural issues or involved fraud claims subject to a heightened pleading standard.  *See DNA*

26

27  [2] The Court addresses the sufficiency of Resh's theories of alter ego below.  *See infra*
    Part III(A)(3).

28  Case No.: 22-cv-01427-EJD
    ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   *Genotek Inc. v. Spectrum Sols. LLC*, 2023 WL 3442085, at \*5 (S.D. Cal. May 12, 2023) (denying

2   motion to amend); *In re Neurotin Mktg. Sales Pracs. & Prod. Liab. Litig.*, 618 F. Supp. 2d 96, 112

3   (D. Mass. 2009) (evaluating misrepresentation claims under Rule 9(b)).

4         Accordingly, the Court declines to dismiss the SAC for its allegations based "on

5   information and belief."

6   ### 3.   Alter Ego Allegations

7         The SAC alleges that Conrad Sr. and Conrad Jr. are personally liable for RCI's infringing

8   acts because RCI is their alter ego.  SAC ¶¶ 85–95.  "[I]n certain limited circumstances, the veil

9   separating affiliated entities may also be pierced to impute liability from one entity to another."

10  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).  "To satisfy the alter ego test, a plaintiff

11  must make out a prima facie case (1) that there is such unity of interest and ownership that the

12  separate personalities of the two entities no longer exist, and (2) that failure to disregard their

13  separate entities would result in fraud or injustice."  *Id.* at 1073.  Conclusory allegations of alter

14  ego status are insufficient, and the plaintiff "must allege specific facts to support both the

15  necessary elements."  *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 911

16  (N.D. Cal. 2023) (citing *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D.

17  Cal. 2015)).

18        Defendants argue Resh's alter ego allegations should be dismissed because the SAC fails

19  to allege both elements.  As to the first element—a unity of interest—courts consider the

20  following factors, although "no single factor is dispositive":

21      commingling of funds and other assets of the two entities, the holding out by one
22      entity that is liable for the debts of the other, identical equitable ownership in the
        two entities, use of the same offices and employees, use of one as a mere shell or
23      conduit for the affairs of the other, inadequate capitalization, disregard of
        corporate formalities, lack of segregation of corporate records, and identical
24      directors and officers.

25  *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at \*2 (cleaned

26  up).

27

28  Case No.: 22-cv-01427-EJD
    ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Resh alleges that the Conrads "misrepresented their corporate entity" as "Skimlite

2    Manufacturing Inc." on their website, in a prior lawsuit, and in prior filings with the U.S. Patent

3    and Trademark Office ("PTO").  *See* SAC ¶¶ 87–89, 90–95.  In particular, the SAC alleges, and

4    includes a screenshot purporting to show, that Conrad Sr. submitted a trademark application which

5    lists "James R. Conrad (United States citizen), d.b.a. Skimlite Mfg."  *Id.* ¶ 95.  But "the mere fact

6    of sole ownership and control does not eviscerate the separate corporate identity that is the

7    foundation of corporate law."  *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143,

8    1149 (9th Cir. 2004); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122,

9    1135 (9th Cir. 2003) ("Total ownership and shared management personnel are alone insufficient to

10   establish the requisite level of control").  Additionally, Resh has not explained how its allegations

11   that the Conrads misrepresented their corporate entity as "Skimlite Manufacturing Inc." are

12   applicable to the "unity of interest" factors.  Even taking Resh's allegations as true, Defendants'

13   misrepresentations regarding their company name on a website, in a prior lawsuit, and at the PTO

14   do not equate to unity of interest.

15   The Court concludes that Resh has not alleged sufficient facts to support its assertion that

16   RCI is the Conrads' alter ago and has failed to satisfy the first prong of the alter ego test.

17   Although the Court does not need to reach the issue of whether Resh has alleged sufficient facts to

18   satisfy the second prong of the alter ego test, Resh does not identify any factual allegations

19   demonstrating any resulting fraud or injustice, nor does the Court identify any in the SAC.

