UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RESH, INC, | Case No.  22-cv-01427-EJD |
| Plaintiff, | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| BARRETT CONRAD, et al., | Re: ECF Nos. 125, 126, 129 |
| Defendants. | |

This is an action for patent infringement brought by Plaintiff Resh, Inc. against Defendants Robert Conrad, Inc. d/b/a Skimlite Manufacturing ("Skimlite"), James R. Conrad, and Barrett R. Conrad (collectively, "Defendants") arising from Defendants' manufacture and sale of telescoping poles used to clean swimming pools.  Resh alleges Defendants' pool pole products infringe U.S. Patent No. 11,141,852, entitled "Telepole Apparatus and Related Methods" (the "'852 Patent").

Before the Court is Resh's motion for summary judgment (ECF No. 126), Defendants' motion for summary judgment (ECF No. 129), and Defendants' motion to preclude expert testimony from Eric Resh (ECF No. 125).[1]

---

[1] Both parties' briefs violate this Court's requirements for footnotes.  *See* Standing Order, Section IV(A)(4).  The Court expects the parties to be familiar with the operative standing order.  Future

Case No.: 22-cv-01427-EJD
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

1

United States District Court
Northern District of California

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the parties' motions for summary judgment and GRANTS IN PART Defendants' motion to exclude.

## I. BACKGROUND

### A. The Parties

Both parties sell poles for cleaning pools. Skimlite Manufacturing Inc. is a California corporation principally owned by father and son Defendants James Conrad ("Conrad Sr.") and Barrett Conrad ("Conrad Jr."). Skimlite has been selling and manufacturing swimming pool poles since the 1950s.

Resh is a California corporation comprised of husband and wife, Eric and Jenel Gonzalez Resh. Eric Resh started working as a pool man in the late 1980s cleaning swimming pools and has since "invented and patented a number of improved swimming pool tools to assist pool men as well as homeowners." This includes the '852 Patent's invention for "Telepole Apparatus and Related Methods," issued on October 12, 2021.

Resh alleges that Skimlite had been manufacturing "twist-and-clamp" pool poles for nearly 60 years until Conrad Sr. encountered Resh's "button detent" poles at a 2012 trade show. Since then, Skimlite has allegedly been designing infringing poles using Resh's button detent technology.

### B. Procedural History

Resh filed the complaint on March 7, 2022. Compl., ECF No. 1. After several rounds of motions to dismiss, Defendants answered the second amended complaint on September 25, 2024. Answer, ECF No. 146.

The Court held a *Markman* hearing and construed certain claim terms. ECF No. 93.

### C. The '852 Patent and the Accused Products

The '852 Patent claims priority to a provisional application filed in September 2011. It purports to cover an improved telepole device. Resh accuses two sets of Defendants' pool poles:

---

non-complying footnotes may be stricken.

1   the "two-tube poles" and the "three-tube poles."  Resh relies on representative models for each set:

2   the Model 6016 pole represents all two-tube poles, and Model 6317 represents all three-tube poles.

3   In total, Resh accuses the following model numbers of Defendants' pole products: 1012, 1016,

4   6012, 6016, 6317, and 6323 (together, the "Accused Products").  *See* Statement of Undisputed

5   Material Facts ("SUF") ¶ 6, ECF No. 126-1.

6           **1.      Two-Tube Poles**

7           Resh seeks summary judgment that the two-tube poles infringe claims 2, 11, 16, 18, 19,

8   and 21 of the '852 Patent.  Those claims are recited below:

9           **2.** A telescoping pole apparatus, including:
        an outer tube having first and second ends, said first end
10          of the outer tube having a collar associated therewith,
            said collar containing a selectively actuatable detent,
11          said second end of said outer tube having structure for removably attaching a
            tool;
12      an inner tube having first and second ends, said first end
            of said inner tube including a grip attached to the inner
13          tube for a user to grasp and manipulate the apparatus,
            said second end of said inner tube being slidably
14          received in the first end of the outer tube through an
            opening in said collar, said inner tube having a plurality
15          of detent holes positioned to be engaged with said
            actuatable detent, said inner tube being a single wall
16          tube that is hollow along at least substantially its length
            between said first and second ends of said inner tube;
17          and
        said inner tube configured to slide within said outer tube
18          to a selectable position relative to the outer tube, at
            which position said detent is configured to temporarily
19          engage and hold said inner tube.

20          **11.** The apparatus of claim 2, wherein said grip has a
        larger diameter than the diameter of the inner tube.

21

22          **16.** The apparatus of claim 2, wherein said detent holes
        provide a plurality of selected lengthwise positions for said
23      actuatable detent.

24

25          **18.** The apparatus of claim 2, said detent including a
        spring-actuated lever lock.

26

27

28  Case No.: 22-cv-01427-EJD
    ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
    3

**19.** The apparatus of claim 2, said inner and outer tubes formed from a relatively lightweight material such as aluminum.

**21.** An improved telepole device, comprising:
an outer tube element having first and second ends, said first end of the outer tube element having a collar element associated therewith , said collar element containing a detent means , said second end of the outer tube having attachment means for removably attaching a tool;
an inner tube element having first and second ends;
said second end of said inner tube element being received in the first end of the outer tube through an opening in said collar element;
wherein said inner tube element is configured to readily slide within said outer tube element to a selected position along the length of the outer tube, and wherein said detent means is configured to temporarily lock the inner tube in that selected position within the outer tube.

## 2.    Three-Tube Poles

Resh seeks summary judgment that the three-tube poles infringe claim 20 of the '852 Patent.  Claim 20 is recited below:

**20.** A telescoping pole apparatus, including:
an outer tube having first and second ends, said first end of said outer tube having a collar associated therewith, said collar containing a selectively actuatable detent , said second end of said outer tube having structure for removably attaching a tool;
an inner tube having first and second ends, said first end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate the apparatus;
an intermediate tube slidably interposed between said inner and outer tubes, said intermediate tube having first and second ends, said first end of said intermediate tube slidably received in the first end of said outer tube through an opening in said collar, said intermediate tube having a plurality of detent holes positioned to be engaged with said actuatable detent of said outer tube's collar, said second end of said intermediate tube having a collar associated therewith, said collar containing a selectively actuatable detent;
said second end of said inner tube being slidably received in the second end of said intermediate tube through an opening in said intermediate tube's collar, said inner

United States District Court
Northern District of California

tube having a plurality of detent holes positioned to be
engaged with said actuatable detent of said intermedi-
ate tube's collar;
said intermediate tube configured to slide within said
outer tube to a selectable position relative to said outer
tube, at which position said detent of said outer tube is
configured to temporarily engage and hold said inter-
mediate tube; and
said inner tube configured to slide within said intermedi-
ate tube to a selectable position relative to said inter-
mediate tube, at which position said detent of said
intermediate tube is configured to temporarily engage
and hold said inner tube.

## II.    LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has

made this showing, the burden then shifts to the party opposing summary judgment to identify

"specific facts showing there is a genuine issue for trial." Id. The party opposing summary

judgment must then present affirmative evidence from which a jury could return a verdict in that

party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the

non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

If the burden of persuasion at trial would be on the non-moving party, then the moving

party may satisfy its burden of production by pointing to an absence of evidence supporting the

non-moving party's case, after which the non-movant must come forward with specific facts to

demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

United States District Court
Northern District of California

*Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III.    DISCUSSION

Resh seeks summary judgment on three issues: (1) Defendants have infringed claims 2, 11, 16, 18–21 of the '852 Patent; (2) Defendants failed to prove invalidity; and (3) Defendants have failed to sufficiently corroborate two items of prior art with respect to the '852 Patent.  Resh Mot. 1.  For their part, Defendants oppose Resh's motion and also move for summary judgment of (1) invalidity of claims 1–3, 6–8, 11, 16, 18–19, and 21–24 (the "Challenged Claims") of the '852 Patent as anticipated under 35 U.S.C. § 102; (2) invalidity of the Challenged Claims as obvious under 35 U.S.C. § 103; and invalidity of claim 20 for lack of written description under 35 U.S.C. § 112.  Defendants also move to preclude Resh from introducing expert testimony from Eric Resh.

The Court begins by addressing the motion to exclude, the outcome of which may impact resolution of the motion for summary judgment.  The Court will then resolve the issues raised in the motions for summary judgment, starting with infringement and followed by invalidity.

### A.    Motion to Exclude

Defendants argue that Resh should be precluded from introducing "expert testimony from Eric Resh" at summary judgment or trial.  Mot. to Preclude 1.  The deadline to provide designations of opening experts with reports was March 27, 2024.  On that date, Resh served a document stating "at this time, Plaintiff Resh does not designate any experts but reserves the right to designate rebuttal experts. Additionally, Resh also notes that, based on the expertise of Eric Resh, he may provide lay opinion testimony."  Plaintiff's Designation of Opening Experts with Reports, ECF No. 125-1 at 4.  Defendants contend that, if Resh intended to provide testimony based on the "expertise" of its founder, Eric Resh, then it was required to provide a proper expert disclosure for Mr. Resh under Federal Rule of Civil Procedure 26.