20   Without more factual specificity, the conclusory allegation that the "failure to disregard their

21   separate identities would result in fraud or injustice," is not enough to allege an inequitable result.

22   SAC ¶ 86.  Resh describes suing the allegedly "non-existent" corporate entity "Skimlite

23   Manufacturing Inc." in 2018 and again initially in this case.  *Id.* ¶¶ 92–93.  Resh, however, has

24   failed to allege any resulting inequity from this mistake or misrepresentation.  Even if Resh could

25   not have originally satisfied a judgment against the non-existent entity, it appears the issue has

26   been resolved, and the correct entity is now in the case.  Moreover, "[d]ifficulty in enforcing a

27   judgment or collecting a debt does not satisfy [the inequitable results] standard."  *Payoda*, 2015

28   Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    WL 4593911, at *4.

2         Accordingly, the Court grants Defendants' motion to dismiss Resh's alter ego allegations.

3    Because fact discovery has ended, and Resh has had the opportunity to amend his complaint, the

4    Court will dismiss the alter ego allegations with prejudice.

5                    **4.    Contributory Infringement**

6         Defendants next move to dismiss Resh's claim of contributory infringement.  Resh alleges

7    that Defendants' "replacement grips and lever-lock detent components are contributory

8    infringements of Resh's '852 patent, because those components do not have a substantial non-

9    infringing use."  SAC ¶ 48.  According to the SAC, "Defendants custom make and sell and offer

10   for sale those components specifically to fit the infringing SnapLite and/or private-labeled poles,"

11   and "no customer buys Defendants' replacement grips or detent lever lock kits other than to use it

12   on one of Defendants' infringing poles."  *Id.*

13        Contributory infringement occurs if a party sells or offers to sell, a material or apparatus

14   for use in practicing a patented process, and that material or apparatus is used in practicing a

15   patented process, is material to practicing the invention, and is not a "staple article ... suitable for

16   substantial non[-]infringing use."  35 U.S.C. § 271(c).  "To state a claim for contributory

17   infringement ... a plaintiff must, among other things, plead facts that allow an inference that the

18   components sold or offered for sale have no substantial non-infringing uses."  *In re Bill of Lading*

19   *Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (citations

20   omitted).  A "substantial non-infringing use" is "any use that is not unusual, far-fetched, illusory,

21   impractical, occasional, aberrant, or experimental."  *Id.* (quotations omitted).

22        Defendants argue that Resh's allegations of contributory infringement are deficient for

23   several reasons.  Resh fails to respond to any of Defendants' arguments.  Instead, Resh contends

24   that its contributory infringement claim is sufficiently plead because it "followed the Court's

25   guidance."  Opp. 10.  The Court's prior order dismissing the first amended complaint noted that

26   the complaint failed to plead that the replacement parts are a material part of the invention as

27   required by § 271(c).  This finding did not suggest that Resh's claim was otherwise sufficiently

28   Case No.: 22-cv-01427-EJD
     ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1  plead.  Nor did the Court's order permit Resh to ignore the remainder of Defendants' arguments as

2  to this claim.

3         Resh now pleads that the replacement parts are a "material part of the invention."  Resh's

4  theory of contributory infringement still fails.  First, the SAC does not allege any underlying act of

5  direct infringement of the replacement parts.  "In order to state a claim for induced or contributory

6  infringement, the complaint also must plead direct infringement."  *Lantiq N. Am., Inc. v. Ralink*

7  *Tech. Corp.*, No. CV 11-00234 EJD, 2011 WL 2600747, at *8 (N.D. Cal. June 30, 2011) (citations

8  omitted); *see also Shearing v. Optical Radiation Corp.*, No. CV-S-93-850-DWH(LRL), 1994 WL

9  382444, at *2 (D. Nev. Mar. 25, 1994) (liability for contributory infringement under § 271(c)

10  cannot arise unless there is direct infringement "by someone other than the inducer").