In response, Resh explains that the above statement should have included the word "experience" rather than "expertise."  ECF No. 127.  In other words, Mr. Resh is not being offered as an expert, and Resh "does not intend to have Eric Resh testify outside of the bounds of appropriate lay opinion testimony."  *Id.*  The issue is whether Mr. Resh's declaration, despite the

United States District Court
Northern District of California

above assurances, does nevertheless fall outside the bounds of appropriate lay testimony.

Under Federal Rule of Evidence 701, a lay witness may provide opinions "rationally based on the witness's perception" that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *United States v. Holmes*, No. 22-10312, 2025 WL 583307, at *6 (9th Cir. Feb. 24, 2025) (citing Fed. R. Evid. 701). "[W]hether evidence is more properly offered by an expert or a lay witness depends on the basis of the opinion, not its subject matter." *Id.* (quotations omitted). If the basis of a witness's opinion is "technical or specialized knowledge," then that opinion falls within Rule 702. *Id.* But if the basis of the opinion is "just familiarity with the subjects," then it is proper lay opinion under Rule 701. *Id.*

Although Resh conceded it "does not intend to have Eric Resh testify outside of the bounds of appropriate lay opinion testimony," it simultaneously argues that Eric Resh, as the inventor, "may qualify as an expert and testify what his claims would mean in the relevant art." *See* Resh Reply 6 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991). Both cannot be true. If Eric Resh is a lay witness, he cannot testify on matters that are within the scope of expert testimony. If he is an expert witness, he should have been designated under the procedure outlined in Rule 26. Because he was not designated as an expert witness, the Court treats him as a lay witness.

The Court takes some issue with the Resh Declaration because Mr. Resh, a lay witness, opines on issues traditionally reserved for experts requiring specialized knowledge. For example, Mr. Resh repeatedly discusses what a person of skill in the art (POSA) would have understood, what a POSA would have been motivated to do, and whether a POSA would have had a reasonable success in modifying inventions in a particular way. *See, e.g.*, Resh Decl. ¶¶ 54–59, ECF No. 126-2 at 37. The declaration also extensively discusses the structure, operation, and function of various poles.

In *Fresenius*, the court resolved a dispute over whether an individual's declaration provided "solely lay testimony, solely expert testimony, or a combination of both lay and expert testimony." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No. 597*, 2006 WL 1330002,

United States District Court
Northern District of California

at *3 (N.D. Cal. May 15, 2006). The court explained that when "declarants compare [prior art] to the patent, they provide testimony that ... requires specialized knowledge," and "this they are not permitted to do as laypersons." *Id.* (cleaned up). At the same time, "courts regularly allow lay witnesses" to "testify with regard to their personal knowledge of a particular invention or piece of prior art." *Id.* With that in mind, the *Fresenius* court ultimately permitted the witness testimony limited to his "personal knowledge regarding the machine and the way that it operates" but prohibited the witness from "comparing the [prior art] to the [asserted patent]." *Id.*

Similarly, in *Briese Lichttechnik Vertriebs GmbH v. Langton*, the court considered whether to strike the defendant's (a lay witness) declaration for improperly offering expert testimony in a patent case involving relatively uncomplicated technology—umbrella-shaped light reflectors for use in photograph and videography. No. 09 CIV. 9790 LTS MHD, 2012 WL 5457681, at *6 (S.D.N.Y. Nov. 8, 2012). Based on his personal experience and background with the accused products, the witness testified that three elements of an asserted claim did not appear in the accused product. The court permitted his testimony "as a lay witness on the structure and operation of the [accused products]" given his experience working with the relevant equipment but prohibited him from "pars[ing] the terms of the patent claims to opine as to whether the patent reads on the [accused product]" or "mapping the claim language of the patent to the structures in the accused [product]." *Id.* at *6.

The Court finds persuasive *Fresenius* and *Briese*'s treatment of similar testimony and will follow those courts' guidance. Here, given the straightforward nature of the technology involved in this case and Mr. Resh's experience and background with the relevant products, the Court will permit him to testify as to the structure and operation of the pool poles to the extent they are not based on specialized knowledge. Even if he has personal knowledge of the pool poles based on his experience in the industry, "there is no 'on the job' exception to Rule 702." *Holmes*, 2025 WL 583307, at *8. Thus, any opinions that rely on his specialized knowledge, training, or skill will be

1    stricken as expert testimony—this incudes testimony regarding what a POSA[2] would or would not

2    understand or do, the comparison of patent claims to accused products or prior art poles, and any

3    ultimate opinion as to invalidity or infringement resulting from his lay observations.

4    Accordingly, "some statements in the [Resh] Declaration exceed the scope of lay

5    testimony and should be stricken." *See Fresenius*, 2012 WL 5457681, at *6. The Court will strike

6    the paragraphs of Mr. Resh's declaration that impermissibly wade into testimony requiring

7    specialized knowledge. But the paragraphs discussing the structure and operation of the pool

8    poles will not be disturbed, even if they are discussed in the context of the prior art.

9    Defendants' motion to exclude is therefore GRANTED IN PART. The Court will

10    STRIKE paragraphs 21–25, and 42–46, 52–55, 57, and 59 of the Resh Declaration as proffering

11    testimony that requires specialized knowledge. As for paragraphs 12–19, the Court finds them

12    deficient for a separate reason. Those paragraphs, which concern when certain pool pole

13    competitors "began making, selling, and offering for sale" certain poles, lack any foundation as to

14    how Mr. Resh has personal knowledge about the contents of those paragraphs. Because that issue

15    can be remedied, the Court will not strike them but will not consider them when ruling on the

16    present motions.

17    With the above ruling in mind, the Court turns to the arguments regarding infringement

18    and invalidity.

19    **B.    Infringement**

20    Resh seeks summary judgment that Defendants' "two-tube poles" infringe claims 2, 11,

21    16, and 18, 19, and 21, and Defendants' "three tube poles" infringe claim 20 of the '852 Patent.

22    Although judgment in favor of Defendants is appropriate with respect to the Challenged Claims

23    for being invalid as obvious, the Court nonetheless considers the parties' infringement arguments,

24    which are relevant to claim 20.[3]

25    _____

26    [2] As described below, the parties agree for this motion that the POSA would be someone with
     specialized knowledge.

27    [3] Claim 20 is not subject to the obviousness ruling because Defendants did not move for summary
     judgment of invalidity based on obvious for that claim.

28

1

### 1.    Evidentiary Issues

2      Before reaching the substantive infringement arguments, the Court will address the

3  "evidentiary failures" Defendants contend preclude summary judgment.[4]  Defendants' Mot. 21.

4

### a.    Representative Models

5      Resh asserts that Defendants' Model 6016 is representative of all the two-tube pole models

6  and Defendants' Model 6317 is representative of all three-tube pole models for three reasons: first,

7  Eric Resh stated as much in his declaration.  *See* Resh Decl. ¶ 6 ("Of the Accused Products, (a)

8  Defendants' Model 6016 is representative of all '2 tube' models/versions of the Accused Products

9  and (b) Defendants' Model 6317 is representative of all '3 tube' models/versions of the Accused

10  Products.").  Second, Conrad Sr. testified as to whether his "button-style poles" generally have

11  certain limitations of the '852 Patent.  J. Conrad Dep. 184:2–5, ECF No. 126-2 at 163.  Conrad Sr.

12  continued to answer questions about the poles grouped together, without identifying any

13  meaningful difference between the poles such that that they needed to be treated separately.

14  Third, in responding to interrogatories, Defendants identified limitations it contended were not

15  present in "each of the Accused Products."  Skimlite Resp. to Second Set of ROGs 5, ECF No.

16  126-2 at 152.  In other words, Defendants themselves group the products together and failed to

17  identify any meaningful difference for purposes of evaluating infringement.

18      The Court finds that Resh has met its burden to show that Defendants' Model 6016 is

19  representative of all the two-tube pole models, and Defendants' Model 6317 is representative of

20  all three-tube pole models for purposes of patent infringement.  Conrad Sr. made no effort to

21  distinguish between models during his deposition, and, other than for claim 20, Defendants

22  identified no difference among the "Accused Products" when responding to Resh's interrogatories.

23  Even for claim 20, although Defendants state that their interrogatory response is limited to the

24

25  ───────────────

[4] Defendants argue that Exhibit 7, the deposition transcript of Jim Conrad, should be excluded as
26  not authenticated because there is no reporter's certificate.  Defendants' MSJ 21.  The Court is
surprised this minor oversight was not resolved informally.  Moreover, the issue has since been
27  resolved.  *See* 132-1, Ex. 26.  Further disputes regarding Conrad Sr.'s deposition testimony are
addressed below.