11         Second, even if the SAC's allegation that "no customer buys Defendants' replacement

12  grips or detent lever lock kits other than to use it on one of Defendants' infringing poles" (SAC

13  ¶ 48) is sufficient to plead direct infringement by customers of Defendants' replacement parts,

14  Resh's contributory infringement claim still fails because unpatented repair parts for infringing

15  devices cannot be the basis for a separate act of infringement.  Resh's contributory infringement

16  claim rests on Defendants' sale of replacement parts of allegedly infringing pool poles.  The

17  Federal Circuit has found that "replacement of a part" is "repair or akin to repair" for purposes of

18  evaluating a contributory infringement claim.  *Husky Injection Molding Sys. Ltd. v. R & D Tool*

19  *Eng'g Co.*, 291 F.3d 780, 786 (Fed. Cir. 2002) ("For example, if a patent is obtained on an

20  automobile, the replacement of the spark plugs would constitute permissible repair").

21         Resh argues that the facts here are distinct from Defendants' cited cases because

22  Defendants did not lawfully purchase a patented product.  But Resh does not allege that

23  Defendants sell repair parts for any poles but their own.  Because Defendants' poles are already

24  subject to Resh's direct infringement allegations, a finding of contributory infringement by repair

25  parts for the same products accused of direct infringement would amount to double recovery.  Put

26  another way, if Defendants' sales and offers for sale of the accused pool poles are found to

27  infringe, Resh will be fully compensated for Defendants' sales of the infringing pool poles, and

28  Case No.: 22-cv-01427-EJD
   ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   "hence [Defendants will] receive[] an implied license on those sales." *King Instrument Corp. v.*

2   *Otari Corp.*, 814 F.2d 1560, 1564 (Fed. Cir. 1987).  If Defendants become "an implied licensee,

3   [their] sale of unpatented repair parts to [their] customers do[] not constitute a direct

4   infringement." *Id.*  Accordingly, Resh has not plead a plausible contributory infringement theory

5   based on the sale of unpatented replacement parts.  Defendants' motion to dismiss the contributory

6   infringement claims is therefore granted with prejudice.

### 5.   Pre-Issuance Damages

8         Resh seeks pre-issuance damages under 35 U.S.C. § 154(d).  SAC ¶¶ 74–84.  Section

9   154(d) is a narrow exception to the general rule that damages are only available for infringement

10  occurring after a patent is issued.  *Rosebud LMS Inc. v. Adobe Sys. Inc.*, 812 F.3d 1070, 1073 (Fed.

11  Cir. 2016).  The statute provides the right to pre-issuance reasonable royalties for infringement

12  occurring "during the period beginning on the date of publication of the application of [the

13  asserted] patent under [35 U.S.C.] section 122(b)," provided that the infringer "had actual notice

14  of the published patent application," and "the invention as claimed in the [asserted] patent is

15  substantially identical to the invention as claimed in the published patent application."  35 U.S.C.

16  § 154(d)(l)–(2).

17        Defendants first argue that Resh's claim for pre-issuance damages fails because Resh fails

18  to allege that the accused products practice any claim of the published applications.  Section

19  154(d)(1)(A) requires that the accused infringer "makes, uses, offers for sale, or sells in the United

20  States the invention *as claimed in the published patent application*."  Resh alleges that claim 1 of

21  Resh's patent application published in 2013, U.S. Patent Publication No. 2013/0326832 (the "'832

22  publication"), "is virtually identical" to claim 21 that the PTO issued in Resh's '852 patent.  SAC

23  ¶ 77.  The SAC also alleges that Conrad Sr. copied the language from Resh's claim 21 into Conrad

24  Sr.'s 2018 patent claims in U.S. Patent Office Publication US20190275659A1.  *Id.* 78–29.

25  Conrad Sr. allegedly copied the language from claim 21 "to define Defendants' own pole

26  products."  *Id.* 79.  These allegations are sufficient to plead that Defendants' accused pole products

27  practice claim 21 of the published patent application.  Accordingly, the Court declines to find

28  Case No.: 22-cv-01427-EJD
    ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Resh's pre-issuance damage claim deficient on this basis.