28  Case No.: 22-cv-01427-EJD
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
10

United States District Court
Northern District of California

United States District Court
Northern District of California

"specific model numbers" 6317 and 6323 because "[o]ther models would lack several additional features in Claim 20," they *do not actual identify* the additional features.  Skimlite Resp. to Second Set of ROGs 7.  This is not enough to raise a genuine factual dispute regarding whether claim 20 can apply to the other models—particularly where Defendants failed to articulate any differences between the models beyond the above conclusory statement.

In *Kenexa*, the court rejected defendants' argument that plaintiff failed to prove their products function in the same manner for purposes of infringement where defendants responded to an interrogatory "specifically ask[ing] defendants why each product did not infringe," yet defendants "responded in the same manner for all."  *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 747 (D. Del. 2010).  The court also found persuasive defendants' testimony explaining "how the products worked without differentiating any differences between them."  *Id.* So too here, based on the interrogatory response and Defendants' past treatment of the products as a whole during deposition, Resh has shown its proposed representatives are appropriate.  *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1295 (Fed. Cir. 2015) (discussing products together where defendant failed to "identif[y] differences between them material to the outcome").

Defendants contend that the selected models are not representative, citing opinions from their expert, Mr. Pratt.  *See* Pratt Resp. Rep. ¶ 34, ECF No. 129-3 at 476.[5]  That paragraph simply states that "Resh also bears the burden of demonstrating that each model of the Accused Products infringes."  *Id.* ¶ 34, ECF No. 129-3 at 490.  Mr. Pratt then "proceeds in the same manner as Resh's contentions" and "analyz[e] models 6016 and 6317 as representative of the other models of Accused Products."  *Id.*  He does not opine on the differences between the models or otherwise provide any basis for why the selected representative models cannot serve as representatives.

Accordingly, there is no genuine dispute that Models 6016 and 6317 can be treated as

---

[5] Defendants cite *L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006).  There, the Federal Circuit concluded that an infringement expert could not assume "without support" that one accused product was "typical" of all the accused products.  Resh's typicality showing here was sufficient.

representative for an infringement analysis.

### b.    Infringing Acts by the Conrads

Defendants argue that Resh submitted no evidence regarding any infringing act taken by either Barrett Conrad or James Conrad.  Defendants refer to their motion to dismiss the Second Amended Complaint, in which they sought to dismiss claims against the Conrads.  *See* ECF No. 115.  The Court dismissed all claims against Conrad Jr. for improper venue, and dismissed induced infringement claims against Conrad Sr.  *See* ECF No. 18.  Although the Court declined to dismiss direct infringement claims against Conrad Sr., Resh has not met its burden to show that summary judgment as to Conrad Sr.'s personal liability is appropriate.  Resh states that it "continues to submit that [the Conrads] are liable for the reasons previously submitted in opposition to" Defendants' motion to dismiss but does not otherwise refer to any evidence in the record.

Accordingly, the Court denies as moot Resh's motion as to direct infringement of Conrad Jr. as resolved in the Court's prior order.  Nor is Resh entitled to summary judgment of direct or indirect infringement of Conrad Sr. based on his reference to arguments made in opposing Defendants' motion to dismiss.

### c.    Evidence of the Structure of Accused Products

Defendants argue Resh submitted no evidence regarding "the structure" of any of the six different models of poles it accuses of infringement and failed to explain how each of the Accused Products meet the claims.  Defendants' Mot. 21 (citing *Traxcell Techs., LLC v. Sprint Comm'ns Co.*, 15 F.4th 1121, 1130 (Fed. Cir. 2021) and *Cellspin Soft, Inc. v. Fitbit, Inc.*, 2022 WL 2784467, at *7 (N.D. Cal. June 15, 2022)).  The Court declines to deny Resh's summary judgment motion of infringement on this basis.  Resh has attached to his motion declarations, various filings in this case, deposition transcripts, interrogatory responses, and other bates-stamped documents.  It is unclear what additional "evidence" Defendants believe is required.

Nor is *Traxcell*, a case involving alleged infringement of four patents relating to self-optimizing wireless networks and navigation technology, persuasive here.  The Federal Circuit in

that case agreed plaintiff had failed to create a genuine issue about whether defendant's accused technology met the asserted claims. *Traxcell*, 15 F.4th at 1130. The infringement allegations involved use of self-optimizing network technology and mobile devices. This case is starkly different. The '852 Patent relates to components and structures of pool poles, and the Accused Products are pool poles. Unlike the complex infringement theory asserted in *Traxcell*, Resh's infringement theory is straightforward, and Resh supplies a sufficiently detailed basis for that theory.

### 2.    Whether the Accused Products Infringe the Asserted Claims

A patent is directly infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). Determining infringement is a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *Id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *Id.* This second step is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The patent owner bears the burden of proving infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *See SmithKline*, 859 F.2d at 889

*United States District Court*
*Northern District of California*

1    (citations omitted).

2         Resh argues Defendants' February 15, 2024 Interrogatory responses prove infringement

3    because Defendants identify only two claim elements as not present in the Accused Products.

4    Resh Mot. 5; *see also* SUF ¶ 9.   The Interrogatory response states that, for claim 2, the following

5    two elements "are not present in each of the Accused Products": (1) "said second end of said outer

6    tube having structure for removably attaching a tool" (the "structure element"); and (2) "said first

7    end of said inner tube including a grip attached to the inner tube for a user to grasp and manipulate

8    the apparatus" (the "grip element").   Skimlite Resp. to Second Set of Interrogatories at 6.   For

9    claims 11, 16, 18, and 19, Defendants state that "[t]he Accused Products do not infringe [these

10   claims] for at least the same reasons that they do not infringe Claim 2 from which [they]

11   depend[]."  *Id.* at 6–7.   And for claim 21, Defendants identified only the "structure element" as

12   missing.  *Id.* at 7.

13        Consistent with the Interrogatory response, Defendants' expert, Mr. Pratt, opined only as

14   to why the Accused Products lack the above two limitations: the structure and grip elements.

15   *See* Pratt Responsive Rep. ¶¶ 57–60 (opining that the Accused Products do not infringe claim 2

16   because they lack the structure and grip elements); 61 (opining that the Accused Products do not

17   infringe claims 11, 16, 18, and 19 for same reason); and 75–81 (opining that the Accused Products

18   do not infringe claim 21 because they lack the structure element).

19        Thus, the salient issue for determining infringement is whether Defendants' dispute over

20   these two limitations is genuine.  *See* Defendants' Mot. 22 ("[S]ummary judgment should still be

21   denied because there are genuine disputes of material fact as to the presence of [these] claim

22   limitations.").   The Court addresses the two limitations below.

23                        **a.      Structure Element**

24        Claims 2 and 20 recite a "structure for removably attaching a tool," and claim 21 recites an

25   "attachment means for removably attaching a tool."  Although Defendants now argue that the

26   holes on the Accused Products should not be treated as a "structure" or "attachment," they took

27   the opposite position during claim construction briefing.  In describing the technological

28   Case No.: 22-cv-01427-EJD
     ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
     14

1    background of the '852 Patent, Defendants' responsive claim construction brief explained that the

2    claims recite "common features including 'a structure for removably attaching a tool' (*e.g.*, holes

3    2a)."  Defendants' Responsive Claim Construction Brief 2–3, ECF No. 49.  In other words,

4    Defendants explained that the holes in Figure 1, *are the structure* for attaching a tool.  If there was

5    any doubt, Defendants' claim construction brief also annotated Figure 1 from the patent as shown

6    below, identifying the holes with the label "structure for attaching tool."



*Id.* at 3.

13    Despite the unambiguous representation above, Defendants now argue that this

14    interpretation is inconsistent with the '852 Patent.  Defendants' Mot. 22.  Mr. Pratt explains that

15    "[h]oles are a void" where "no structure is present."  Pratt Resp. Rep. ¶ 43; *see also id.* ¶¶ 44–45

16    (explaining that the '852 Patent "discloses that the holes receive other structures" and opining that

17    these descriptions "are consistent with the plain and ordinary understanding that holes are voids

18    and not structures").  But this opinion cannot be reconciled with Defendants' prior explicit

19    representation that the holes were the structure for attaching a tool.  Particularly when Conrad Sr.

20    agreed during his deposition the Accused Products "have structure for removably attaching a

21    tool."  J. Conrad Dep. 192:7–11.