2          Defendants also argue that Resh's claim to pre-issuance damages fails because issued

3    claim 21 is not substantially identical to any published claims.  Resh argues that the SAC

4    sufficiently alleges that the claims in the applications are substantially identical to the claims in the

5    patent.  A determination of whether the patent applications are "substantially identical" to the

6    issued patent is permissible at this stage because "[w]hether the patent and published application

7    are substantially identical is a question of law." *Prestige Pet Prod., Inc. v. Pingyang Huaxing*

8    *Leather & Plastic Co.*, 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (citing *Laitram Corp. v. NEC*

9    *Corp.*, 163 F.3d 1342, 1347 (Fed.Cir.1998)).  Claims are "identical" to their original counterparts

10   if they are "without substantive change." *Laitram*, 163 F.3d at 1346 (quoting *Seattle Box Co. v.*

11   *Industrial Crating & Packing*, 731 F.2d 818, 827–28 (Fed.Cir.1984)).  Furthermore, in

12   determining whether substantive changes have been made, courts "must discern whether the *scope*

13   of the claims are identical, not merely whether different words are used." *Id.*

14         Resh relies on two patent publications it contends contain published claims that are

15   "substantially identical" to issued claim 21: the '832 publication and U.S. Patent Pub. No.

16   2018/0009099 (the "'099 publication").  SAC ¶¶ 76–77, 83.  Defendants argue that issued claim

17   21 is not substantially identical to either claim 1 of the '832 publication or claim 33 of the '099

18   publication.  As to '832 publication, in published claim 1, the "attachment means" is on the "inner

19   tube" whereas in issued claim 21 the "attachment means" is on the "outer tube."  ECF No. 114 at

20   67, claim 21; '832 publication, claim 1.  The claims require the attachment means be at opposite

21   ends of the telepole.  This altered scope is sufficiently distinguishing and defeats finding the

22   claims substantively identical.  *See Classen Immunotherapies, Inc. v. Shionogi, Inc.*, 993 F. Supp.

23   2d 569, 579 (D. Md.), *aff'd*, 586 F. App'x 585 (Fed. Cir. 2014) ("When a published patent

24   application's claims are amended such that their scope is changed, the patent is no longer

25   'substantially identical' to its application").  If Defendants had started producing a pool pole with

26   the attachment means on the first end of the inner tube, they would not have had actual notice that

27   they were infringing claim 21 of the '832 publication, which requires the attachment means on the

28

United States District Court
Northern District of California

1   second end of the outer tube.  "To allow anything less than substantial identity would impose an

2   unacceptable burden on the public," because "[i]f provisional rights were available in the situation

3   where the only valid claim infringed first appeared in substantially that form in the granted patent,

4   the public would have no guidance as to the specific behavior to avoid between publication and

5   grant." *Arendi Holding Ltd. v. Microsoft Corp.*, No. CIV. 09-119-JJF-LPS, 2010 WL 1050177, at

6   *6 (D. Del. Mar. 22, 2010), report and recommendation adopted, No. CIV. 09-119-JJF-LPS, 2010

7   WL 1485314 (D. Del. Apr. 12, 2010) (quoting H. Rep. No. 106–287, at 55, 106th Cong., 1st Sess.

8   (1999) (accompanying H.R.1907)).

9       As to the '099 publication, Resh alleges that claim 33 is substantially identical to issued

10   claim 21.  SAC ¶ 83.  Defendants identify three differences they contend result in an issued claim

11   that is not substantially identical to the published claim.  First, issued claim 21 recites "a collar

12   element … said collar element containing a detent means," and that "detent means is configured to

13   temporarily lock the inner tube in [a] selected position within the outer tube," but published claim

14   33 does not require a collar element or temporary locking.  Second, claim 33 requires "a grip," and

15   claim 21 does not.  Lastly, claim 33 requires "said selective sliding action of the tubes causing the

16   respective distance between said grip … and said actuatable detent … to change," which is not

17   present in claim 21.  Because the '099 publication lacks language found in the issued claim 21 and

18   vis versa, these differences defeat Resh's contention that claim 33 is substantially identical to

19   issued claim 21.  *See Abdou v. Alphatec Spine, Inc.*, No. 12-CV-1804-BEN-RBB, 2014 WL

20   6611422, at *5 (S.D. Cal. Nov. 19, 2014) (finding claims not substantially identical for 154(d)

21   purposes where language in issued claim "not present in published [] claim").