22    Defendants appear to be seeking a belated construction of the term "structure" to exclude

23    holes.  The Court declines to do so when Defendants previously had the opportunity to seek

24    construction of the term.  Although courts "may engage in rolling claim construction, in which the

25    court revisits and alters its interpretation of the claim terms as its understanding of the technology

26    evolves," this is not one of those situations.  *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d

United States District Court
Northern District of California

1   1349, 1359 (Fed. Cir. 2006); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-

2   03587-WHO, 2015 WL 757575, at *5 (N.D. Cal. Feb. 20, 2015) (citations and quotations omitted)

3   ("While district courts retain discretion to hear belated claim construction arguments, … they are

4   not obligated to rule on such arguments when raised for the first time in summary judgment

5   briefs").  Defendants' only justification for now arguing that holes are not a "structure" or

6   "attachment means" under the '852 Patent is because "[a]s the case developed, it became clear that

7   labeling the 'holes' as [a structure] was inconsistent with the '852 patent."  Defendants' Mot. 23,

8   n.3.  The Court is not persuaded.  Defendants identify no reason why they could not have analyzed

9   the patent sooner and developed this theory at the time of claim construction or otherwise

10  requested a construction of the term sooner.

11          Accordingly, there is no genuine dispute that the "structure element" is present in the

12  Accused Products.

13                          **b.      Grip Element**

14          Defendants argue that the Accused Products lack "a grip attached to the inner tube" as

15  required by claims 2, 11, 16, and 18–20.  Although Conrad Sr. testified that the Accused Products

16  meet this limitation (*see* J. Conrad Dep. 192:7–193:2), Defendants contend that the Accused

17  Products lack this feature based on a read of the '852 Patent specification.  Defendants' Mot. 22.

18  The '852 Patent distinguishes the claimed devices from prior art poles where the grip merely

19  "fit[s] very tightly" over the tube, but "can be knocked off the end of the inside tube."  *Id.*

20  Because the grips on the Accused Products "fit very tightly over the tube, can be knocked off, and

21  do not include a rivet or screw," Defendants argue the Accused Products' grip do not meet the grip

22  as described in the claims.  For this argument, Defendants rely on Mr. Pratt, who opines that the

23  grips on the Accused products do not meet the claim limitation because they are not "attached" in

24  the way described by the specification.  *See* Pratt Responsive Rep. ¶¶ 48–53, 59–60, 73–74.

25          Resh argues that Defendants are again seeking a belated construction of "grip" to cover

26  only grips attached to the pole by screws or rivets.  Resh Mot. 5–6.  The Court agrees.  During

27  claim construction, Defendants characterized the "grip" of the '852 Patent as a "common feature."

28  Case No.: 22-cv-01427-EJD
    ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
    16

1     It did not seek a construction of the term.  The Court thus construes "grip" as having its plain and

2     ordinary meaning.  And the plain and ordinary meaning of grip does not cover only those grips

3     attached using screws or rivets.  Again, Defendants provide no justification regarding why it failed

4     to seek a construction of grip at the appropriate time.

5          Accordingly, no genuine dispute exists over whether the "grip" limitation is present in the

6     Accused Products.

7                                    *     *     *

8          Resh's motion for summary judgment as to infringement of claims 2, 11, 16, 18–21 of the

9     '852 Patent is GRANTED as set forth above but DENIED as to any infringement against the

10    Conrads.

11    **C.     Invalidity**

12         Both parties ask the Court to resolve invalidity issues on summary judgment.  Defendants

13    seek summary judgment of invalidity of the Challenged Claims in view of the (1) the A.G. Pro

14    pole, (2) U.S. Patent Publication No. 2010/0244475 ("Hatcher"), and/or (3) the Skimlite 5008 pole

15    in combination with U.S. Patent No. 5,220,707 ("Newman").  Defendants also seek summary

16    judgment that claim 20 is invalid under § 112 for lack of written description.  Resh moves for

17    summary judgment on invalidity in his favor because Defendants failed to corroborate the A.G.

18    Pro Pole and the Solakian Pole.

19         "A moving party seeking to invalidate a patent at summary judgment must submit such

20    clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."

21    *Boston Sci. Corp. v. Cordis Corp.*, 422 F. Supp. 2d 1102, 1108 (N.D. Cal. 2006).

22    **1.     Anticipation**

23         The Challenged Claims are invalid if the A.G. Pro Pole or the Solakian Pole (1) were

24    "known or used by others" in the United States, or "patented or described in a printed publication"

25    anywhere before, September 2011, or (2) were "in public use or on sale" in the United States more

26    than one year before September 2011.  35 U.S.C. §§ 102(a)–(b).  To establish that an asserted

27    reference is prior art under § 102(b), the patent challenger must prove, by clear and convincing

United States District Court
Northern District of California

1    evidence, that it predates the critical date. *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364,

2    1368 (Fed. Cir. 2019) (citations omitted).

3        Whether a reference is prior art is a question of law based on underlying factual questions.

4    *ATEN*, 932 F.3d at 1367 (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151,

5    1157 (Fed. Cir. 2004)). Whether a reference is publicly accessible is a question of fact. *Id.* (citing

6    *In re NTP, Inc.*, 654 F.3d 1279, 1296 (Fed. Cir. 2011). The '852 Patent claims priority to

7    U.S. Provisional Application Ser. No. 61/538,074, filed Sep. 22, 2011. To establish that the A.G.

8    Pro Pole or the Solakian Pole qualifies as prior art, Defendants must prove by clear and

9    convincing evidence that it existed prior to September 22, 2011. *See ATEN*, 932 F.3d at 1368.

10        **a.    The A.G. Pro Pole**

11        Defendants contend that the A.G. Pro Pole (shown below), allegedly made, used, offered

12    for sale, and sold as early as 2000 by a pool man named Ray Leduc, is prior art and renders the

13    '852 Patent invalid.



14

15

16

17        Defendants argue that the A.G. Pro Pole is invalidating prior art to the '852 Patent because

18    it contains all elements of the Challenged Claims and because the pole was known, used, offered

19    for sale, and sold in the United States many years before September 2011. In support, Defendants

20    rely primarily on the testimony of Mr. Leduc, the inventor. Mr. Leduc testified that he made his

21    first A.G. Pro pole from a Mr. Long Arm pole that he purchased at Home Depot. He altered the

22    pole using adapters and testified that he publicly used the pole to clean his client's pools in the

23    early 2000s. Leduc Decl. ¶¶ 7–10, ECF No. 129-3 at 163; Leduc Dep. 56:17–57:16–20, ECF No.

24    129-3 at 181.[6] He testified that he stored the pole in the back of his truck so that it was publicly

25    visible and gave the pole to Arthur Grimmit, the person who sold Mr. Leduc the adapters that he

26    _____

27    [6] The A.G. Pro Pole in Defendants' possession is identified and referred to at points in the parties'
     briefings as "Exhibit 88."

28    Case No.: 22-cv-01427-EJD
     ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
     18

United States District Court
Northern District of California

affixed to the Mr. Long Arm poles.  Mr. Grimmit testified that he received the pole and used it to clean his pool in the early 2000s.  Grimmit Dep. 25:3–26:18, ECF No. 129-3.  Additionally, Mr. Leduc purportedly sold his pole to Superior Pool Products ("SCP"), a southern California pool store.  An SCP employee, Danny Cervantez, testified that he purchased the poles from Mr. Leduc on behalf of SCP.  Cervantez Dep. 23:3–24:17, ECF No. 129-3 at 285.

Resh disputes Defendants' showing on several grounds, but mainly because Defendants have not sufficiently corroborated Mr. Leduc's testimony about the A.G. Pro Pole.  "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony."  *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999).  Here, Defendants do proffer some evidence corroborating the mere testimonial evidence.  Defendants produced Exhibit 88, "an original A.G. Pro Pole," and multiple boxes of what Mr. Leduc claims are left over grips and adapters that he used to make the A.G. Pro poles.  Mr. Leduc also provided invoices dated in 2000 or 2001 documenting his purchase of the components.  And Mr. Cervantes testified that he purchased the poles from Mr. Leduc on behalf of SCP and verified that the store created vendor records when a party sold a pole.

Despite the above evidence, genuine factual disputes preclude summary judgment for both parties as to whether the AG Pro Pole qualifies as invalidating prior art.  Resh has raised legitimate challenges to Defendants' proffered evidence.  For instance, the pole at issue is more than 20 years old.  Exhibit 88, the only physical example, is undated, and Defendants rely on Mr. Leduc's testimony to explain when Exhibit 88 was assembled.  While it is possible that Mr. Leduc used the components identified in the boxes to construct the A.G. Pro Pole over twenty years ago, a fact finder must weigh the credibility of his story.  Beyond the testimony of the inventor himself, Defendants rely on invoices for commercially available components used by pool workers.  The invoices confirm that the components were purchased at the relevant time, but they do not establish that Mr. Leduc used those components to assemble Exhibit 88.  And the vendor record confirms that Mr. Leduc was a vendor at SPC, but it does not show what Mr. Leduc

United States District Court
Northern District of California

United States District Court
Northern District of California

1  sold.  Nor have Defendants produced receipts from sales from the pole at the relevant time.