22       Resh does not address these differences, instead arguing that the issue "is a fact question."

23   Opp. 11.[3]  As explained above, whether two claims are substantially identical is an issue of law.

24       Accordingly, the Court finds claim 1 of the '832 publication and claim 33 of the '099

25

26   _____

27   [3] Resh also spends much of its opposition responding to Defendants' argument that Resh relies on the wrong patent publication. *See* Opp. 11–17.  Because the Court dismisses the claim on separate grounds, the Court need not address those arguments.

28   Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
11

1  publication are not substantially identical to the issued claim 21, and § 154(d) does not apply.

2  **B.    Conrad Jr.**

3  Conrad Jr. moves for dismissal on three grounds: (1) the SAC fails to allege acts of direct

4  and induced infringement against him under Rule 12(b)(6), and (2) venue is not proper over him in

5  this district under Rule 12(b)(3).  Because the Court finds that venue is improper as to Conrad Jr.,

6  it dismisses claims against him on that basis and does not reach Defendants' other arguments.

7  **1.    Venue**

8  Defendants argue that the SAC fails to properly allege venue over Conrad Jr., who resides

9  in Florida.  Resh contends that venue is proper pursuant to 28 U.S.C. §1400(b), which provides

10  that a patent infringement action may be brought (1) "in the judicial district where the defendant

11  resides," or (2) "where the defendant has committed acts of infringement and has a regular and

12  established place of business."  *See* SAC ¶¶ 5, 18.  As to the second prong, Resh alleges that

13  Conrad Jr. has committed acts of infringement in this district by (1) attending the Pool Industry

14  Expo trade show in Monterey, California on September 14–16, 2023 (SAC ¶ 53); (2) attending the

15  Carecraft Annual meeting in February 2024 in Huntington Beach, California (SAC ¶ 55); and

16  attending this district "on additional dates" and while present in this district, "has undertaken

17  activities that infringe the '852 patent" (*id.*).

18  Conrad Jr. has submitted a declaration stating that he did not attend the 2023 PIE show or

19  any other PIE show after the issuance of the '852 patent.  Conrad Decl. ¶ 3.  Additionally,

20  allegations of Conrad Jr.'s other visits to this district where he "has undertaken activities that

21  infringe the '852 patent" are too vague and speculative to meet Resh's burden to establish that

22  Conrad Jr. has plausibly committed acts of infringement in this district.  Finally, the allegation that

23  Conrad Jr. attended the Carecraft Annual meeting in February 2024 in Huntington Beach cannot

24  serve to establish venue, because venue must be evaluated at the time the complaint is filed.  *See*

25  *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd*, No. 17-CV-1748-DOC-JDEX, 2018 WL

26  4963129, at *6 (C.D. Cal. June 22, 2018) ("[V]enue under § 1400(b) should be analyzed based on

27  the facts and circumstances that exist at the time an action is filed"); *see also Pers. Audio, LLC v.*

28  Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   *Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (same).

2        Accordingly, Resh has failed to plead venue over Conrad Jr., and the claims against him

3   will be dismissed with prejudice in this district.

4        **C.    Conrad Sr.**

5        Conrad Sr. moves for dismissal of the claims against him because the SAC fails to plead an

6   act of direct infringement and induced infringement against him in his personal capacity.

7                  **1.    Direct Infringement**

8        As the Court explained in its order dismissing the original complaint, to the extent Plaintiff

9   asserts personal liability as to Conrad Sr., it must allege facts plausibly showing that Conrad Sr.