2  Additionally, Resh cites to the declaration of Tom Carlisi, whose testimony raises doubts to Mr.

3  Leduc's story.[7]  Mr. Carlisi states that at least once a week every week from 1999–2001, he went

4  into the pool distributor store where Mr. Leduc purportedly sold the A.G. Pro Poles, but he never

5  saw an AG Pro Pole in the stores.  He also attests that he never saw the pole in the back of

6  Mr. Leduc's truck with Mr. Leduc's pool cleaning tools, or in any pool man's truck, and more

7  generally, he never saw or heard anything about the AG Pro pole.  Holland Decl. Ex. 12.

8        Holistically, Defendants tell a compelling story about the pool pole and its origins, but

9  summary judgment must be denied even under a rule of reason because of genuine factual disputes

10  over whether the physical Exhibit 88 was the original A.G. Pro Pole and whether it was offered for

11  sale or sold during the 2000–2001 timeframe.  Those issues are more appropriately resolved by a

12  fact finder.[8]

13        Accordingly, neither party is entitled to summary judgment as to whether the AG Pro Pole

14  renders the '852 Patent invalid.

15        **b.**      **Solakian Pole**

16        Resh seeks summary judgment that Defendants have not sufficiently corroborated the

17  Solakian Pole, a physical pool pole Defendants assert as prior art.  Defendants respond that three

18  witnesses testified that they and others in the industry "knew of the pole long before the priority

19  date of the '852 patent."  Defendants Mot.  One of the declarants is Mike Solakian, who testifies

20  that an unidentified person brought a prototype (the Solakian Pole) to Mr. Solakian's business.

21  Solakian Decl., ECF No. 126-2 at 222.  The second declaration is from Dick Gross who testifies

22  that the Solakian Pole was stored at one of his company's shops from about 2002–2012.  D. Gross

23

24  _____

[7] Even if Mr. Carlisi's testimony is "purely negative" such that it should be given "no great value,"
25  the Court finds it, combined with the other evidence in the record casting doubt on the A.G. Pro
Pole's origins, is sufficient to defeat summary judgment.  *See* Defendants' Reply 11 (quoting *The*
26  *Barbed Wire Cases*, 143 U.S. 275, 288 (1892)).

[8] Because the Court concludes factual issues surrounding the assembly and timing of the A.G. Pro
27  Pole preclude summary judgment, the Court need not evaluate whether the pole contains all
elements of the relevant claims.

28  Case No.: 22-cv-01427-EJD
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

Decl., ECF No. 126-2 at 231.  The third is from Mr. Gross's son, Rich Gross who attested to similar facts as his father regarding the Solakian Pole.  R. Gross Decl., ECF No. 129-3 at 112.

The Court agrees these declarations, combined with the existence of physical pole itself, raise a genuine dispute regarding whether the Solakian Pole existed prior to September 22, 2011.

Resh raises no other issues with respect to the Solakian Pole's status as potential prior art. Because factual disputes remain surrounding the genesis of the Solakian pole, summary judgment of no invalidity based on the Solakian Pole is not appropriate.

*    *    *

For the foregoing reasons, summary judgment is DENIED for both parties as to invalidity based on anticipation.

### 2.    Obviousness

A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103; *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007).  "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." *KSR*, 550 U.S. at 406 (citations and quotation marks omitted).  Assessing obviousness is based on an "expansive and flexible approach" that "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 925 (Fed. Cir. 2024) (citations omitted).

The Federal Circuit has emphasized the "clear distinction in [its] case law between a patent challenger's burden to prove that a skilled artisan would have been motivated to combine prior art references and the additional requirement that the patent challenger also prove that the skilled

artisan would have had a reasonable expectation of successfully achieving the claimed invention from the combination." *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021). These are separate requirements; a finding that Defendants have demonstrated a motivation to combine prior art references does not necessarily mean that they have also demonstrated a reasonable expectation of success in achieving the claimed invention by doing so. *Id.*

### a.    The Level of Ordinary Skill in the Art

Defendants' expert opines that a POSA would likely have had either a high school education and at least 4 years of experience in the mechanical arts, such as mechanical, industrial, or general engineering, or a bachelors' degree in mechanical, industrial, or general engineering and at least one year of work experience. Pratt Decl. ¶ 65. Resh contends that the level of ordinary skill in the art is "a pool man who has worked at least 2–3 years in the field [of swimming pool telescoping poles] cleaning swimming pools." *See* Resh's Response to Interrogatory No. 11.

Although he disagrees with the relevant "field" for the '852 Patent, Mr. Pratt states his opinions "would not change" if the Court adopts Resh's position. Pratt Decl. ¶ 66. The Court therefore applies Resh's definition of a POSA for purposes of these motions.

### b.    Hatcher

For Hatcher, Defendants assert only obviousness as a basis to invalidate the Challenged Claims. *See* Defendants' Reply 1 ("Defendants do not contend that Hatcher anticipates the asserted claims."). "Though less common, in appropriate circumstances, a patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016).

Hatcher was published on September 30, 2010 and describes an "extendable reaching tool." The publication explains that extendable tools, such as the one described in Hatcher, can be used to reach objects close or remote. For example, a person picking fruit may need a short tool to

reach fruit slightly out of reach, or they may need a longer tool for fruit near the top of the tree. Hatcher [0002]. Hatcher explains that the claimed concept provides for an easy to assemble extendable tool with an internal drive assembly. Below shows Figure 1 from Hatcher:



Resh admits that Hatcher discloses most limitations of the Challenged Claims. SUF ¶¶ 163–168, 176–178, 180–188, 191–196, 200–201, 212 (limitations 1[pre]-1[e], 1[g]-1[i], 2[pre]-2[b], 2[d]-2[i], 6-8, 11, 16, 18, 21[pre]-21[c], 21[e]-21[h], and 24). But he disputes that Hatcher discloses the "structure for removably attaching a tool" and raises a few additional arguments as to Hatcher, addressed below. To be clear, though, it is Defendants' burden "to prove by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Novartis Pharm. Corp. v. W.-Ward Pharm. Int'l Ltd.*, 923 F.3d 1051, 1059 (Fed. Cir. 2019) (citation and internal quotation marks omitted). Only then does the burden shift to Resh to raise a genuine dispute of material fact.

**Structure for removably attaching a tool (claims 1, 2, 21)**. Independent claims 1, 2, and 21 of the '852 Patent require the pole to have a "structure for removably attaching a tool." Resh disputes that the tool disclosed in Hatcher is removably attachable and that Hatcher has such a structure. SUF ¶ 169. Citing the Pratt Declaration, Defendants argue that a POSA would have found it obvious to modify the end of Hatcher's pole to removably attach the tool. Pratt Decl.

United States District Court
Northern District of California

1    ¶¶ 485–90.  Mr. Pratt opines that structures for removably attaching tools were ubiquitous in prior

2    art telepoles by 2011.  *Id.* ¶ 486 (citing Newman at Fig. 1, 1:15–22 (disclosing a threated post)).

3    He also opines that a POSA would have recognized the advantages of including a structure for

4    removably attaching a tool on Hatcher's device.  For example, having a structure for removably

5    attaching a tool would allow the user to use the telepole for multiple applications, it would make

6    transporting multiple tools easier, and it could increase the life of the pole.  *Id.* ¶¶ 486–88.

7    Regarding whether a POSA would have had a reasonable expectation of success, Mr. Pratt opines

8    that it would have been a "straightforward manner of engineering" to adapt these known structures

9    for use with Hatcher's pole.  *Id.* ¶ 489.

10    In response, Resh relies on paragraphs 52–55 of the Resh Declaration.  Because these

11    paragraphs have been stricken (*see supra* Section III(A)), the Court cannot consider them.

12    Defendants have provided evidence that a POSA would have found it obvious to modify the end

13    of Hatcher's pole to removably attach the tool.  Pratt Decl. ¶¶ 482–490.  Additionally, Resh

14    admitted that "telepoles having an outer tube that has structure for removably attaching a tool were

15    publicly known, used, and sold for cleaning swimming pools before September 22, 2011."  Smith

16    Decl., Ex. 1012 at RFA 179.

17    Thus, even crediting Resh's counter evidence that "Hatcher does not lend itself at all to

18    removing its gripping tool from the end of the pole" (Resh Decl. ¶ 55), this is a situation where the

19    claimed subject matter involves "the simple substitution" of "one known element" (a pool pole

20    lacking a structure to attach a tool) with another (a structure for attaching a tool).  *See KSR*, 550

21    U.S. at 417.  Here, Defendants have presented clear and convincing evidence that the technique of

22    having an outer tuber with a structure for removably attaching a tool "has been used to improve"

23    devices, and the fasteners needed to convert a fixed connection to a removable connection were

24    known and not inventive in 2011.  Pratt Decl. ¶¶ 485–86.  Additionally, beyond a conclusory

25    statement that Hatcher does not lend itself to removing the gripping tool, Resh identifies no

26    evidence from which the Court can find a genuine dispute.