10  personally made, used, offered to sell, or sold an infringing product during the term of the patent.

11  35 U.S.C. § 271(a).  Additionally, to sufficiently plead a claim of direct infringement under

12  *Twombly* and *Iqbal*, "plaintiff[] [must] plausibly allege that the accused product practices each of

13  the limitations found in at least one asserted claim." *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-

14  cv-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) (collecting cases).

15       Resh alleges the following facts regarding Conrad Sr.'s acts of direct infringement:

16  (1) Conrad Sr. "began designing and making infringing poles using Resh's positive engagement

17  button detent technology" (SAC ¶ 40); (2) Conrad Sr. "personally appear[ed] at" events "to

18  promote the infringing products" including by "publishing the prices of the infringing products"

19  (*id.* ¶ 50); (3) Conrad Sr. "offer[ed] for sale and/or s[old] infringing products at the Pool Industry

20  Expo (PIE) trade show held annually in Monterey, California, such as the one held on or about

21  September 14-16, 2023" (*id.* ¶ 53); and (4) Conrad Sr. "repeatedly offer[ed] for sale infringing

22  products at direct selling trade shows known as the Carecraft Annual meetings" on February 28,

23  2022 and February 2024 (*id.* ¶ 54 (citing video)).

24       Conrad Sr. submitted a declaration stating that he did not attend the 2023 PIE show.  *See*

25  Conrad Decl. ¶ 3.  Conrad Sr. also contends that the video cited in the SAC purporting to show

26  Conrad Sr. offering for sale the infringing products "does not mention the Accused Products, does

27  not offer pricing, and does not offer anything for sale."  Mot. 21.  As for the February 2024 show,

28

Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
13

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Conrad Sr. argues that Resh has not plead any facts supporting its allegation.  *Id.*  Resh responds

2    that it has plead that Defendants make their pricing available prior to the sales activity (via email,

3    the Internet, or otherwise) that occurs at the event.  Opp. 7.  Defendants argue that their testimony

4    that they do not offer anything for sale at the trade shows is fatal to Resh's direct infringement

5    theory.[4]  The Court disagrees.  "[A]lthough the [SAC is] not flush with facts" regarding

6    Conrad Sr.'s direct infringement, Resh "has sufficiently identified the patent at issue, the Accused

7    Products that allegedly infringe the patented technology, and how they infringe."  *Aperture Net*

8    *LLC v. Opengear, Inc.*, No. 20-CV-03613-SVK, 2020 WL 11401699, at *3 (N.D. Cal. Dec. 10,

9    2020).  This is sufficient to give Conrad Sr. fair notice of the infringement clams and the grounds

10   on which they are brought, "which is all that is required to meet the *Iqbal* and *Twombly*

11   plausibility standards."  *Id.* (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260

12   (Fed. Cir. 2018)); *see also Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109,

13   1115 (N.D. Cal. 2016) (direct infringement claim sufficiently plead where "the Complaint

14   describes (i) the Accused Instrumentalities and the functionalities of those products which

15   allegedly infringe on plaintiff's patents and (ii) the ways in which the Accused Instrumentalities

16   meet claims of the Patents").

17          Even if the allegations are sufficient to allege an act of infringement against Conrad Sr.,

18   Defendants contend that the allegations do not support an inference that Conrad Sr. has infringed

19   "outside of RCI."  Mot. 22.  In other words, Defendants argue that to plead Conrad Sr.'s liability

20   for infringement under Section 271(a), Resh must sufficiently allege that Conrad Sr. committed an

21   infringing act outside of his role as a corporate officer of RCI.  Mot. 22 (citing *Wordtech Sys. v.*