27    Based on this evidence in the record, Defendants have met its burden regarding this

28    Case No.: 22-cv-01427-EJD
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
24

1    limitation.

2    **Pole for cleaning a pool (claim 1)**.  Claim 1 requires: "the lengths of said outer and inner

3    tubes when engaged with each other being sufficient to permit a user gripping said first end of said

4    inner tube to manipulate the swimming pool cleaning tool at the second end of said outer tube

5    against the bottom of a swimming pool while the user is standing on the side of the pool."  The

6    Court construed this term to have its plain and ordinary meaning.  Defendants contend Hatcher

7    disclosed this claim or renders it obvious because it is a telescoping pole that is at least long

8    enough to clean pools, and a POSA would have found it obvious to modify the length of the pole

9    to suit the pool.  Defendants' Mot. 13 (citing Pratt Decl. ¶¶ 502–504).

10   Resh disputes that Hatcher discloses this term or renders it obvious.  In support, he relies

11   on paragraph 56 of the his declaration, which states: "Hatcher does not disclose 'the lengths of

12   said outer and inner tubes when engaged with each other being sufficient to permit a user gripping

13   said first end of said inner tube to manipulate the swimming pool cleaning tool at the second end

14   of said outer tube against the bottom of a swimming pool while the user is standing on the side of

15   the pool' [Claim 1[j]]."  Resh Decl. ¶ 56.  This paragraph was not stricken because the testimony

16   does not rely on specialized knowledge; any lay person looking at Hatcher can observe whether or

17   not it says the above.

18   That said, even though not stricken, the statement is conclusory and not enough, standing

19   alone, to raise a genuine dispute over whether Hatcher renders this limitation obvious.  It's true

20   Hatcher says nothing about pools.  But Mr. Pratt explains that Hatcher discloses "various

21   modification and alternatives" could be developed in light of the overall teachings of the

22   disclosure, such that a POSA would have recognized that this includes the length.  Pratt Decl.

23   ¶ 503.  According to Mr. Pratt, it follows then that a POSA would have recognized that they could

24   manufacture Hatcher's device to an appropriate length to reach the bottom of a deep pool.  *Id.*

25   Mr. Pratt also opines that a POSA would have known that a variety of devices were capable of

26   cleaning a swimming pool and would have recognized that Hatcher's grasper could grasp objects

27   from the bottom of a swimming pool.  *Id.*  But even if the grasper is not considered a pool

28   Case No.: 22-cv-01427-EJD

1    cleaning tool, Mr. Pratt opines that a POSA would have been motivated to swap the grasper for a

2    pool cleaning tool based on the desire to design a pole to suit the application for which it is

3    intended. *Id.*; *see also id.* ¶ 174.  This makes sense.  A person in the pool cleaning business with

4    only Hatcher's pole would be motivated to replace the grasper with a brush, for example, if that

5    person needed to brush the sides of a pool.

6            Based on the record before it, the Court finds that Defendants have met their burden

7    regarding this limitation.

8            ***Pool cleaning tool attached with a v-clip (claim 3)***.  Claim 3 recites: "a swimming pool

9    cleaning tool attached to said second end of said outer tube using at least one v-clip that can be

10   inserted into two holes positioned opposite each other near the end of said outside tube."  Hatcher

11   does not disclose this claim.  Defendants argue that a POSA would have found it obvious to

12   combine a standard v-clip with Hatcher's pole because the using v-clips in this manner was known

13   in the art and "the standard way to connect a swimming pool cleaning tool to a pole."  SMUF ¶

14   189.  And a POSA would have found it obvious to use this "known configuration" (the v-clip)

15   with the structure for attaching a pool cleaning tool (addressed above), according to Mr. Pratt,

16   because any changes to the existing mechanism would have involved "nothing more than drilling

17   particular holes in the end of an outer pole and attaching a standard pool cleaning tool to the pole."

18   Defendants' Mot. 14 (citing Pratt Decl. ¶¶ 192–98, 316–18, 533–35).

19           Resh responds that "V-clips are not at all compatible with Hatcher," and therefore a POSA

20   would not have a reasonable expectation of success in modifying Hatcher in the way Defendants'

21   argue.  Resh Decl. ¶ 57.  This opinion in Resh's declaration has been stricken, though, so the

22   Court cannot consider it.  Resh has not identified any other evidence from which the Court can

23   find a material dispute preventing summary judgment on this limitation in Defendants' favor.

24   Even assuming as true that v-clips are not compatible with Hatcher, it is undisputed that v-clips

25   are not new.  And Defendants have shown by clear and convincing evidence that it would have

26   been obvious to modify Hatcher to include structure for removably attaching a tool—such that v-

27   clips could be used with Hatcher's modified end piece.

28   Case No.: 22-cv-01427-EJD
     ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    ***Lightweight material (claim 19)***.  Claim 19 recites that the telepole tubes are made of a

2    "relatively lightweight material such as aluminum."  Hatcher does not disclose the materials used

3    for its poles, but Defendants argue a POSA would have found it obvious to make Hatcher's tubes

4    out of a relatively lightweight material.  Defendants' Mot. 14.  Mr. Pratt opines that a POSA

5    "would have recognized that it was desirable to make the pole from a lightweight material" and

6    "such poles were known in the industry."  Pratt Decl. ¶ 555; *see also* SUF ¶ 179 (undisputed that

7    aluminum poles were well known in the industry).  Mr. Pratt also opines that a POSA would have

8    been motivated to combine the aluminum pole with Hatcher, noting that such motivation would

9    have stemmed from a desire to make a lighter pole.  Pratt Decl. ¶ 555; *see also* SUF ¶ 199

10    (undisputed that a "POSA would have recognized by 2011 that it would have been desirable to

11    make Hatcher's tubes from a lightweight material").  Additionally, based on the existence of

12    aluminum pool poles already in the industry, it is plain to see that—and Resh does not dispute—a

13    POSA would have had a reasonable expectation of success in using an aluminum pole.

14    Resh raises no genuine dispute warranting denial of summary judgment based on this

15    limitation.

16    ***Grasper (claim 22)***.  Claim 22 requires that the "tool" of claim 21 "is a swimming pool

17    cleaning tool."  The dispute regarding this limitation is whether a POSA would have found it

18    obvious to modify Hatcher to remove the existing grasper and replace it with a swimming pool

19    cleaning tool.  Defendants proffered sufficient evidence showing that it would be obvious.  *See*

20    *supra* at 24–25 (discussion regarding claim 1).  It also consistent with common sense that, once

21    Hatcher has a structure for removably attaching a tool, a person cleaning a pool would find it

22    obvious to attach an appropriate pool cleaning tool instead of a grasper.  When a technology is

23    simple, the Court's obviousness analysis "may include recourse to logic, judgment, and common

24    sense available to the person of ordinary skill that do not necessarily require explication in any

25    reference or expert opinion."  *See Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329

26    (Fed.Cir.2009).

27    As to this limitation, Resh points to a paragraph of the Resh Declaration, which, though

United States District Court
Northern District of California

1    not stricken, does not bear on whether or not it would be been obvious for a POSA to modify

2    Hatcher.  *See* Resh Decl. ¶ 56.

3            Accordingly, Defendants have met their burden to show no genuine dispute of material fact

4    as to this limitation.

5            ***Concrete finishing tool (claim 23)***.  Claim 23 recites "wherein the tool is a concrete

6    finishing tool."  Defendants argue a POSA would have found it obvious to attach a concrete

7    finishing tool to Hatcher.  Mr. Pratt opines that "[c]oncrete finishing tools, and specifically

8    concrete float tools, incorporate similar capabilities as the drywall finishing tool disclosed in"

9    Hatcher.  Pratt Decl. ¶ 189 (referring to Jungklaus); *see also* ¶ 610 (applying analysis of concrete

10   finishing tool to Hatcher).  Mr. Pratt also opines that a POSA "would have known that a wide

11   arrangement of devices were capable of cleaning a swimming pool in some manner" and "would

12   have been motivated to select a tool that is appropriate for the desired use case."  *Id.* ¶ 174.  With

13   respect to the concrete finishing tool, specifically, Mr. Pratt opines that a POSA would have

14   recognized that it would have been "a matter of routine engineering to modify, or replace" the tool

15   of Hatcher "with an adaptor having a float for leveling and smoothing wet concrete."  *Id.* ¶ 189

16   (applying opinion in context of Jungklaus); *see also id.* ¶ 609 (applying same opinion to Hatcher).