22

23   _____

24   [4] In connection with its efforts to dismiss Resh's claim of direct infringement against Conrad Jr.,
     Defendants argue that Resh's allegations contradict Conrad Jr.'s testimony, referring specifically
25   to statements by Conrad Jr. that he and RCI do not make sales at trade shows.  *See* Mot. 18 (citing
     *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254–57 (Fed. Cir. 2000)).  But testimony
26   that RCI "typically does not have pricing information available at trade shows" does not defeat
     Resh's allegations that Conrad Jr. (or Conrad Sr.) made offers to sell at the Pool Industry Expo.
27   Nor does *Rotec*, which evaluated the district court's grant of summary judgment, instruct
     otherwise.  *See Rotec*, 215 F.3d at 1254 ("an offer for sale, whether made before or after a patent
28   is applied for, or after it is granted, requires no more than a commercial offer for sale").

     Case No.: 22-cv-01427-EJD
     ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
                                          14

*Integrated Network Sols., Inc.*, 609 F.3d 1309, 1313–14 (Fed. Cir. 2010) ("[T]he 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'")).  But as this Court noted previously, "[c]orporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021).  The Federal Circuit in *Lubby* rejected the broad reading of *Wordtech* that Defendants' urge the Court to adopt.  *Lubby* stated that the Federal Circuit "interpret[s] *Wordtech* as reinforcing the rule that a corporate officer—or perhaps only a corporate owner—cannot be found derivatively liable for *the corporation's infringement* without piercing the corporate veil." *Id.* (quoting *Global Traffic Technologies LLC v. Morgan*, 620 F. App'x 895 (Fed. Cir. 2015)).  And while piercing the corporate veil is appropriate for questions of derivative liability, "veil-piercing standards do not govern the separate issue of direct liability for one's own wrongful acts, as the governing law defines those wrongs." *Id.* (emphasis in original) (quoting *Astornet Techs., Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015)).  Thus, the fact that Conrad Sr. "may have acted on behalf of his corporation does not excuse him from individual liability." *Id.* at 1359.  The Court therefore declines to dismiss the direct infringement claim against Conrad Sr. on the basis that the SAC has not alleged Conrad Sr. took an infringing act "outside of RCI."

Accordingly, the Court denies Defendants' motion to dismiss Resh's direct infringement claims against Conrad Sr.

### 2.    Induced Infringement

Induced infringement may apply where a defendant has induced a third party to directly infringe a patent.  *See* 35 U.S.C. § 271(b).  "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringement specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (internal

quotation marks omitted).  Thus, for an allegation of induced infringement, Resh must allege that Conrad Sr. knew that another party was infringing and intended for that other party to infringe.  *Id.*

The SAC alleges that Conrad Sr. induced infringement "by [his] control and direction of RCI" (SAC ¶ 22) and "Conrad Sr. … possessed the specific intent to encourage (and did actually control and direct) RCI to infringe the '852 patent" (*id.* ¶ 51).  Defendants contend these are mere legal conclusions and should be disregarded.  Resh does not meaningfully respond to Defendants' arguments and instead repeats the conclusions alleged in the SAC.  *See, e.g.*, Opp. 17 ("Through their control of RCI and its infringing activities, Conrad Sr. and Conrad Jr. thereby have induced the corporation to infringe").  The Court agrees that these are mere legal conclusions lacking factual support that are insufficient to survive a motion to dismiss.  *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations"); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

Defendants' motion to dismiss Resh's induced infringement claim against Conrad Sr. is therefore granted.

### D.    Motion to Strike

Defendants move to strike Paragraphs 63–69, 73(a), 73(b), and 91–94, arguing that they involve "impertinent allegations of fraud and wrongdoing in the SAC that are irrelevant to Resh's claims."  Mot. 23.  The Court previously instructed Resh to "avoid lengthy and serious accusations of fraud by Defendants' counsel that do not appear relevant to Resh's claim of patent infringement."  FAC Order at 11.