17           Resh's only rebuttal evidence is a stricken statement from Mr. Resh.  SUF ¶ 211 (citing

18   Resh Decl. ¶ 59).  As above, it makes sense that a POSA would find it obvious to replace the

19   grasper with a pool cleaning tool.  It also makes sense that one of those tools would be a concrete

20   finishing tool.

21                              *       *       *

22           In sum, all of the elements of the Challenged Claims as described in '852 Patent either

23   existed in Hatcher or were common in previous poles.  Based on the evidence before the Court, it

24   is not genuinely disputed that a pool man with 2–3 years of experience in the pool cleaning field

25   would have found it predictable to combine these features with reasonable success in doing so.

26

27

28   Case No.: 22-cv-01427-EJD
     ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
     28

United States District Court
Northern District of California

1

### c. Skimlite 5008 and Newman

2       The Skimlite 5008 is a pool pole made by Defendants that has been sold in the United

3   States prior to 2011.  SUF ¶¶ 38–39.  The Skimlite 5008 pole is shown below:

4
5
6   
7
8

9       Newman is applicant admitted prior art and discussed in the background of the '852 Patent.

10  '852 Patent, 5:33–63.  Newman, issued in 1993, is titled "Tool Reach Extender with Locking

11  Assembly" and discloses a detent locking mechanism on the pole, as shown below in Figure 1:

12
13
14  
15
16

17      Defendants argue that Newman would anticipate most claims of the '852 Patent, except

18  that the smaller pole attaches to the tool and the larger pole attaches to the grip (the opposite of the

19  claims).  Pratt Decl. ¶ 353.  Because the '852 Patent explains that the claimed formation (the lower

20  tube is the outer tuber, and the upper tube is inner) was typical in pool poles, Defendants contend

21  "Resh's claims merely combine a known pole configuration with a known detent locking

22  mechanism."  Defendants Mot. 16 (citing Pratt Decl. ¶ 359).

23      First, as to reasons to combine, Defendants rely on Mr. Pratt who opines that POSAs had

24  only one of two options for where to place the structure for attaching the tool: either the outer tube

25  or the inner tube.  Pratt Decl. ¶ 355.  He explains that choosing to switch sides would have been

26  "simply a matter of sizing the component to fit the pole and the tube."  *Id.* (referring to Hatcher

27  [0027], which explains that the pole configuration can be reversed).  Defendants contend that

28  Case No.: 22-cv-01427-EJD

POSAs would have been motivated to substitute Newman's detent locking mechanism for the locking mechanism on the Skimlite 5008 because the twistable locking mechanism (1) could loosen and cause undesirable movement of the inner tube, and (2) could become hard to tighten on cold days. *See* Defendants' Mot. 16. For this, Defendants point to the specification of the '852 Patent, which generally discusses the shortcomings of the locking mechanism used in prior art poles (*see* '852 Patent, col. 4:6–24) and Mr. Pratt's opinion with respect to the A.G. Pro Pole (Pratt Decl. ¶ 648). Neither of these are sufficient to determine that a POSA would have been motivated to substitute Newman's detent locking mechanism for the mechanism on the Skimlite 5008. The specification does not speak to what a POSA would have been motivated to do, and Mr. Pratt's opinion with respect to the A.G. Pro Pole is not persuasive because factual disputes remain over whether it can be treated as prior art. Without the above evidence, the Court is left with only attorney argument on both sides. Although expert testimony is not always needed, particularly when "[t]he technology is simple," there appear to be "underlying factual issues in dispute as to" this issue. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 (Fed. Cir. 2008).

Defendants have not met their burden to show that a POSA would have found it obvious to substitute Newman's detent locking mechanism for the twistable lock on the Skimlite 5008 pole. The Court need not evaluate the parties' arguments with respect to the other claim limitations and whether they are obvious in light of Skimlite 5008 combined with Newman.

### 3.    Secondary Considerations

Before reaching an ultimate determination on whether summary judgment of obviousness is appropriate, the Court must consider the secondary considerations of nonobviousness. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078–79 (Fed. Cir. 2012). "[T]he burden of persuasion remains with [Defendants] during litigation because every issued patent is entitled to a presumption of validity." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373 (Fed. Cir. 2018) (quoting *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013)). While this burden of persuasion remains with Defendants,

United States District Court
Northern District of California

1    Resh "bears the burden of production with respect to evidence of secondary considerations of

2    nonobviousness." *Id.* "Such secondary considerations as commercial success, long felt but

3    unsolved needs, failure of others, etc., might be utilized to give light to the circumstances

4    surrounding the origin of the subject matter sought to be patented." *Graham v. John Deere Co. of*

5    *Kansas City*, 383 U.S. 1, 17–18 (1966).

6         Resh identifies several pieces of evidence he argues raise genuine issues of material fact

7    underlying the ultimate conclusion of obviousness.  First, based on Resh's declaration, there were

8    no telescoping poles with the claimed configuration prior to Resh's invention in the '852 Patent.

9    Resh Decl. ¶ 10.  Second, Resh contends that he has identified at least six infringing companies,

10   thus demonstrating evidence of copying.  For this, he points to filings submitted to the PTO

11   wherein he argued that several companies copied.  *See, e.g.*, Holland Decl. Ex. 3 at RESHL4084-

12   000938–992.  Third, two independent pool industry manufacturers purportedly indicated that they

13   were skeptical of the '852 Patent's concepts.  SUF ¶ 35 (citing Solakian Decl.; D. Gross Decl.).

14   Fourth, Conrad Sr. "gasped" when he first saw Resh's inventions.  SUF 46.  And finally, Resh

15   contends that "Defendants themselves had been in the telescoping pole business for decades" and

16   "they never found it 'obvious' to make any pole with the '852 patent's combination of features,

17   until after seeing Resh's inventions."  Resh Mot. 21.

18        Defendants respond that secondary considerations cannot overcome obviousness for three

19   reasons (1) the strength of Defendants' prima facie case of obviousness overcomes any secondary

20   sources, (2) Resh failed to identify specific secondary considerations when prompted in an

21   interrogatory and instead referred Defendants "to hundreds of pages" of the prosecution history,

22   and (3) Resh failed to identify the requisite nexus.  On the second point, Defendants argue this

23   failure "to clearly identify its secondary considerations" constitutes waiver.  Defendants Mot. 19.

24   The Court disagrees; the proper recourse to challenge the clarity of interrogatory responses was

25   during fact discovery.

26        On the first point, the Federal Circuit has held that secondary considerations cannot

27   overcome a strong showing of obviousness, including on summary judgment.  *ZUP*, 896 F.3d at

United States District Court
Northern District of California

1375.  The question then arises: what is a "strong showing" of obviousness?  The Federal Circuit has explained that "where a claimed invention represents no more than the predictable use of prior art elements according to established functions," evidence of "secondary indicia are frequently deemed inadequate to establish non-obviousness."  *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013).  That captures the present situation.  As described below, Resh's secondary considerations as presented cannot overcome Defendants' showing of obviousness.

     *Copying*.  The Federal Circuit has explained that "a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis.'' *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) (citations omitted).  To show copying, Resh refers to over 50 pages in the '852 Patent's prosecution history which purportedly show that, in addition to Defendants, three other companies have copied Resh's invention.  *See* Holland Decl. Ex. 3 at RESHL4084-000938–992.  The Court will not parse through over 50 pages of argument raised in a separate proceeding to discern arguments raised before the PTAB.  Resh offers no reason why the Court can—or should—treat those arguments as incorporated by reference here.  Accordingly, the Court will not consider Resh's arguments made in the PTAB to the extent the arguments are not also before this Court.

     Separate from the pages Resh cites from the prosecution history to show copying, he also refers to the declaration of Travis Schonleber, a sales representative for various products in the swimming pool industry.  Schonleber Decl., ECF No. 126-2 at 139.  Mr. Schonleber testifies that he observed third-party poles which had the "same type of lever lock mechanism to adjust the pole length," and which had other aspects claimed in the '852 Patent.  *Id.* ¶ 4; *see also id.* ¶ 8 (describing the aluminum interior tubes and the holes drilled in the side the lever lock).  Resh refers to a second declaration from Mr. Resh describing how he saw another lever-lock pool pole at a trade show that had three concentric tubes with a lever-lock, detent holes, v-clips, and a grip configured in the same manner of the pole described in the '852 Patent.  *See* Holland Decl., Ex. 25.