The paragraphs at issue involve a 2018 lawsuit brought by Resh.  SAC ¶ 63.  Resh alleges that Defendants and their attorneys misrepresented certain facts regarding the entity "Skimlite Manufacturing."  *Id.* ¶¶ 65, 91–94.  In view of the 2018 lawsuit, Resh alleges that he decided to not wait to "surprise" Defendants to resolve infringement issues between the parties and invited settlement negotiations.  *Id.* ¶ 69.  And based on the apparent misrepresentations made in the 2018

Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS

1    lawsuit, Resh alleges he served this lawsuit against the "non-existent corporate entity 'Skimlite
2    Manufacturing Inc.'" *Id.* ¶ 92.

3         Resh contends that these allegations are relevant because they "show [] the value of Resh's
4    various swimming pool pole inventions," confirm pre-issuance knowledge of the '852 pending
5    patent application and its claims, and illustrate Defendants' willfulness. Opp. 9. Resh also
6    maintains that the allegations are relevant of "Defendants' character for willful infringement." *Id.*

7         The Court finds that certain information alleged about the 2018 lawsuit amounts to
8    immaterial matter and should be stricken because it "has no essential or important relationship to
9    the claim for relief or the defenses being pleaded." *Fantasy*, 984 F.2d at 1527. Whether RCI or
10   Skimlite Manufacturing previously infringed a separate, unasserted patent, is not relevant to
11   whether it willfully infringed the '852 patent in this case. *See Whitewater W. Indus. v. Pac. Surf
12   Designs, Inc.*, 2019 WL 2211897, at \*4 (S.D. Cal. May 22, 2019) (excluding evidence of a prior
13   lawsuit between the same parties regarding same asserted patent over argument that it
14   demonstrated "misrepresentations and intentional misconduct directed towards interfering with
15   Defendants' business activities"). To plead willful infringement, Resh must plead knowledge of
16   the patent and deliberate or intentional infringement. *Eko Brands, LLC v. Adrian Rivera Maynez
17   Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). Resh can do so without allegations of
18   misrepresentations by Defendants and their attorneys in a prior lawsuit. That said, the SAC
19   includes allegations about the 2018 lawsuit that Resh contends are relevant to its motivation in
20   bringing this lawsuit at the time it did and against the specific named Defendants. Thus, the Court
21   declines to strike paragraphs 66, 73(b), 92, 94 because it is not clear that the information in these
22   paragraphs "could not have any possible bearing on the subject matter of the litigation." *RDF
23   Media Ltd.*, 372 F. Supp. 2d at 566.

24        Accordingly, the Court will grant Defendants motion to strike paragraphs 63–65, 67–69,
25   91, and 93.

26

27

28
     Case No.: 22-cv-01427-EJD
     ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
                                              17

United States District Court
Northern District of California

**IV.    CONCLUSION**

Based on the foregoing, the Court GRANTS Defendants' Motion as follows:

1. Resh's theory of alter ego is dismissed under Rule 12(b)(6) without leave to amend.

2. Resh's contributory infringement claims are dismissed under Rule 12(b)(6) without leave to amend.

3. Resh's claim for pre-issuance damages is dismissed under Rule 12(b)(6) without leave to amend.

4. Resh's claims against Conrad Jr. are dismissed for improper venue under Rule 12(b)(3) without prejudice to raise the claims in the proper venue.

5. Resh's claim against Conrad Sr. for induced infringement is dismissed under Rule 12(b)(6) with prejudice.

6. Paragraphs 63–65, 67–69, 91, and 93 are stricken without leave to amend.

Defendants' Motion is otherwise DENIED.  The Court declines Resh's request for further leave to amend.  Resh has had two opportunities to cure the deficiencies, and the Court's order is with prejudice except as noted above with respect to claims against Conrad Jr., which are dismissed for improper venue.  The Court also denies Defendants' request to file a motion for sanctions.  Defendants may choose to file a motion for attorneys' fees at the appropriate time.


**IT IS SO ORDERED.**

Dated: September 11, 2024


EDWARD J. DAVILA
United States District Judge

Case No.: 22-cv-01427-EJD
ORDER GRANTING IN PART; DENYING IN PART MOTION TO DISMISS
18