United States District Court
Northern District of California

Both declarations include photographs where the Court can see the above features. Accordingly, Resh's proffered evidence is "reasonably commensurate with the scope of the claims." *Rambus Inc. v. Rea*, 731 F.3d 1248, 1257 (Fed. Cir. 2013) (quotations omitted). Based on the above, Resh has presented evidence, albeit weak, that the copying is tied to a specific product that "embodies the claimed features and is coextensive with them." *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

*Skepticism and gasp*. "Evidence of industry skepticism is a question of fact that weighs in favor of non-obviousness." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1335 (Fed. Cir. 2016). As to skepticism, Resh relies on two declarations in the record. The first declaration in no way suggests the declarant was skeptical of the '852 Patent's concepts. *See generally* Solakian Decl. The second describes several reasons why the declarant chose not to pursue making a pole with intermediate locking stops, including because it "would have been very involved to try to make the pole commercially" which would have required "a mold for making components such as the locking mechanism." D. Gross Decl.

Finally, Mr. Resh claims that Conrad Sr. "gasped" when he "first saw the features of the assembled '852 claimed inventions." Resh Decl. ¶ 20. Surprise can constitute skepticism, which can support nonobviousness. *See, e.g.*, *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1337 (Fed. Cir. 2015) (holding testimony that third parties were 'worried' or 'surprised' was sufficient to establish skepticism). Conrad Sr. denies this occurred. Whether or not Conrad Sr. expressed surprise at Mr. Resh's invention is not for the Court to resolve. But even if true, one gasp by a competitor is not compelling evidence that those in the industry were skeptical about the workability of the claimed pole configuration. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1335-36, 119 U.S.P.Q.2d 1301 (Fed. Cir. 2016) ("Doubt or disbelief by skilled artisans regarding the likely success of a combination or solution weighs against the notion that one would combine elements in references to achieve the claimed invention.").

*        *        *

Balancing all of the secondary considerations, in light of the strong evidence of

1    obviousness based on Hatcher, Resh's objective evidence of non-obviousness, even if fully

2    credited by a jury, would fail to make a difference in this case.  *See Wyers v. Master Lock Co.*, 616

3    F.3d 1231, 1246, 95 USPQ2d 1525 (Fed. Cir. 2010) ("[W]here the inventions represented no more

4    than the predictable use of prior art elements according to their established functions, the

5    secondary considerations are inadequate to establish nonobviousness as a matter of law.").

6         In sum, based on the undisputed facts, the Challenged Claims are invalid as obvious in

7    light of Hatcher when combined with existing components.

8                    **4.    Written Description**

9         Defendants contend that claim 20 of the '852 Patent is invalid for failing to meet the

10   written description requirement of 35 U.S.C. § 112.  That section provides the following:

11        A valid patent must include a specification that contains a written description of
12        the invention, and of the manner and process of making and using it, in such full,
         clear, concise, and exact terms as to enable any person skilled in the art to which
13        it pertains, or with which it is most nearly connected, to make and use the same,
         and shall set forth the best mode contemplated by the inventor or joint inventor of
14        carrying out the invention.

15   *Id.* § 112(a).  The Federal Circuit has interpreted § 112(a) as containing both a "written

16   description" requirement and an "enablement" requirement.  *Ariad Pharms., Inc. v. Eli Lilly &*

17   *Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010).  Defendants argue that the Challenged Claims fail the

18   prior requirement.

19        The test for sufficiency of a patent's written description, as required by Section 112(a), "is

20   whether the disclosure of the application relied upon reasonably conveys to those skilled in the

21   art that the inventor had possession of the claimed subject matter as of the filing date."  *Id.* at

22   1351.  The written description inquiry is a question of fact.  *Id.*  "Compliance with the written

23   description requirement . . . is amenable to summary judgment in cases where no reasonable fact

24   finder could return a verdict for the non-moving party."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*,

25   522 F.3d 1299, 1307 (Fed. Cir. 2008).  "A party must prove invalidity for lack of written

26   description by clear and convincing evidence."  *Vasudevan Software, Inc. v. MicroStrategy, Inc.*,

27   782 F.3d 671, 682 (Fed. Cir. 2015).

United States District Court
Northern District of California

1   Claim 20 requires a telescoping pole having three tubes (outer, intermediate, inner), two

2   collars, and two detent locking mechanisms.  SUF ¶ 224.  Defendants assert that the '852 Patent

3   specification does not describe a telescoping pole having three tubes, an "intermediate tube," two

4   collars, or two detent locking mechanisms, and these features were not described in the originally

5   filed claims of patent, nor in the provision application underlying the '852 Patent.  Defendants'

6   Mot. 20 (citing Pratt Decl. ¶¶ 616, 628).

7   Defendants are correct that the specification is silent regarding the "intermediate tube"

8   limitation of claim 20.  Resh argues that support for this claim can be found in Resh's '561 co-

9   pending application, which issued as U.S. Patent No. 11,090,798, because material in the '561

10  application is "incorporated by reference" into the '852 Patent.  Resh Reply 8.  In response,

11  Defendants insist that the incorporation by reference doctrine is available only for material in a

12  "U.S. patent or U.S. patent application *publication*."  37 C.F.R. § 1.57(d) (emphasis added).  And

13  because Resh points to the application number, not the patent application *publication* number, he

14  cannot rely on material in that document to support claim 20.

15  Defendants cite no case law, from the Federal Circuit or otherwise, suggesting different

16  treatment of a patent *application* as opposed to a patent application *publication* is appropriate

17  under these circumstances.  In fact, the Federal Circuit has not distinguished references to the

18  applications in this manner.  *See Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358,

19  1374 (Fed. Cir. 2024) ("Originally filed claims have long been held to be part of the specification

20  to be considered in any § 112 analysis.").  In *Allergan*, the Federal Circuit concluded that a claim

21  of "the originally filed patent application" contained adequate support for the challenged claim in

22  a § 112 analysis.  The Federal Circuit explicitly referred to and relied on the "application"

23  number—it did not refer to the publication number.  *See id.*; *see also Trs. of Columbia Univ. in*

24  *City of New York v. Symantec Corp.*, 811 F.3d 1359, 1366 (Fed. Cir. 2016) (*Trustees*)

25  ("provisional applications incorporated by reference are effectively part of the specification as

26  though it was explicitly contained therein."); *see also Otto Bock HealthCare LP v. %20Ossur HF*,

27  557 F. App'x 950, 955–56 (Fed. Cir. 2014) ("In fact, 37 C.F.R. 1.57(d) specifically envisions

28  Case No.: 22-cv-01427-EJD
ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

1  using a U.S. patent application incorporated by reference to define structure for the purpose of 35

2  U.S.C. § 112, ¶ 6.").[9]

3      Based on the above, the Court is not convinced that Resh's oversight in failing to amend

4  the patent during prosecution to include the publication number necessarily results in an

5  ineffective incorporation by reference in this case.  Defendants are therefore not entitled to

6  summary judgment of invalidity of claim 20 for lack of written description under § 112.

7  **IV.    CONCLUSION**

8      For the foregoing reasons, the Court rules as follows:

9      1.    Resh's Motion is **GRANTED IN PART** and **DENIED IN PART**.  Resh is entitled

10 to summary judgment that Defendants' two-tube poles infringe claims 2, 11, 16, 18, 19, and 21 of

11 the '852 Patent and Defendants' three-tube poles infringe claim 20.  Resh is not entitled to

12 summary judgment of infringement as to Defendants Conrad Jr. and Conrad Sr.  Resh's remaining

13 motion is denied.

14     2.    Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

15 Defendants are entitled to summary judgment that claims 1–3, 6–8, 11, 16, 18–19, and 21–24 of

16 the '852 Patent are invalid as obvious under 35 U.S.C. §103.  Defendants are not entitled to

17 summary judgment that claim 20 is invalid for lack of written description under 35 U.S.C. §112.

18     3.    The Court sets a Trial Setting Conference on **April 10, 2025, at 11:00 AM** in San

19 Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila.  The parties shall submit a Joint Trial

20 Setting Conference Statement by **April 1, 2025**.  *See* Section IV(C) of the Court's Standing Order

21 for Civil Cases.

22

23

24  ───────────────
[9] At least one court in this District has rejected a similar argument raised in the context of claim

25 construction.  *See DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, No. 3:21-CV-00516-RSH-DDL,
2022 WL 17331255, at *19, n.16 (S.D. Cal. Nov. 29, 2022), *aff'd sub nom. DNA Genotek Inc. v.*

26 *Spectrum Sols. LLC*, No. 2023-2017, 2025 WL 502040 (Fed. Cir. Feb. 14, 2025) (finding
argument that "incorporation by reference of a provisional application is ineffective because a

27 provisional application is not a U.S. patent or U.S. patent application publication" had merit but
nonetheless deferring to Federal Circuit's ruling in *Trustees* suggesting otherwise).

28  Case No.: 22-cv-01427-EJD

United States District Court
Northern District of California

1

**IT IS SO ORDERED.**

2

Dated: March 11, 2025

3

4

_____

5

EDWARD J. DAVILA
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California