UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RESH, INC,

Plaintiff,

v.

BARRETT CONRAD, et al.,

Defendants.

Case No. 5:22-cv-01427-EJD

**FINAL PRETRIAL ORDER**

Re: ECF Nos. 168, 169, 171, 172, 173, 174, 206, 208, 221, 224, 226, 238

This is an action for patent infringement brought by Plaintiff Resh, Inc., ("Plaintiff" or "Resh") against Defendants Robert Conrad, Inc., d/b/a Skimlite Manufacturing ("Skimlite"), James R. Conrad, and Barrett R. Conrad (collectively, "Defendants") arising from Defendants' manufacture and sale of telescoping poles used to clean swimming pools. Resh alleges that Defendants' pool pole products infringe U.S. Patent No. 11,141,852, entitled "Telepole Apparatus and Related Methods" (the "'852 Patent").

Before the Court are several pretrial disputes: motions in limine ("MILs") (ECF Nos. 168, 169, 171, 172, 173, 174), motions to amend (ECF Nos. 206, 208, 221, 224), motion for leave to take expedited discovery (ECF No. 226), and a motion to exclude the testimony of Defendants' substitute technical expert (ECF No. 238). The Court resolves each motion as follows.

## I. MOTIONS IN LIMINE

Plaintiff filed two motions in limine, and Defendants filed four. All motions are opposed. The Court will address each in turn.

### A. Plaintiff's MIL No. 1 (ECF No. 168)

Plaintiff first moves the Court to exclude any evidence of, argument regarding, and/or any



United States District Court
Northern District of California

reference to Defendants' proffered prior art pole (referenced by the parties during this litigation as the "A.G. Pro Pole"). Pl. MIL No. 1, at 1. Plaintiff argues that the A.G. Pro Pole should be excluded entirely from trial because there is no evidence regarding the A.G. Pro Pole's chain of custody, and the only "evidence" that Defendants have produced regarding the pole amounts to "insufficient oral testimony." Pl. MIL No. 1, at 1–4. In support of the latter argument, Plaintiff relies on *Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892), which found that the oral testimony in that case did not corroborate prior art because it was contradictory and unreasonable.

Defendants argue that Plaintiff's MIL 1 is an unauthorized motion for reconsideration—the Court already rejected these same arguments at summary judgment:

> Resh disputes Defendants' showing on several grounds, but mainly because Defendants have not sufficiently corroborated Mr. LeDuc's testimony about the A.G. Pro Pole . . . Here, Defendants do proffer some evidence corroborating the mere testimonial evidence. Defendants produced Exhibit 88, "an original A.G. Pro Pole," and multiple boxes of what Mr. Leduc claims are left over grips and adapters that he used to make the A.G. Pro poles. Mr. Leduc also provided invoices dated in 2000 or 2001 documenting his purchase of the components. And Mr. Cervantes testified that he purchased the poles from Mr. Leduc on behalf of SCP and verified that the store created vendor records when a party sold a pole.

Order re: Cross Mots. for Summ. Judg. 19, ECF No. 148; *see also Tyco Thermal Controls, LLC v. Redwood Industrials, LLC*, No. C 06-7164 SBA, 2012 WL 2792435, at *5 (N.D. Cal. July 9, 2012). Regarding chain of custody, Defendants assert that "Plaintiff errs by treating chain-of-custody as a separate requirement for prior-art evidence," and that the more apt question in civil contexts is about authentication rather than formalistically establishing chain-of-custody. Opp'n 6.

The Court agrees with Defendants that it need not reconsider its prior finding that there could be sufficient corroborating evidence as to the A.G. Pro Pole and continues to hold that questions regarding "whether the physical Exhibit 88 was the original A.G. Pro Pole . . . are more appropriately resolved by a fact finder." Order re: Cross Mots. for Summ. Judg. 20. The Court also finds Plaintiff's arguments regarding chain of custody unpersuasive. "Under Federal Rule of

Evidence 901, the proponent of an item of evidence in question must authenticate the item by producing 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Kaneka Corp. v. Sinochem Jiangsu Co.*, No. CV 09-7290 GHK (SSX), 2012 WL 13001420, at *10 (C.D. Cal. Apr. 24, 2012). That a party "rais[es] the possibility of tampering is not sufficient to render evidence inadmissible. The possibility of a break in the chain of custody goes only to the weight of the evidence." *Id.* (citing *United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991)). Although Plaintiff suggested during the October 16, 2026, hearing that there is no way to conclude with certainty that the alleged prior art A.G. Pro Pole was not constructed more recently to defend against this litigation, Plaintiff has not made any concrete or credible allegation that the A.G. Pro Pole has been tampered with. Further, Defendants intend to present Mr. Ray Leduc, the "alleged maker of the A.G. Pro Pole," to authenticate the A.G. Pro Pole and testify that the A.G. Pro Pole is what it purports to be. Opp'n 6–7. Rule 901(b)(1)[1] provides that "[t]estimony that an item is what it is claimed to be" by a witness with knowledge may satisfy the requirement of authenticating an item of evidence. To the extent that Plaintiff seeks to argue that the chain of custody of the A.G. Pro Pole raises questions about its authenticity, any such arguments go to the weight of the evidence, not admissibility. *See Harrington*, 923 F.2d at 1374; *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 592 F. Supp. 2d 1208, 1219 (N.D. Cal. 2008); *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C 12-00852 WHA, 2012 WL 12924980, at *4 (N.D. Cal. May 22, 2012).

Accordingly, the Court **DENIES** Plaintiff's request to exclude any evidence of, argument regarding, and/or any reference to the A.G. Pro Pole.

**B. Plaintiff's MIL No. 2 (ECF No. 169)**

Plaintiff next moves the Court to exclude any evidence of, argument regarding, and/or reference to, witnesses "improperly influenced by Defendants'" proffered A.G. Pro Pole. MIL No. 2. Plaintiff contends the three fact witnesses (Ray Leduc, Arthur Grimmitt, and Danny

[1] Unless otherwise indicated all references to rules are to the Federal Rules of Evidence.

United States District Court
Northern District of California

Cervantez) who will likely testify as to the alleged prior art A.G. Pro Pole are unreliable, that their "competency and credibility . . . suffer[s] from the expiration of decades" since the actions about which they are testifying, and that they may be biased. *See* Pl. MIL No. 2, at 2–3.

To the extent that Plaintiff seeks to exclude testimony of witnesses who have knowledge of the proffered A.G. Pro Pole, given the Court's order above denying Plaintiff's request to exclude evidence, argument, or reference to the A.G. Pro Pole, this request is **DENIED**.

To the extent that Plaintiff seeks to exclude these witnesses on grounds of reliability, competency, credibility, and bias, the Court agrees with Defendants that there is no authority or evidence in the record to support Plaintiff's position. "[I]ssues of witness memory, truthfulness, and bias are matters for cross-examination, not grounds to exclude entire testimony." *Floyd v. Saber Fitness Hegenberger, LLC*, No. 24-CV-01278-TSH, 2025 WL 3174176, at *4 (N.D. Cal. Nov. 13, 2025); *see also Eisen v. Day*, No. 21-CV-05349-VKD, 2024 WL 1244482, at *5 (N.D. Cal. Mar. 21, 2024). During discovery, Plaintiff had the opportunity to cross-examine each witness to assess the witnesses' credibility, and although Plaintiff asserts that the process is "tainted," or that the witnesses are biased, this is a credibility issue for the jury to decide. As to competence, "every person is competent to be a witness unless" provided otherwise by the Federal Rules of Evidence. Fed. R. Evid. 601. Plaintiff has failed to provide any rationale under Rule 601 that would render these witnesses incompetent.

Accordingly, the Court **DENIES** Plaintiff's request to exclude any evidence of, argument regarding, and/or reference to, the witnesses identified in its motion.

### C. Defendants' MIL No. 1 (ECF No. 170-3)

Defendants move to preclude Plaintiff from introducing evidence, statements, and argument regarding a royalty rate, a lump sum royalty, or price erosion. Defs.' MIL No. 1. Defendants raise three arguments: (1) Plaintiff failed to disclose any factual basis for its purported reasonable royalty rate or price erosion damages as required by Patent L.R. 3-8 and Fed. R. Civ. P. 37(c)(1); (2) Plaintiff does not rely upon a damages expert who could perform the necessary analysis to support a reasonable royalty or price erosion theory under Rules 701 and 702; and (3)

Plaintiff's purported royalty is inadmissible pursuant to Rule 408.

First, Defendants argue Patent L.R. 3-8 requires that each party provide damage contentions that include a good faith explanation of the theory of damages and the factual basis for the damages. Patent L.R. 3-8; *see also* Patent Scheduling Order, ECF No. 26. Pursuant to Federal Rule of Civil Procedure 26(e), parties must supplement these damage contentions if a prior disclosure is incomplete. *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1233 (N.D. Cal. 2019). Further, if a party fails to disclose properly in the first place, or to supplement a disclosure, as required by Rule 26(e), that party is not permitted to use that information unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). Here, Defendants contend that Resh's damages contentions did not meet the standards set out in Patent L.R. 3-8 in the first instance (*e.g.*, by failing to disclose the factual basis or theories of recovery for its reasonable royalty rate). Indeed, Resh acknowledges that a variety of different theories exist for calculating a reasonable royalty but did not rely on any of these theories or identify facts to support such theories in its contentions. Defendants raise similar concerns with respect to Plaintiff's price erosion damages, which Plaintiff argues are between $10.00 and $15.00 per pole. Defs' MIL No. 1, at 4. Again, Defendants asserts that Plaintiff disclosed no facts to support the dollar amount, nor to support the "multiple levels of speculation," including that, among other arguments, "without the alleged infringement by Defendants or third-parties, Resh could have raised its products' prices." *Id.* at 4–5. Because there is no factual basis for the reasonable royalty and price erosion theories of damages, Defendants argue that the "automatic" sanction of Rule 37(c)(1) must apply. *Id.* at 5.

Second, Defendants contend that the royalty rates are inadmissible because Resh has not identified a damages expert, and according to Defendants, "[t]estimony by a lay witness regarding a reasonably royalty rate is inadmissible under Rule 701 and 702 . . . .[because] [a]n opinion on a reasonable royalty is necessarily based on specialized knowledge" *Id.* at 6 (citing *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-CV-00453-RGA, 2018 WL 5045186, at *1 (D. Del. Oct. 17, 2018)).

Third, Defendants argue that the royalty rates are inadmissible under Rule 408, which prohibits the admission of settlement offers and negotiations to prove the amount of damages owed on a claim. *Id.* at 6; *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

Plaintiff opposes Defendants' motion "to the extent that any such order precludes Resh from presenting factual testimony and related evidence concerning factual financial and damages aspects of this dispute, such as pricing, profits, setting of prices, and related information." Opp'n 1, ECF No. 184. Plaintiff contends that there is no case law supporting Defendants' position that a patent owner must present expert testimony to recover royalty damages or price erosion damages. *Id.* at 2. Rather, Resh intends to present evidence supporting its reasonable royalty and price erosion contentions through testimony from Eric and Jenel Resh. *Id.* at 2–3. Based on "decades of hard work and experience," Plaintiff asserts that the Reshes have personal knowledge of the facts necessary for a jury to make a finding of reasonable royalty under controlling patent law principals: pricing information of both Plaintiff and Defendants' products, Resh's own product pricing decisions, and Resh's cost and profit margins. *Id.* at 3. With respect to the price erosion theory, Plaintiff contends that the "necessary analysis" is only the number of allegedly infringing units sold by Defendants multiplied by the profit Resh made on each of its own poles.

The Court's analysis focuses on Defendants' second argument—that a jury cannot consider reasonable royalty or price erosion theories without expert testimony. As an initial matter, the Court agrees with Plaintiff that the "most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *see also* Opp'n 1. "A determination of the royalty stemming from a hypothetical negotiation is often made by assessing factors such as those set forth in *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008). But, consistent with this negotiation, the Federal Circuit has cautioned that the

"patentee must take care to seek only those damages attributable to the infringing features." *Virnetx, Inc.*, 767 F.3d at 1326.

Although Plaintiff suggests that Defendants' position is that a patent owner is *required* to pay for and present expert testimony to be eligible to recover a reasonable royalty, Defendants' position is more aptly described as a reflection of Rules 701 and 702, the combination of which require that a lay witness only testify based on their perception and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Indeed, 35 U.S.C. § 284 makes "clear that expert testimony is not necessary to the award of damages, but rather '*may* [be] receive[d] . . . as an aid.'" *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003); *see also Bos. Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120 (N.D. Cal. 2008); *Smartmetric, Inc. v. Mastercard Int'l, Inc.*, No. CV117126MWFAJWX, 2013 WL 12108250, at *7 (C.D. Cal. Oct. 2, 2013), *aff'd,* 568 F. App'x 897 (Fed. Cir. 2014); *Thorne Rsch., Inc. v. Xymogen*, No. 2:13-CV-784 TS, 2018 WL 1136079, at *2 (D. Utah Feb. 28, 2018); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) ("As we made clear in *Dow Chemical Co.* . . 35 U.S.C. § 284 requires the district court to award damages 'in an amount no less than a reasonable royalty' even if the plaintiff's [*sic*] has no evidence to proffer. We explained that, in such a case, the district court should consider the *Georgia–Pacific* factors 'in detail, and award such reasonable royalties as the record evidence will support.'"). "Where the record lacks any evidence of a reasonable royalty rate, the Federal Circuit has approved of awarding zero damages because [t]he statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute." *Boston Scientific Corp.*, 550 F. Supp. 2d at 1120 (quoting *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990)) (internal quotation marks omitted).

Thus, the frequent reliance on expert testimony to aid a jury in determining a reasonable royalty makes sense, especially where the outcome of the hypothetical negotiation depends on

factors such as the parties' relative bargaining strength, the "commercial past performance of the invention in terms of public acceptance and profits[,] the market to be tapped[,]" and other economic factors. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *see also Acceleration Bay*, 2018 WL 5045186, at *1 (D. Del. Oct. 17, 2018) ("An opinion on a reasonable royalty is necessarily based on specialized knowledge."); *Reasonable royalty based on a hypothetical negotiation*, Kerr and Troxel, Calculating IP Damages § 5:12 ("Rarely will an expert's final opinion on the amount of a reasonable royalty be reduced to the simple application of a mathematical formula or a theoretical construct. Instead, it is necessary to consider the reasonableness of the hypothetical result in terms of technical, economic, and market factors that would be present in the particular case and at the time of the negotiation.").

A review of the sealed damages contentions reflects that they are consistent with Plaintiff's position in its opposition to Defendants' MIL No. 1: "the 'necessary analysis; in this lawsuit is very basic arithmetic. How many infringing units did Defendants sell, and what profit did Resh make on each of its own poles? Assuming that jurors can multiply those two numbers, the damages is about as straightforward as can be." Opp'n 3; *see also* Plaintiff's First Set of Supplemental Damage Contentions, ECF No. 170-4, at 11 The Court finds that in this context, certain of the *Georgia-Pacific* factors, such as the portion of realizable profits attributable to the invention as distinguished from non-patent elements, and business risks or the effect and value of selling patented items in promoting sales of the potential licensee's non-patented products require technical expertise that lay witnesses, such as Jenel and Eric Resh, do not have. Other factors, such as the commercial relationship between the parties, can likely be discussed by the Reshes based on their own experience. But to Defendants' point, these facts, without more, do not demonstrate the "sound economic and factual predicates" necessary to the reasonable royalty analysis. *See Boston Science Corp.*, 550 F. Supp. 2d at 1120. Indeed, "where little or no satisfactory evidence of a reasonable royalty is presented," courts in this district have ruled that plaintiffs may not present the damages question to the jury. *See id.* at 1120.

Here, the Court finds that without an expert to conduct the relevant economic and market analyses, the Reshes' "decades of hard work and experience," and associated personal knowledge do not represent satisfactory evidence supporting a reasonable royalty such that the question may be presented to the jury. Accordingly, if, after trial, Plaintiff wishes to make a motion as to reasonable royalty damages, the Court will consider whether there "is evidence in the record" including given argument with respect to how the *Georgia-Pacific* factors should be applied as to reasonable royalty, the Court will consider such a motion. *Id.* at 1121. Because the lump-sum royalty is another method of calculating damages that still relies on a reasonable royalty calculation, the Court's decision applies equally to any lump sum royalty damages plaintiff seeks. *See Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1378 (Fed. Cir. 2003) (explaining that the *Georgia-Pacific* factors apply to evaluate whether Defendant, at the time of a hypothetical negotiation, would have agreed to a lumpsum, paid-in-full royalty).

Plaintiff likewise relies on Plaintiff's experience in the pool industry and customers' willingness to pay for allegedly better products to support its price erosion theory in lieu of relying on an expert. *See* ECF No. 170-4. The price erosion theory requires the patentee to show that "but for" infringement, it would have sold its product at a higher price and must present evidence of the amount of product that the patentee would have sold at the higher price. *Ericsson*, 352 F.3d at 1378. "The patentee's price erosion theory must account for the nature, or definition, of the market, similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in the market." *Id.*

Similarly, here, the Court disagrees with Plaintiff's contention that the jury need only the combination of both Parties' pricing, "factors that have gone into Resh's own product pricing decisions," and Resh's own costs and profit margins. Without more, the Reshes' personal knowledge and testimony regarding these facts cannot be relied upon to quantify, for example, the "effect of the hypothetically increased price on the likely number of sales at that price in the market."



United States District Court
Northern District of California

United States District Court
Northern District of California

The Court notes, however, that its findings as to Plaintiff's reasonable royalty and price erosion theories should not be read to preclude Plaintiff from presenting its more basic lost profits theory which queries "[h]ow many infringing units did Defendants sell, and what profit did Resh make on each of its own poles?" Opp'n 3. During discovery, Plaintiff received sales information from Defendants and the Reshes have knowledge of their own profit margins which they intend to present to the jury. Further, Defendants have not moved to exclude evidence or testimony as this damages theory.

The Court **GRANTS** Defendants' MIL No. 1 to the extent that it seeks to exclude argument, evidence, and statements regarding damages based on a theory of a reasonable running royalty, a lump-sum royalty, or loss of profits due to price erosion.

**D. Defendants' MIL No. 2 (ECF No. 172)**

Next, Defendants request that the Court preclude Resh from offering expert testimony through lay witnesses on five topics:

1. What a person of ordinary skill in the art ("POSITA" or "POSA") would or would not have done or understood, including what terms would mean to a POSITA, a POSITA's motivations, and a POSITA's expectations ("Category 1");
2. Comparing the patent claims to the accused products, prior art products or references, or third-party products ("Category 2");
3. Any ultimate opinion regarding validity ("Category 3");
4. Any ultimate opinion regarding infringement ("Category 4"); and
5. Any economic analysis regarding a reasonable royalty, including a specific royalty rate or lump sum amount, or price erosion ("Category 5").

The Court addressed Mr. Resh's ability to testify as to Categories 1–4 in its prior order regarding motions for summary judgment and Defendants' motion to exclude. *See* Defs.' MIL No. 2 (citing Order re: Cross Mots. for Summ. Judg., ECF No. 148). The Court found that because Eric Resh, the inventor, will offer testimony as a lay witness, he cannot testify on matters that are within the scope of expert testimony. Order re: Cross Mots. for Summ. Judg. 7

(explaining that under Rule 701 determines the scope of lay witness testimony, and that a lay witness may provide opinions "rationally based on the witness's perception" that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702") (citing *United States v. Holmes*, 129 F.4th 636 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 163 F.4th 547 (9th Cir. 2025), *cert. denied sub nom. Balwani v. United States*, No. 25-1330, 2026 WL 2976398 (U.S. Oct. 5, 2026)). Thus, the Court held that any opinions relying on Mr. Resh's specialized knowledge, training, or skill, will be stricken as expert testimony, including "testimony regarding what a POSA would or would not understand or do, the comparison of patent claims to accused products or prior art poles, and any ultimate opinion as to invalidity or infringement resulting from his lay observations." Order re: Cross Mots. for Summ. Judg. 8–9. Even if Mr. Resh had personal knowledge based on his experience and background with the relevant products, the Court noted "there is no 'on the job' exception to Rule 702. Order re: Cross Mots. for Summ. Judg. 8–9 (citing *Holmes*, 2025 WL 583307, at *8).

Now, Defendants essentially seek an order expanding this ruling to all lay witnesses during trial. Defs.' MIL No. 2, at 5. In response, Plaintiff confirms that it intends to comply with the Court's rulings, both previous and forthcoming at trial. Opp'n 1, ECF No. 185.

The Court will enforce the spirit of its prior order and Rules 701 and 702 throughout trial. Plaintiff has not designated any experts, thus any witness offering testimony will necessarily be limited by the contours of Rule 701. *See* Defs.' MIL No. 2, at 5. Accordingly, to the extent that Plaintiff intends to offer any other witness to testify as to categories 1–4, their testimony may be stricken as impermissible expert testimony.[2] And to the extent that Plaintiff intends to offer lay witness testimony regarding Category 5, for the reasons explained with respect to the motion prior, such testimony will be excluded as well.

---

[2] Plaintiff's reliance on *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1293 (Fed. Cir. 2023) does not convince the Court otherwise. The question before the Court is not whether it would be harmless error for a lay witness to, for example, testify as to what a POSA would understand—as was the case in *Ironburg*—but rather, whether that testimony is admissible in the first instance.

United States District Court
Northern District of California

The Court, however, finds it most appropriate to address objections specific to each testimony at trial. This motion is accordingly **DEFERED**.

**E. Defendants' MIL No. 3. (ECF No. 173)**

Defendants request that the Court preclude Resh from introducing evidence, statements, and arguments regarding materials stricken from Resh's complaints pursuant to Rules 401, 402, 403, and 404. Specifically, Defendants request exclusion of:

1. Resh's allegations that Defendants and Defendants' counsel committed fraud or made misrepresentations in a separate 2018 lawsuit between Resh and Skimlite ("Allegation 1");
2. Resh's allegations that Defendants misrepresented the corporate identity of Robert Conrad, Inc. ("RCI") in the 2018 lawsuit and other business filings ("Allegation 2");
3. Resh's allegations that Defendants have infringed unasserted Resh patents ("Allegation 3");
4. Resh's allegations that Defendants violated their duty of candor to the Patent Office during the prosecution of their own patent application, which is not asserted here ("Allegation 4"); and
5. Resh's allegations that Defendants copied Resh's patent claims during prosecution of their own patent ("Allegation 5").

The Court previously considered and granted Defendants' motions to strike portions of prior complaints relating to these allegations pursuant to Federal Rule of Civil Procedure 12(f), or otherwise cautioned Plaintiff that the allegations did not appear relevant. *See* ECF Nos. 102, 138. Now, Defendants assert that in striking allegations relating to alleged "decades-long misrepresentations by Defendants and their attorneys"—including as related to the 2018 lawsuit and the appropriate corporate entity to be sued (SAC ¶¶ 63–65, 91, 93, ECF No. 114) and misrepresentations regarding whether Defendants' poles included a water barrier feature such that they would have potentially infringed US Patent No. 9,764,458 (SAC ¶¶ 67–69)—the Court

"necessarily determined that [the] allegations were irrelevant (immaterial) or unfairly prejudicial (impertinent or scandalous)." Defs.' MILS No. 3, at 3–4. Defendants otherwise argue that "by dropping its allegations that Defendants somehow violated their duty of candor during prosecution of their own patents, Resh acknowledged the allegations had no relevance here." *Id.* at 4. Defendants contend that such allegations are irrelevant and inadmissible pursuant to Rule 403 and/or Rule 404, even in the absence of the Court's prior Order. *See id.* at 4–7.

In response, Plaintiff argues that despite the Court's prior rulings, Defendants are overreaching in the scope of relief they seek in their MIL. Opp'n, ECF No. 186. Plaintiff argues that the "evidence all goes to prove Defendants' pattern of bad faith and willful infringement." *Id.* at 1–2. Plaintiff explains that it was Resh's 2018 lawsuit over a prior patent, the '458 patent, that led Defendants to modify their poles into the current design, which "this Court has already determined [] infringe Resh's later-issued '852 patent." *Id.* at 2. Plaintiff also contends that Defendants' patent prosecution history is relevant to "many issues," including willfulness and Defendants' good faith belief that their SnapLite products did not infringe the '852 patent. *Id.* Plaintiff otherwise re-raises its position that "misrepresentations of their corporate identify of Robert Conrad, Inc. ("RCI") . . . . [are relevant] as support for issues regarding individual liability of Defendant James Conrad." *Id.* at 2–3.

The Court agrees with Defendants that evidence, statements, and arguments regarding Allegations 1, 2, and 4 should be excluded pursuant to Rules 402, 403, and 404. Resh may plead willful infringement without allegations of misrepresentations made in a prior lawsuit, or to the Patent Office. *See* Order Granting in Part, Denying in Part MTD 17, ECF No. 138. There are no allegations of fraud or misrepresentation in this action, nor were they causes of action in the 2018 litigation. Defs.' MIL No. 3, at 4. And any slight probative value that these allegations may have is substantially outweighed by the danger of unfair prejudice to Defendants and the risk of confusing the issues or misleading the jury. Fed. R. Evid. 403. Further, the Court is troubled by Plaintiff's references to a "pattern of bad faith" in its opposition, and is wary of the possibility that evidence or argument regarding these allegations might veer into impermissible character

evidence under Rule 404. *See* Opp'n 1.

The Court finds that argument and evidence concerning Allegations 3 and 5 are also irrelevant and inadmissible pursuant to Rules 401 and 402. As the court found in *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 317CV01118BENBLM, 2019 WL 2211897, at *4 (S.D. Cal. May 22, 2019), evidence relating to the prior '852 patent litigation is "not only settled, but it also is irrelevant to this action and would only serve to confuse the jury and prejudice [Defendants] if allowed to be admitted." *See also Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) (finding that whether certain features of a product were covered by another patent was "totally irrelevant to the question of whether [defendant] willfully infringed [the subject] patent"). The Court also agrees with Defendants' concern that "introducing evidence and argument regarding [unpled claims of fraud or misrepresentation] would . . . cause undue delay by requiring" a minitrial. *See* Fed. R. Evid. 403; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) ("One function of Rule 403 is to avoid the introduction of large quantities of extrinsic evidence to create mini-trials regarding tangentially related matters. The Court is not persuaded that the Defendants' prosecution history of a related patent, not at issue in this action is relevant and finds that evidence and argument regarding the patent application are likely to confuse or mislead the jury.").

Accordingly, the Court **GRANTS** Defendants' MIL No. 3. Plaintiffs may not present evidence, argument, or statements regarding Allegations 1–5.

**F. Defendants' MIL No. 4 (ECF No. 174)**

Defendants request that the Court preclude Plaintiff from introducing evidence, statements, and arguments regarding: (1) the noninfringement or nonobviousness of its two-tube claims, or (2) other previously undisclosed evidence relating to any three-tube product pursuant to Federal Rule of Civil Procedure 37(c) and Federal Rules of Evidence 401, 402, and 403. Defs.' MIL No. 4.

The Court begins with issues regarding two-tube pole claims. Defendants argue that evidence relating to the two-tube pole claims is irrelevant to the issues remaining in the case. The

Court has already held on summary judgment that the asserted claims covering poles with two tubes are "invalid as obvious." *Id.* at 1 (citing Order re: Cross Mots. for Summ. Judg.). Now, the only remaining claim at issue is Claim 20, which relates to three-tube poles. *Id.*

Plaintiff contends that the two-tube pole claims are still relevant to this case. In the parties' joint statement, Plaintiff stated that "[t]he Court and/or jury may need to address factual issues regarding the obviousness of not just Claim 20 but also all of the two-tube claims on which the Court recently ruled, and the required analysis of all of those facts regarding alleged obviousness." Second Joint Trial Setting Conf. Statement 2, ECF No. 160. Plaintiff's position is that, because Defendants have decided to challenge the obviousness of Resh's patent, "Resh will be presenting Resh's evidence of nonobviousness," which is the same evidence that Resh previously presented but which it contends this Court "declined to consider" in its previous Order granting summary judgment. Opp'n 1–2, ECF No. 187.

The Court finds that evidence, statements, and arguments regarding the two-tube claims are irrelevant and therefore inadmissible because the only remaining claim in this action, Claim 20, requires three-tube poles. Fed. R. Evid. 402. The Court also cautions Plaintiff that it should not use trial as an opportunity to reargue issues that this Court has already decided, and indeed on which the Court has already considered—and denied—in a motion for reconsideration. *See* Order Denying Mot. for Reconsideration. *See Millennium Lab'ys, Inc. v. Darwin Select Ins. Co.,* No. 12-CV-2742 BAS (KSC), 2014 WL 12059026, at *2 (S.D. Cal. Aug. 1, 2014).

Turning now to the issues regarding three-tube pole claims, Defendants argue that Resh should be precluded from introducing evidence regarding three-tube products that was not previously produced. Defs.' MIL No. 4, at 2. Defendants note that Resh did not disclose any sales of three-tube poles during discovery or produce evidence regarding the same. *Id.* at 2. Further, Defendants argue that Resh failed to disclose any admissible evidence of copying, that any evidence of copying of Resh's product is legally irrelevant unless the product is shown to be an embodiment of the claims, and that Resh admitted in response to requests for admission, that it never sold a pole covered by Claim 20 of the '852 patent. *Id.* at 3–4 (citing *Amazon.com, Inc. v.*

*Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) and *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13–CV–03999–BLF, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015)). Accordingly, Defendants assert that "no third party could have engaged in any relevant copying." *Id.* at 4.

Plaintiff contends that during discovery it disclosed to Defendants Resh's prototype three-tube products and that the relevant copying is of the patented "detent lock" mechanism to set the length of the poles, regardless of whether the poles are two-tube or three-tube. Opp'n 2.

The Court finds it most appropriate to defer this issue to be decided upon prior to the presentation of any subject evidence or testimony. Rules 26(a) and 37(c) work in tandem "to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)). Rule 26(a) requires parties to make certain pretrial disclosures of relevant witnesses and evidence while Rule 37(c) provides an enforcement mechanism by requiring courts to exclude undisclosed witnesses or evidence "unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 26(a); Fed. R. Civ. P. 37(c)(1). To determine whether exclusion under Rule 37(c) is warranted, the Court must know exactly what evidence or witness was allegedly not disclosed. At this time, this is unclear—Defendants have merely asserted that Resh has disclosed "*no* evidence" that any party attempted to replicate a three-tube pole. Accordingly, prior to the presentation of any evidence or testimony to the jury relating to three-tube poles that either was not previously disclosed to Defendants or otherwise relates to Plaintiff's copying theory, the Court **DIRECTS** Counsel to inform the Court of its desire to introduce this evidence. The Court may then meet with Counsel to discuss the anticipated testimony or evidence prior to issuing a ruling as to whether it may be presented to the jury.

Accordingly, the Court **GRANTS IN PART AND DEFERS IN PART** Defendants' MIL No. 4. Plaintiff may not introduce evidence, statement, or argument regarding noninfringement or nonobviousness of its two-tube pole claims. Regarding three-tube pole claims, the Court

United States District Court
Northern District of California

**DEFERS** ruling until it has discussion with Counsel.

### G. Conclusion

For the reasons explained above, the Court rules as follows:

- Plaintiff's MIL No. 1: **DENIED**
- Plaintiff's MIL No. 2: **DENIED**
- Defendants' MIL No. 1: **GRANTED**
- Defendants' MIL No. 2: **DEFERRED**
- Defendants' MIL No. 3: **GRANTED**
- Defendants' MIL No. 4: **GRANTED IN PART AND DEFERRED IN PART**

## II. MOTIONS TO AMEND (ECF NOS. 206, 208, 221, 224)

Plaintiff moves to amend: (1) its exhibit and witness lists to add a previously undisclosed witness, Scott Provorse, and an accompanying declaration (ECF No. 206); (2) its exhibit list to include a commercial "grabber" device related to the Hatcher patent (ECF No. 208); (3) its complaint to include a false patent marking claim (ECF No. 224); and (4) its exhibit list to include an Instagram advertisement post on mfgskimlite's account (ECF No. 221). Each of these motions is opposed. The Court resolves each motion as follows.

### A. Motion to Amend Complaint (ECF No. 224)

Plaintiff moves to amend its complaint to add a cause of action for false patent marking under 35 U.S.C. § 292(b). This cause of action "arises from Plaintiff's recent discovery of Defendants' false marking of Defendants' SnapPro pole product with a PATENTED designation" in an Instagram advertisement posted on Skimlite's account. *See generally* Mot., ECF No. 224.

#### 1. Legal Standard

Because the deadline for amendment has passed, Plaintiff must first satisfy Rule 16(b)'s good cause standard. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Whether good cause exists primarily turns on "the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) (quoting *Johnson v. Mammoth Recreations,*

*Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "Prejudice is [also] a significant consideration under both Rule 16(b) and Rule 15(a)." *Osakan v. Apple Am. Grp.*, No. C 08-4722 SBA, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010). If "the moving party establishes good cause to modify the scheduling order, it must then demonstrate that its motion is also proper under Rule 15." *Chang v. Cashman*, 723 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (citing *Calvary Chapel San Jose v. Cody*, No. 20-CV-03794-BLF, 2021 WL 4427384, at *1 (N.D. Cal. Sept. 27, 2021)). "When considering whether to grant leave to amend [under Rule 15], a district court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Prejudice is the most important of these factors. *Id.*

**2. Discussion**

Plaintiff seeks to add a claim for false patent marking based on an Instagram advertisement posted on "mfgskimlite"—Defendants' Instagram account—around May 2026, that featured Defendants' SnapPro pole. Mot 1. The post included text "SKIMLITE PRECISION LOCKING TECHNOLOGY - PATENTED HARDWARE THAT STAYS SECURE AND **NEVER SLIPS** DURING HEAVY USE." *Id.* (emphasis in motion). Plaintiff contends that the SnapPro pole is not covered by any valid U.S. patent, and Defendants should have known that they could not claim patent protection for the pole. *Id.* Plaintiff begins its analysis with the application of Rule 15(a)(2) to determine whether leave should be granted to amend the complaint, however, the Court will first consider whether Plaintiff was diligent in seeking the amendment under Rule 16(b). *See id.* at 2.

As to its promptness, Resh's position is that it was diligent in moving to amend its Complaint. *See id.* at 3–4. Plaintiff claims to have discovered the false marketing on or about June 12, 2026, "and has since promptly demanded information, met and conferred, moved to amend its Exhibit List, and now moves to amend its Complaint and for leave to take limited discovery." *Id.* The Court agrees that Plaintiff was diligent in seeking amendment, and thus turns

to questions of prejudice, which are considered both pursuant to Rule 16(b) and Rule 15.

Plaintiff argues that leave to amend should be granted because the false patent marking claim arises from the same transaction or occurrence as the existing infringement claim and does not require "complex new discovery" such that it will not unduly prejudice defendants, especially where there are "approximately three months" between the date of Plaintiff's motion and trial. Mot. 3.

In response, Defendants argue that Resh's proposed amendment: (1) is futile because it lacks merit; (2) prejudices Defendants; (3) produces an undue delay in the litigation; and (4) is sought in bad faith. *See generally* Opp'n, ECF No. 232.

The Court begins with Defendants' first and second arguments that they would suffer prejudice if Plaintiff added a new claim for patent marking shortly before trial, and that granting the motion would result in an undue delay in the litigation. Opp'n 9–13. Because the elements for a false patent marking claim are different than those for the patent infringement claim presently in the action, Defendants would need to conduct "significant additional discovery" and supplement completed expert reports, as well as to file motions *in limine* to exclude evidence that Defendants believe is inadmissible. *Id.* at 10.[3]

Although Plaintiff contends that no "complex new discovery" is required, the Court finds this assertion unsupported—especially where, as Defendants point out, the product featured in the Instagram post is not among the Accused Products and is a two-tube pole rather than a three-tube pole, such that the remaining patent claim in this action (claim 20) is likely irrelevant to Plaintiff's false patent marking claim. *Id.* at 3 ("The Instagram post showed a SnapPro pole . . . The SnapPro pole is not an accused product in this case . . . nor could it be colorably accused because the SnapPro pole does not have three tubes (outer, intermediate, and inner tube)"). Further, "Plaintiff's contemporaneous filing requesting additional discovery" contradicts its position that

---

[3] "The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011). "When the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Id.*

no complex new discovery is necessary, where it seeks leave to serve interrogatories and document requests and conduct an additional 30(b)(6) deposition of Skimlite regarding ten "broad categories of information." Opp'n 11 (citing Plaintiff's Motion for Leave to Conduct Discovery, ECF No. 226). With trial scheduled to begin in under two weeks, it seems exceedingly unlikely that discovery could be reopened without delaying trial. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see also Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (upholding a district court's denial of a motion to amend where the amendment, made on the eve of *the discovery deadline* (not trial) would cause undue delay and prejudice because allowing the motion would have required re-opening discovery, thus delaying the proceedings); *McKenna v. United States*, 21 F. App'x 591, 592 (9th Cir. 2001) (holding it was not an abuse of discretion to deny motion for leave to amend the complaint on the eve of trial because amendment of the complaint would result in prejudice and unfair delay and futility).

Furthermore, if Plaintiff were permitted to add a claim at this late stage, Defendants would have insufficient time to brief and argue a motion to dismiss, let alone a motion for summary judgment. *See* Opp'n 10.; *see also id.* ("Defendants . . . would have no clear opportunity to conduct additional discovery to rebut the new claim, such as identifying its own witnesses to rebut Plaintiff's allegations."). In its Reply, Plaintiff's attempts to minimize the disruption imposed by amendment are not persuasive. Plaintiff argues that "[f]alse patent marking does not require new claim-construction" but at the same time concedes that the claim "turns on whether the SnapPro pole is covered by any valid patent" and focuses primarily on discovery that *Plaintiff* seeks, not discovery that Defendants may seek. Reply 4–5, ECF No. 234 ("Discovery regarding competitive injury and lost sales is the subject of *Resh's* separately pending discovery motion").

Despite Plaintiff's diligence in moving to amend the complaint, because amendment at this stage of the litigation would cause undue prejudice to Defendants and unduly delay the litigation, Plaintiff's motion to amend the complaint to add a claim for false patent marking is **DENIED**.



United States District Court
Northern District of California

The Court need not reach Defendants' arguments that the amendment would be futile or is brought in bad faith.[4]

### B. Motion to Amend Exhibit and Witness Lists (ECF No. 206)

Next, Plaintiff moves for leave to amend its exhibit and witness lists to include Mr. Provorse, the Provorse Declaration, and a broken three-tube Skimlite pole that is referenced in the Provorse declaration. Mot., ECF No. 206.

#### 1. Legal Standard

The Parties disagree about the applicable law. Plaintiff's position is that leave to amend is not required because, at the time of this motion's filing, the final pretrial conference had not been scheduled. *See* Mot. 2–3 (citing this Court's standing order which states that a joint witness list must be filed no later than 14 days before the final pretrial conference and that no party will be permitted to call any witness in its case-in-chief, without leave of Court for good cause shown, if that witness is not disclosed on the Joint Witness List). Alternatively, Plaintiff suggests that Federal Rule of Civil Procedure 16(e) applies here. Mot. 3. Federal Rule of Civil Procedure 16(e) governs final pretrial conferences and orders, providing that courts may modify pretrial orders only to prevent manifest injustice. Fed. R. Civ. P. 16(e).

Defendants, on the other hand, argue that Plaintiff effectively seeks to amend two Court scheduling orders—the Court's Patent Scheduling Order (ECF No. 26), which provided that the fact discovery cutoff was 90 days after the claim construction order[5]; and the Court's joint pretrial scheduling order (ECF No. 164). Opp'n 3, ECF No. 209 ("Plaintiff seeks to amend the Court's Patent Scheduling Order . . . to reopen fact discovery so it can identify a new witness and new

---

[4] The Court notes that denial of leave to amend on futility grounds is rare because ordinarily "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *see also In re Mosaic LLM Litig.*, No. 24-CV-01451-CRB, 2025 WL 1755650, at *3 (N.D. Cal. June 25, 2025) ("[A]s a general rule, courts 'defer consideration of challenges to the merits *of a proposed amended pleading until after leave* to amend is granted and the amended pleading is filed.'" (quoting *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010)).

[5] The claim construction order was issued on December 7, 2023 (ECF No. 93), with close of fact discovery in March 2024.



United States District Court
Northern District of California

exhibits not previously produced or identified in any disclosure, contention, or discovery response").

Regardless of whether construed as essentially a motion for leave to reopen fact discovery or a motion to amend the exhibit and witness list, under either scenario, to grant Plaintiff's request the Court would need to amend its Patent Scheduling Order and Joint Pretrial Scheduling Order. *See Lacy v. Am. Biltrite, Inc.*, No. 10CV0830 JM RBB, 2012 WL 909309, at *5 (S.D. Cal. Mar. 16, 2012) (distinguishing between motions to amend pretrial orders and requests to amend the scheduling order, holding that requests to amend the scheduling order are governed by Federal Rule of Civil Procedure 16(b)). For example, because Mr. Provorse is a previously undisclosed fact witness, Defendants have not had the opportunity to depose or seek other written discovery from him, as provided by the Federal Rules of Civil Procedure. Indeed, Plaintiff suggests that "Defendants . . . can elect whether to take any deposition of Mr. Provorse." Mot. 6. Accordingly, Plaintiff's motion essentially seeks to reopen discovery so that Mr. Provorse may be offered as a fact witness. *See TV Interactive Data Corp. v. Sony Corp*., No. C 10-475 PJH MEJ, 2012 WL 1413368, at *3 (N.D. Cal. Apr. 23, 2012) ("The overall purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare for trial."); *see cf. Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2015 WL 5315940, at *2 (N.D. Cal. Sept. 11, 2015) ("Federal Rule of Civil Procedure 26(a)(1) requires a party to identify, without waiting for a discovery request, the identity of all potential witnesses and the purposes for which they may be called.").

This motion is appropriately considered as a motion to amend the scheduling order. Motions to amend a scheduling order are governed by Federal Rule of Civil Procedure 16(b) and require a showing of "good cause." This standard is discussed in detail *supra* at II.A.1. Further, where the motion to amend the scheduling order is "really a motion to reopen" discovery, courts consider the following factors in their "good cause" analysis:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the

> guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (the "*Pomona* factors"); *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 12172652, at *3 (N.D. Cal. Feb. 5, 2013) (citing *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997)).

**2. Discussion**

If Plaintiff demonstrates good cause pursuant to Rule 16(b), the Court will then consider whether its motion is proper under Rule 15, such that it may add Mr. Provorse to the witness list, along with proposed exhibits 119 and 120 to the exhibit list, which he intends to sponsor. The Court applies each of the *Pomona* factors in turn.

The **first factor**—whether trial is imminent—weighs against reopening discovery because of the very limited time until trial. Jury selection is scheduled to take place in less than two weeks. Further, at the time that this motion was originally filed, in April 2026, trial was scheduled to begin in May 2026. Plaintiff notes that at the time it filed this motion, a trial continuance was being contemplated, and as a result, Defendants would likely have sufficient time and opportunity to take Mr. Provorse's declaration. Mot. 5; Reply 3, ECF No. 213. In response, Defendants argue that although trial was ultimately continued, it was for the limited purpose of allowing Plaintiff to depose Defendants' substituted medical expert, not so that Plaintiff could "leverage [the] continuation to reopen discovery." Opp'n 6; *see also* May 7, 2026, Hr'g Tr. 4:17–5:7, ECF No. 215 (Plaintiff's counsel explaining that he would be unable to prepare for trial and conduct the deposition of the substituted expert on the current schedule). In any event, at the time Plaintiff filed this motion trial was imminent, and again now, trial is imminent. *See Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM-(EX), 2024 WL 3444629, at *3 (C.D. Cal. July 5, 2024) (trial set for five months from the Court's order was imminent and weighed against reopening discovery); *Sagdai v. Travelers Home & Marine Ins. Co.*, No. 2:21-CV-00182-LK, 2022 WL 17403445, at *3 (W.D. Wash. Dec. 2, 2022) (trial date one month away was imminent and

therefore weighed against reopening discovery). Accordingly, this factor weighs against reopening discovery.

The **second factor** considers whether the movant's request is opposed. *Pomona*, 866 F.3d at 1066. Because Defendants oppose Plaintiff's motion, this factor weighs against reopening discovery. *See generally* Opp'n.

As to the **third factor** regarding prejudice, the Court finds Defendant's position persuasive. Plaintiff states that it "does not seek to unfairly prejudice Defendants with the addition of Scott Provorse" and has offered to facilitate and not object to Defendants deposing Mr. Provorse prior to trial to directly address any prejudice to Defendants from their inability to examine the new witness. Mot. 5, Reply 4. Plaintiff otherwise argues that any other prejudice claimed by Defendants is overstated because Mr. Provorse is a "a single pool maintenance professional who bought a pole at a pool supply store" such that his testimony does not require any expert supplementation or extensive discovery campaign. Reply 4. But the Court agrees with Defendants—Plaintiff's proposed amendment would expand the scope of discovery, thereby requiring more resources to fully investigate the events surrounding Mr. Provorse's declaration, including but not limited to subpoenaing and deposing third parties referenced therein. Opp'n 7–8 (citing Fed. R. Civ. P. 45). Furthermore, if discovery were reopened, Defendants would likely need to supplement or redo past filings, including Defendants' damages expert report, especially because Plaintiff suggests that the "Provorse evidence is clearly relevant to establish Resh's lost profit damages." *Id.*; Mot. 6. The Court finds such an outcome would be prejudicial to Defendants because they would have no clear opportunity to conduct additional discovery to account for new evidence, including identifying their own witnesses to rebut Mr. Provorse and would incur additional costs to revise and supplement their filings. *See Bookhamer v. Sunbeam Prods., Inc.*, No. C-09-6027 EMC DMR, 2012 WL 5269677, at *7 (N.D. Cal. Oct. 23, 2012) (where expert reports had already been prepared and exchanged and a motion for summary judgment was to be filed three days later, court found that re-opening discovery to allow for a deposition would prejudice the defendant); *see also Whitewater W. Indus., Ltd. v. Pac. Surf*



United States District Court
Northern District of California

*Designs, Inc.*, No. 17CV1118-BEN (BLM), 2019 WL 1547407, at *6 (S.D. Cal. Apr. 8, 2019). As other courts in this Circuit have noted, a delay in the proceedings, especially to the trial date, can constitute prejudice to the non-moving party. *Lockheed Martin Corp.*, 194 F.3d at 986. "The same is true for reopening discovery when it requires additional costs and major alterations in trial tactics and strategy." *Morris v. Sutton*, No. 117CV01488AWISAB, 2019 WL 2994291, at *5 (E.D. Cal. July 9, 2019).

The **fourth factor**'s diligence consideration, however, weighs in Plaintiff's favor. Plaintiff explains that "there was no opportunity for Resh to take any earlier action [because] Resh first became aware of Mr. Provorse" on April 8, 2026, and thereafter expedited its efforts to investigate Mr. Provorse's evidence, which relates to his purchase of an alleged Skimlite pole when he intended to purchase a Resh pole. Mot. 5. Plaintiff informed Defendants of Mr. Provorse "less than five days after Resh first learned" of him. *Id.* And Plaintiff filed its motion for leave to amend the exhibit and witness lists on April 14, 2026, six days after Plaintiff learned of Mr. Resh and his story. Reply 4–5 ("Rule 16(b)'s diligence requirement asks whether the party moved with reasonable promptness once it learned of the new evidence—not whether it could have foreseen every type of evidence that might theoretically become available in the future.").

Defendants imply that because Plaintiff "purports to be well-connected in the 'pool man' industry" it could have previously sought out and identified substituted-sale evidence during the roughly two-year fact discovery period. Opp'n 9 (citing *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. CV 12-10763 MMM JEMX, 2014 WL 3563311, at *2 (C.D. Cal. Mar. 12, 2014) and *Whitewater West Industries, Ltd.*). Although Defendants certainly make a reasonable point that Plaintiff could have sought substituted-sale evidence earlier, the Court considers Plaintiff's diligence as to this particular witness and associated evidence. Ultimately, the Court finds that Plaintiff was diligent in seeking leave to add Mr. Provorse as a witness where Mr. Provorse's experience with the alleged Skimlite pole occurred on April 7, 2026, and Plaintiff sought leave from this Court on April 14, 2026. *See* Decl. of Scott Provorse ¶ 18, ECF No. 206-1; Mot. 6. This factor weighs in favor of reopening discovery.

United States District Court
Northern District of California

The **fifth factor** considers whether the need for additional discovery was foreseeable. Here, Plaintiff argues for the first time in its Reply that it was not foreseeable that Plaintiff would have discovered the Provorse evidence earlier. Reply 5. It is well established that courts need not consider argument raised for the first time in reply. *Mancinelli v. Marriott Int'l, Inc.*, No. 25-CV-08246-JST, 2025 WL 3679686, at *1 (N.D. Cal. Dec. 18, 2025). Turning then to Defendants' argument, Defendants contend that "[t]o the extent additional discovery was needed during the discovery period, the need was foreseeable and Plaintiff should have requested it earlier." Opp'n 10. Because this appears to be an instance in which Plaintiff stumbled upon Mr. Provorse by happenstance, not one in which Plaintiff affirmatively sought additional witnesses or testimony, considering whether the "need" for this discovery was foreseeable is a bit odd. Ultimately, however, this Court finds this factor weighs against reopening discovery because Plaintiff has not carried its burden.

Finally, the Court finds the **sixth factor**'s consideration of whether discovery is likely to lead to relevant evidence weighs in Defendants' favor. Plaintiff argues that the Provorse evidence is relevant for several reasons. Mot. 6. Plaintiff contends it relates to Resh's lost profit damages and continues that Mr. Provorse "has used Resh Piranha 2-tube poles for more than 10 years and wanted to buy another one." Mot. 6. Mr. Provorse alleges that when he asked a salesperson for a Piranha pole, they sole him one of Defendants' three-tube poles, which he thought was a Piranha pole. *Id.* at 7. In response, Defendants argue that because Mr. Provorse's anticipated testimony, his alleged Skimlite pole, and his declaration are inadmissible, reopening discovery as to Mr. Provorse would not lead to admissible evidence. Opp'n 10.

The Court previewed some of its concerns about this evidence and testimony during the April 23, 2026, Status Conference. *See* Hr'g Tr. 37:13–37:18; 18:1–10 (querying whether the Provorse evidence is "bad character evidence" that Plaintiff would attempt to admit to suggest that Defendants have an inferior product); 13:12–14 (suggesting the relevance to damages was not clear given the one-off nature of this event); 36:13–20 (providing preliminary thoughts about the Provorse evidence, including an insufficient foundation, hearsay issues). These concerns remain.

The Court finds that the probative value of either Mr. Provorse's broken pole or his testimony is substantially outweighed by the risk of unfair prejudice, confusing the jury, or undue delay. Rule 403. As for its probative value, the Court agrees with Defendants that anecdotal evidence of a "one-off example" of a lost sale cannot support an entire lost profits theory involving thousands of sales. *See* Opp'n 13. And the risk of unfair prejudice is considerable; despite Defendants' professed concern about the risk of prejudice in their Opposition, Plaintiff contends that "[e]vidence that Defendants' infringing product is fragile and prone to failure is probative evidence that customers would prefer the patented Resh/Piranha product, which supports lost profit damages." Reply 7. Rather than mitigate concerns about prejudice or confusion, Plaintiff's response serves to underscore these concerns. An allegation that Defendants sell allegedly inferior products is irrelevant to whether patent claim 20 is invalid or infringed, and such evidence will inevitably create undue delay and result in unfair prejudice to Defendants.

Overall, five of the six factors weigh against reopening discovery. Accordingly, the Court finds Plaintiff fails to establish good cause to reopen discovery and therefore Plaintiff's motion is **DENIED**.[6]

**C. Motion to Amend Exhibit List (ECF No. 208)**

Plaintiff also moves for leave to amend its exhibit list to introduce two physical exhibits, a commercially available FGRHY grabber and a folding grabber, as well as internet screenshots of both physical exhibits. Mot., ECF No. 208.

**1. Legal Standard**

The deadline for the Parties to file their Joint Exhibit List was March 17, 2026, and, pursuant to this Court's Patent Scheduling Order, fact discovery closed in March 2024. *See* ECF Nos. 26, 164. Again here, Plaintiff seeks to effectively reopen fact discovery for the limited purpose of introducing previously unidentified exhibits and *ex post-facto* seeking permission to

[6] The Court agrees with Defendants that even if found relevant, the broken pole and Mr. Provorse's declaration would be inadmissible pursuant to Rules 802, 403 and/or 404. *See* Opp'n 12–13.

identify potentially relevant exhibits after the close of discovery; doing so requires the Court to amend its prior scheduling orders. Thus, as described above, Rule 16(b)'s "good cause" standard applies. *See supra* §§ II.A.2, II.B.2.

**2. Discussion**

The Court weighs the six factors set out in *Pomona* to determine whether to grant Plaintiff's request to permit limited discovery into the FGRHY grabber and the folding grabber, so that these devices may ultimately be added to the exhibit list.

At the outset the Court notes that Plaintiff's motion does not address why leave should be granted to reopen discovery for the limited purpose of adding the *folding* grabber or internet screenshots thereof as exhibits. *See* Mot. 2 (proposed exhibits 123 and 124). Thus, Plaintiff's request as to these exhibits is **DENIED**. The remainder of this discussion addresses Plaintiff's request to reopen discovery for the limited purpose of adding the FGRHY Grabber and internet screenshots thereof as exhibits.

The **first and second factors** weigh against reopening discovery for the same reasons described in the section prior. Trial is imminent, and Plaintiff's request is opposed.

The **third factor** similarly weighs in Defendant's favor. Plaintiff argues the prejudice to Defendants would be minimal because "Defendants are intimately familiar with the Hatcher '751 patent" and will be able to confirm readily whether the FGRHY Grabber embodies that technology. Mot. 4–5. Resh continues that it has offered to facilitate and "will not object to Defendants inspecting the FGRHY Grabber." *Id.* at 5. Defendants respond by reiterating many of the same arguments raised in response to Plaintiff's previous motion (ECF No. 206), including that these new exhibits would "expand the scope of discovery and require significantly more resources to fairly evaluate and rebut Plaintiff's arguments. Opp'n 13. Specifically, Defendants would need to conduct third-party discovery of Mr. Hatcher and FGRHY to confirm their relation to the named inventor of the '751 patent and its assignees, and they would need to revisit their technical and damages expert reports, and trial strategy. *Id.* at 13–14. The Court agrees. Where Defendants would have to engage in additional discovery regarding previously undisclosed

physical exhibits that Plaintiff contends undercut their obviousness argument, the Court finds this factor weighs against reopening discovery. *See Morris*, 2019 WL 2994291, at *5.

But for the same reasons discussed the section prior, the Court finds Plaintiff was sufficiently diligent to satisfy the **fourth factor**. Resh argues that it could not have taken any earlier action because it only became aware of the FGRHY Grabber two days before the filing of this motion. *Id.* While Defendants argue that Plaintiff was not diligent because the two grabbers were "available long ago," Opp'n 10, the Court is persuaded that Plaintiff was diligent in "repeatedly search[ing] for commercial products embodying the telescoping technology described in Hatcher '751." *See* Reply 3; *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020) (considering whether the party seeking amendment was "diligent in seeking amendment").[7]

The **fifth factor** regarding foreseeability again weighs in Defendants' favor. Though Plaintiff argues for the first time in its Reply that it was not foreseeable that Plaintiff would need this evidence until very recently, Reply 2, it is well established that courts need not consider argument raised for the first time in reply. *Mancinelli*, 2025 WL 3679686, at *1. Defendants argue that "Plaintiff had almost two years of fact discovery to search for and produce telescoping grabbers allegedly related to the Hatcher '751 Patent." Opp'n 12. Indeed, Defendants disclosed that they intended to rely on the Hatcher reference on August 1, 2022—more than four years ago and well before the close of discovery. *See* Decl. of J. Stowell Ex. G, at 4, 9–10, ECF No. 214-1. Plaintiff in fact describes the Hatcher '751 reference as the cornerstone of Defendants invalidity case. *See* Reply 1; *see cf. Am. GNC Corp. v. LG Elecs. Inc.,* No. 17-CV-01090-BAS-BLM, 2017 WL 4792373, at *3 (S.D. Cal. Oct. 24, 2017) (noting that plaintiff would have the opportunity to obtain facts about non-infringement contentions *during* the discovery process). The Court finds

[7] The Court finds Defendants' reliance on *West v. Jewelry Innovations, Inc.*, No. C071812JFHRL, 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008) to be misplaced. The question of diligence there was specific to a party's diligence in amending its preliminary invalidity contentions. *Id.* Defendants do not provide authority to support that the same approach applies to seeking to amend scheduling orders.



United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants' argument persuasive and concludes that the need for this evidence was foreseeable.

The **sixth and final factor** regarding the likelihood of leading to relevant evidence also weighs in Defendants' favor. Plaintiff suggests that the FGRHY Grabber evidence is relevant because it will allow the Court and the jury to more readily and accurately understand the alleged prior art. Mot. 6. Defendants argue that Plaintiff does not identify evidence connecting the FGRHY Grabber to the Hatcher '751 Patent, instead only asserting that the device *appears* to embody the prior art reference. Opp'n 6. Further, Defendants argue that the extendable reaching tool described in the Hatcher '751 Patent has readily apparent difference from the Telescoping Grabber that Plaintiff seeks to introduce, contradicting Plaintiff's position that the Grabber is an embodiment of the patented technology. *Id.* The Court finds Defendants' position more persuasive. "Determining whether a patent claim is invalid for obviousness requires consideration of the scope and content of the prior art, differences between the prior art and the patent claim[.]" *Carl Zeiss A.G. v. Nikon Corp.*, No. 217CV03221RGKMRW, 2018 WL 9869242, at *2 (C.D. Cal. Sept. 4, 2018). Thus, to the extent that the FGRHY Grabber definitively embodied the Hatcher '751 patent, it may have been relevant. But here, Plaintiff has not shown that the device qualifies as prior art and Plaintiff does not address this shortcoming in Reply. *See* Opp'n 7; Reply 4–5 (acknowledging that Defendants devote a section to argument that Plaintiff has not shown FGRHY Grabber qualifies as prior art but suggesting that Defendants "miss the point"). Though Plaintiff intends to offer the FGRHY Grabber as a demonstrative aid, it will not "help the jury visualize and understand what the Hatcher '751 patent" describes if it is not an embodiment of the patented technology. *See* Opp'n 6.

Overall, five of the six factors weigh against reopening discovery. Accordingly, the Court finds Plaintiff fails to establish good cause to reopen discovery and Plaintiff's motion for leave to amend the exhibit list to include proposed exhibits 121–124 is **DENIED**.

**D. Motion to Amend Exhibit List (ECF No. 221)**

Finally, Plaintiff seeks to amend its Exhibit List to include an advertisement posted on Defendants' Instagram page that Jenel Resh saw on or around June 12, 2026, and Ms. Resh's

United States District Court
Northern District of California

accompanying declaration. ECF No. 221.

**1. Legal Standard**

The Parties again disagree on the appropriate legal standard. For the reasons previously discussed throughout this Order, the Court finds that Rule 16(b)'s "good cause" standard governs. *See supra* §§ II.A.1, II.B.1. As with the previous motions, because Plaintiff's proposed exhibits were not produced or otherwise disclosed during discovery, the Court would have to reopen discovery to permit their disclosure. In practice, the motion to amend the exhibit list seeks to reopen discovery for the limited purpose of exchanging this advertisement and permitting any related discovery, a fact seemingly conceded by Plaintiff's subsequent motion for leave to take limited discovery. *See* Mot. for Leave to Take Limited Discovery, ECF No. 226.

**2. Discussion**

The Court applies each of the six *Pomona* factors to evaluate whether to reopen discovery. By now, the Parties are well familiar with these factors.

**First,** trial is imminent. This factor weighs against reopening discovery. And **second**, Defendants oppose Plaintiff's motion to amend the exhibit list, effectively reopening discovery. *See* Opp'n, ECF No. 228. This factor too weighs against finding good cause to reopen discovery.

**Third**, the Court finds Defendants will be unfairly prejudiced by permitting limited discovery as to the Instagram advertisement, and amending the exhibit list to include the advertisement. Plaintiff argues there will be no prejudice or surprise to Defendants where it is their "**own** 'PATENTED' advertisement that Plaintiff seeks to include. Mot. 5 ("Having created and published an advertisement that says their detent-locking pole hardware is "PATENTED," Defendants should not now be permitted to act as if they did not create and publish that advertisement."). But regardless, Defendants will be unfairly prejudiced because, as Plaintiff's motion for additional discovery shows, Defendants would be tasked with responding to requests regarding "over 10 categories of information . . . [and] an additional 30(b)(6) deposition of Skimlite." Opp'n 15. Further, reopening discovery to accommodate Plaintiff's new exhibits would require Defendants to redo or supplement numerous pretrial documents, including to

"address whether the lever lock used in the SnapPro product is the same as the lever lock used in the Accused Products," prepare and serve a supplemental damages report and file motions *in limine*. Opp'n 15–16. In Reply, Plaintiff argues that Defendants' "catalogue of anticipated burdens" does not accurately describe the burden of adding two exhibits to a list. But this argument reflects a fundamental misunderstanding; the purpose of the exhibit list is to reflect documents previously disclosed in discovery that are intended for use at trial. *See Kirola v. City & Cnty. of San Francisco*, No. C 07-03685 SBA, 2011 WL 1235664, at *1 (N.D. Cal. Apr. 1, 2011) ("Plaintiffs assert that their proposed amendments to their witness list and trial exhibit list are necessary in view of the *additional discovery* conducted." (emphasis added)).

**Fourth,** the Court finds that Plaintiff was diligent in seeking amendment. Resh only became aware of the Instagram advertisement several weeks prior to filing its motion. Mot. 5. Further, the advertisement was first posted on June 11, 2026, by a third-party marketing agency engaged by Skimlite to create social media marketing content. Opp'n 3. Plaintiff could not have practically sought amendment to the scheduling order any sooner.

**Fifth**, the Court considers whether the need for additional discovery was foreseeable. Plaintiff does not address this factor at all in its motion, and Defendants merely assert that "whether additional discovery was foreseeable is . . . irrelevant." Opp'n 18. The Court therefore finds this factor weighs against Plaintiff as it is their burden to demonstrate good cause.

**Sixth**, the Court finds that reopening discovery in a limited manner to permit Plaintiff to amend the exhibit list to include the Instagram advertisement and Ms. Resh's corresponding declaration is not likely to lead to relevant evidence. Plaintiff contends that this Instagram advertisement is relevant in part because "Defendants' previously undisclosed SnapPro poles include the same lever/detent locking features that have been the focus of this pending lawsuit since its inception" and the Instagram advertisement includes language relating to these features ("stays secure and never slips"). Mot. 6. Plaintiff suggests that the language in this advertisement constitutes an admission that Resh's lever/detent locking features solved a "longstanding 'insecure/slipping' problem" Defendants had been unsuccessful in addressing previously. *Id.* at 6.

Defendants counter, and the Court agrees that the SnapPro Instagram post and Resh Declaration are not relevant because they do not relate to any Accused Product. Opp'n 8. Furthermore, the only remaining claim in this case is claim 20 of the '852 patent, which requires a "telescoping pole with *three* tubes" and the SnapPro pole, featured in the Instagram advertisement, does not have three tubes. *Id.* Finally, because false patent marking is not an asserted claim, and this Order denies Plaintiff's motion to amend the complaint to include such a claim, evidence relating to false patent marking is irrelevant.

Accordingly, given nearly all factors weigh against finding good cause to amend the scheduling order, the Court **DENIES** Plaintiff's motion seeking leave to amend the exhibit list to include Defendants' Instagram advertisement and Ms. Resh's declaration.[8]

## III. MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY (ECF NO. 226)

Plaintiff requests leave to take limited additional discovery after the close of fact discovery regarding the Instagram advertisement that was posed on mfgskimlite's page in or around June 2026. Mot., ECF No. 226. The specific discovery requested includes "unit sales, revenue, and pricing for the SnapPro line and any other previously undisclosed product line, by year," "the Instagram post itself . . . and all other marketing materials representing any Skimlite product as patented or patent-pending," and "documents sufficient to show who authorized development, manufacture, and marketing of the SnapPro line, and any related legal or patent analysis." *See id.* at 4–5.

### 1. Legal Standard

As discussed elsewhere in this Order, "[w]hen ruling on a motion to amend a Rule 16 scheduling order to reopen discovery," the Ninth Circuit instructs district courts to consider six factors:

[8] Even assuming that there was good cause to amend the scheduling order to permit limited discovery and amendment to the exhibit list, the Court finds Defendants' evidentiary objections well-reasoned and persuasive. *See* Opp'n 10–11 (explaining that "Plaintiff's attempt to black hat Defendants based on an unasserted cause of action (false patent marking) is inherently prejudicial," would result in undue delay during trial, and is likely to confuse and mislead the jury).



United States District Court
Northern District of California

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Pomona*, 866 F.3d at 1066; *see also San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2025 WL 823266, at *4 (N.D. Cal. Feb. 3, 2025), *reconsideration denied,* No. 5:20-CV-00824-EJD, 2025 WL 1382862 (N.D. Cal. May 12, 2025).

**2. Discussion**

The Court considers each of the six *Pomona* factors to determine whether to reopen discovery. As to the **first factor**, imminence of trial, Plaintiff notes that trial remained approximately three months away at the time it brought its motion, but does not directly address imminence. *See* Mot. 4. In Reply, Plaintiff further states that the discovery Resh "duly seeks" does not require a disruption of the trial date. Reply 9, ECF No. 235. Defendants respond that the hearing on Plaintiff's motion was scheduled for (and took place on) October 8, 2026, less than one month before jury selection is scheduled to begin on November 2, 2026. Opp'n 15, ECF No. 233. The Court finds that trial is imminent and this factor weighs against granting Plaintiff's Motion for Leave to Conduct Limited Discovery.

Defendants oppose Plaintiff's motion, so the **second factor** also weighs against finding good cause for Plaintiff's Motion.

**As to the third factor**, the Court considers whether Defendants would be prejudiced by granting Plaintiff leave to conduct limited discovery. Plaintiff argues that at the time of its motion, "trial remain[ed] approximately three months away," that Defendants "already possess[] the responsive documents and information, and know the identity of the relevant witnesses," such that Defendant's only burden is disclosing facts within their own knowledge and control. Mot. 4. Plaintiff's suggestion that the three-month period between the date of filing and the trial date is sufficient disregards the time necessary for its motion to be fully briefed and argued. Further, that Defendants presumably have in their possession documents relating to their SnapPro pole line and



United States District Court
Northern District of California

United States District Court
Northern District of California

know the identity of the relevant witnesses does not eliminate the burden on Defendants to identify this purportedly relevant information or prepare potential witnesses for deposition. Although Plaintiff attempts to minimize this fact, it concedes this is a "burden." Mot. 3. As noted elsewhere throughout this order, the court is persuaded by Defendants' argument that they would be prejudiced by having to revisit their trial strategy, previously informed by the closed factual record and the operative complaint. *See* Opp'n 12–13; *see also Morris*, 2019 WL 2994291, at *5. For these reasons, the Court finds that Defendants would be prejudiced by reopening discovery at this late stage of the litigation such that this factor weighs against granting Plaintiff's motion for leave to conduct limited discovery.

**The fourth factor** considers Resh's diligence in seeking amendment. This factor favors reopening discovery because Rish diligently sought discovery relating to the subject Instagram advertisement, and that it could not have sought discovery earlier than June 12, 2026, when Plaintiff first became aware of the advertisement. Mot. 3. Defendants argue that Plaintiff's diligence in bringing this issue to the Court's attention is beside the point because the false patent marking discovery is irrelevant to Plaintiff's current claims. Opp'n 16. Though, as explained further below, the Court agrees that the discovery sought is not likely to lead to relevant discovery in this action, Defendants do not cite authority for the proposition that the diligence inquiry should be disregarded or given less weight simply because the requested discovery is irrelevant. *See id.*

The **fifth factor**—the foreseeability of the need for this discovery—is not well-suited for a scenario such as this, where the need for the discovery was not foreseeable in large part because it relates to an unasserted claim. In any event, Plaintiff does not present argument in its motion as to the foreseeability of its need for this discovery.[9] *See* Mot. Defendants suggest that "whether additional discovery was foreseeable is irrelevant. The parties did not foresee the need for additional discovery because they obtained all the discovery they needed related to the ***current***

[9] The Court reminds Plaintiff that it need not consider argument raised for the first time in Reply. *See* Reply 3, ECF No. 3 (discussing for the first time that the need for this discovery was not foreseeable to Resh).

claims." Opp'n 16. On the record before it and given Plaintiff's lack of argument as to this factor, the Court finds this factor weighs against reopening discovery.

Finally, applying the **sixth factor**, the Court considers the likelihood that the discovery sought will lead to relevant evidence. Plaintiff argues that the discovery sought bears directly on damages and "on the merits of Resh's pending motions." Mot. 3. In response, Defendants argue that Plaintiff's requested discovery is irrelevant to the pending infringement claim; Plaintiff in fact concedes this point stating, "[t]he discovery sought below is confined to a single, discrete, recently emerged issue — Defendants' false marking of the SnapPro pole and the scope of that previously undisclosed product line — rather than reopening general fact discovery." Opp'n 5 (citing Mot. 3). Plaintiff further explains that without the requested discovery, Resh will be unable to "quantify the competitive injury required to support a false-marking damages claim." *Id.* (citing Mot. 4). Because false patent marking is not an asserted claim in this action any evidence "purportedly relating to false patent marking is irrelevant." *Id.* at 6. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also City & Cnty. of San Francisco v. Port of Oakland*, No. 24-CV-02311-TSH, 2025 WL 2962566, at *2 (N.D. Cal. Oct. 20, 2025). Plaintiff has not meaningfully articulated how the requested discovery is relevant to the asserted claims in this action, only how it relates to the unasserted false patent marking claim. *See cf. Grimes v. United Parcel Serv., Inc.*, No. C 05-01824 RS, 2008 WL 217153, at *2 (N.D. Cal. Jan. 24, 2008), *aff'd sub nom. Grimes v. United Parcel Serv.*, 365 F. App'x 71 (9th Cir. 2010) (describing as "axiomatic" that any particular piece of evidence that is relevant only to a dismissed claim for relief will not be admissible). Accordingly, the Court finds this factor weighs against granting Plaintiff's motion.

Altogether, the six *Pomona* factors weigh against reopening discovery and therefore Plaintiff's motion is **DENIED**.

## IV. MOTION TO EXCLUDE SUBSTITUE EXPERT (ECF NO. 238)

Finally, Plaintiff filed a motion to exclude the expert testimony and report of Dr. Feland

pursuant to Rule 702 and *Daubert*. *Daubert* Mot., ECF No. 238.[10]

**A. Legal Standard**

Courts act as the gatekeeper of expert testimony to ensure that such testimony is reliable and relevant under Federal Rule of Evidence 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The proponent of expert testimony has the burden of proving admissibility. *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017) (citations omitted). Before an expert can offer her opinions, she must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Once she is qualified, Rule 702 permits her to testify as long as "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Id.* This multifactor inquiry is flexible, and "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citations omitted). Although courts must screen expert testimony for reliability, what they assess "is not the correctness of the expert's conclusions but the soundness of [her] methodology." *Pomona*, 750 F.3d at 1044 (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010)). In other words, Daubert is not a "guarantee[] of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 855 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility. So long as an opinion is premised on reliable scientific principles,

---

[10] Although Plaintiff claims not to know whether to present its motion as a motion in limine or a Daubert motion, the Legal Standard section reflects that this is a true Daubert motion, explaining that as the proponents of Dr. Feland's testimony and report, Defendants must show by a preponderance of the evidence that his testimony (1) is based on sufficient facts or data, (2) rests on reliable principles and methods, and (3) reflects a reliable application of the principles and methods to the facts of the case. Mot. 4, ECF No. 238.

it should not be excluded by the trial judge." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018), *aff'd sub nom. Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021).

**B. Discussion**

Defendants substituted their prior expert, Dr. Pratt, with leave of Court on April 9, 2026, due to unforeseen medical issues. ECF No. 202. Resh does not dispute that Dr. Feland is qualified to serve as an expert witness in this case pursuant to Rule 702(a) but raises four other arguments for his exclusion: (1) Dr. Feland's methodology is unreliable under 702; (2) Dr. Feland's reliance on the report authored by Dr. Pratt is improper under Rules 703 and 802; (3) Dr. Feland contradicted himself when discussing the materials he reviewed to form his opinions and should therefore be excluded under Rule 37(c)(1); and (4) several specific opinions should be excluded on independent grounds. The Court finds each unpersuasive for the following reasons.

**1. Timeliness**

As an initial matter, however, the Court briefly addresses Defendants' arguments regarding the timing of Plaintiff's motion. Defendants assert that Resh must show good cause to modify the scheduling order to hear a Daubert motion at this late stage. *Id.* at 15. And Defendants contend no such good cause exists—Resh was not diligent in presenting the present motion because Resh delayed five months to take Dr. Feland's deposition, which in turn, delayed the present motion. *Id.* at 16. Defendants also contend that they are prejudiced by the untimely motion. If these issues were raised earlier, Defendants argue that could have alleviated Plaintiff's concerns by seeking leave to amend Dr. Feland's expert report, if necessary.

Plaintiff's justification for the timing of his deposition and subsequent motion is that he was awaiting the Court's ruling on the previously pending motion for costs.

The Court is inclined to agree with Defendants. The timing of Plaintiff's motion requires a showing of good cause, and Plaintiff's arguments on this front are lacking. However, given the recency of the substitution and the prior disputes regarding Dr. Feland's deposition, the Court will exercise its distraction and consider Plaintiff's arguments.



United States District Court
Northern District of California

**2. Reliability**

First, Plaintiff argues that Dr. Feland's "unblinking reliance" on Dr. Pratt shows a methodology that is not calculated to produce reliable results. Mot. 4 (citing *Pascal v. Nissan N. Am., Inc.*, No. 820CV00492JLSJDE, 2022 WL 19076763, at *16 (C.D. Cal. Dec. 21, 2022) ("[E]xperts may rely on one another, but they may only do so if the requisite standards for reliability are met each step of the way. If one expert's opinions are built upon a foundation laid by another, reliability of the latter requires reliability of the former.") (internal quotations omitted) (quoting *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *5 (S.D.N.Y. July 28, 2017)). Plaintiff contends that Dr. Feland conceded he could not explain an opinion without Dr. Pratt present, spent only eleven hours on his report, and did not review most of Dr. Pratt's sources. According to Plaintiff, this leaves "no room for Dr. Feland to make the independent verification that Rules 702(b) and (d) demand." *Id.* at 5. Plaintiff also claims that Dr. Feland's representations to the contrary—that he independently verified each opinion—are impermissible "*ipse dixit*" under *Joiner*. *Id.* at 5 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")).

Defendants argue that Dr. Feland does not "merely parrot" Dr. Pratt's opinions. Opp'n 5. Instead, the deposition transcript reflects that Dr. Feland conducted an independent evaluation of Dr. Pratt's opinions and incorporated those he found reliable. *See id.* at 6; *see also Mendoza v. Intuitive Surgical, Inc.*, No. 18-CV-06414-LHK, 2020 WL 1976472, at *7 (N.D. Cal. Apr. 24, 2020) ("As Plaintiff notes, courts recognize that 'an expert can appropriately rely on the opinions of others if other evidence supports [the expert's] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence.'"). Defendants rely heavily on *Jerpe v. Aerospatiale*, No. CIV. S-03-555 LKK/DAD, 2007 WL 1394969, at *6 (E.D. Cal. May 10, 2007). There, the defendants also challenged a substituted expert's alleged parroting of the original expert's findings and opinions. The court found that, even though the substituted expert's testimony "was somewhat ambiguous on the issue of whether he was merely relying on the same

underlying data set produced at the direction of Mr. Wilson [(the original expert)], or if he was relying on both that data set and the conclusions that Mr. Wilson drew therefrom. Nevertheless, Dr. Kar's declaration clearly states that he independently arrived at his opinions by, for example, reviewing x-ray radiographs and ultrasonic data." *Id.* Defendants argue that none of Resh's cases prove that the fact that Dr. Feland arrived at the same conclusion as Dr. Pratt means that Dr. Feland simply copied Dr. Pratt's opinions. Further, Defendants highlight that none of the cases upon which Resh relies are substitute-expert cases. Indeed, Defendants accurately point out that the cases upon which Resh relies are inapposite for a number of reasons; for example, Defendants do not seek to use Dr. Feland to summarize numerous other experts' testimonies without further analysis, or otherwise assert that he is relying on expert testimony that has already been excluded. See Opp'n 7–8 (distinguishing cases upon which Plaintiff relies). As to Plaintiff's *ipse dixit* argument, Dr. Feland testified during his deposition that he conducted his own review of the prior art references and claims, and used a subset of the sources that Dr. Pratt used and Plaintiff does not identify any "analytical gap," between the facts and data and Dr. Feland's opinions (as supported the *ipse dixit* assertion in *Joiner*). *Id.* at 13. Defendants easily dispel of Plaintiff's suggestion that Dr. Feland should have spoken to Dr. Pratt (there is no requirement to this effect, and if there was one, that would be incompatible with the need for substitution where the expert dies, for example) and that the time Dr. Feland billed to Defendants before signing his report is insufficient (no case supporting exclusion purely based on the number of hours spent forming an opinion). Further, Defendants point out that when a new expert is substituted for an original expert, the new expert *must* limit their opinions to the subject matter covered in the original expert's report. *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 8094582, at *2 (N.D. Cal. Nov. 19, 2014). Defendants contend that Resh's motion ignores the context which gave rise to Dr. Feland's report, and also disregard the previous assurances that Plaintiff sought from the Court and Defendants that Defendants' new expert would offer no new opinions. Opp'n 10–11.

The Court finds Dr. Feland's adoption of Dr. Pratt's opinions generally reliable. It is not uncommon for a substituted expert to adopt the prior expert's opinions—indeed, as Defendants

highlight, experts substituted at this stage of litigation are required to limit opinions to matters covered by the original expert. *See Fujifilm Corp.*, 2014 WL 8094582, at *2. And rather than merely parroting Dr. Pratt, the Court is persuaded by the deposition transcript that Dr. Feland independently evaluated all opinions incorporated as his own. In this way, this case shares many similarities with *Jerpe*, 2007 WL 1394969, at *6. Further, the Court notes that Plaintiff did not challenge the reliability of Dr. Pratt's underlying opinions when he was the expert named in this case, so there are no issues with the "reliability of the former" expert's opinion. *Pascal*, 2022 WL 19076763, at *16.

### 3. Reliance on Dr. Pratt's Report

Plaintiff next argues that Rules 703 and 802 bar Dr. Pratt's report and its contents. Rule 703 permits an expert to rely on otherwise inadmissible material, but it does not permit the admission of this material as "general proof of the truth of the underlying matter." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984); *see also* Rule 703 ("But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."). Plaintiff contends that Dr. Pratt's report, upon which Dr. Feland relies, is otherwise inadmissible and its probative value does not substantially outweigh the prejudicial effect. Mot. 5.

In response, Defendants do not object to Plaintiff's request not to introduce Dr. Pratt's report into evidence; but they do object to restricting Dr. Feland from testifying at all or should be barred from reciting the report's contents. Opp'n 11. Defendants provide authority confirming that it is well-settled that an expert witness's report may be excluded as inadmissible hearsay, but that the expert may still be permitted to testify regarding the substance of the expert witness's conclusions. *Id.* (*citing Evox Prods. LLC v. Yahoo, Inc.*, No. 2:20-cv-02907-MEMF-JEMx, 2023 WL 5506894, at *9 n.9 (C.D. Cal. July 28, 2023)). Further, similar to arguments made in the section prior, Resh "does not dispute that Dr. Feland's opinions themselves are not objectionable," because Resh did not file a *Daubert* motion against Dr. Pratt when he offered the same opinions.

The Court will grant Plaintiff's request to keep Dr. Pratt's report out of evidence but otherwise finds Dr. Feland's reliance on the report permissible. As both parties are aware, experts are permitted to rely on inadmissible evidence to form their opinions. *Evox Prods.*, 2023 WL 5506894, at *9 n.9. So long as Dr. Feland limits the scope of references to Dr. Pratt's report to opinions that he has incorporated as his own, the Court finds this reliance permissible. Plaintiff may of course examine Dr. Feland's reliance on the report during cross examination, and the jury may assign the appropriate weight to Dr. Feland's opinions.

**4. Contradictions**

Third, Plaintiff argues that Dr. Feland's report impermissibly certifies that he considered "all references and documents cited in Dr. Pratt's Expert Report and Appendices thereto," but then admitted that he did not review most of those materials. According to Plaintiff, Dr. Feland's report should therefore be excluded under Rule 37(c)(1). Mot. 6 ("Because the report does not truthfully identify what Dr. Feland considered, Rule 37(c)(1) mandates exclusion unless Defendants show substantial justification or harmlessness").

Defendant responds briefly that "any inadvertent inclusion of additional references in Dr. Feland's materials considered list in its incorporation of Dr. Pratt's considered list was harmless and does not warrant exclusion of Dr. Feland." Opp'n 12.

The Court finds this issue does not warrant exclusion; however, the Court will require Defendants to disclose the materials upon which Dr. Feland relied, as Plaintiff suggests in its Reply. *See* Reply 4, 7 ("At minimum, the Court should confine Dr. Feland to the materials he identified as actually reviewed.").

**5. Specific Opinions**

Plaintiff next argues that the Court bar specific opinions on "independent grounds": (1) secondary considerations; (2) one of four obviousness combinations; (3) legal conclusions; and (4) an undisclosed inspection.

First, regarding <u>secondary considerations</u>, Plaintiff argues that Dr. Feland adopted wholesale Section XX of the report and did not perform the market analysis that he says "long-felt



United States District Court
Northern District of California

United States District Court
Northern District of California

need" requires. Mot. 6. Plaintiff contends that this testimony does not engage with objective evidence lacks the "articulated reason with some rational underpinning" that the law requires. *Id.* Defendants argue that Dr. Feland did not testify that *any* opinion on the existence of a long-felt unmet need required a market research study or focus group, but rather, disagreed with Resh's argument that a statement by James Conrad reflected a long-felt need. Opp'n 12–13. Further, Resh provides no authority for its position that Dr. Feland must have conducted an examination of actual physical samples rather than photographs to reach his opinions on secondary indicia of non-obviousness, nor that an expert must review primary source documents when reliable summaries have already been prepared. *Id.*

The Court agrees with Defendants that "[a]t most, these miscellaneous complaints by Resh are grounds for cross-examination and go to weight, not admissibility." *Id.*

Second, regarding the obviousness combinations, Plaintiff contends that Dr. Feland assumed the A.G. Pro was prior art at counsel's direction but has no independent knowledge of when or how long any of the products existed. Accordingly, any obviousness expert opinion is "not sufficiently founded on facts." Mot. 6. Plaintiff contends that Dr. Feland may not offer any obviousness combination that depends on references to the A.G. Pro Pole unless Defendants first prove their prior-art status through competent evidence. *Id.* at 6–7. Defendants respond that experts' assumptions made at counsel's direction are "common and not a basis to exclude an expert's opinion." Opp'n 13 (citing *Munoz v. PHH Mortg. Corp.*, No. 1:08-CV-00759-MMB-BAM, 2025 WL 359765, at *2 (E.D. Cal. Jan. 31, 2025) ("The flip side of that principle is that an expert may base an opinion on assumptions from counsel provided they are based on evidence that either has been or will be admitted."). Defendants intend to prove the A.G. Pro Pole's prior art status through Ray Leduc, its creator. *Id.* at 14. Further, Defendants need not present this evidence before introducing Dr. Feland's testimony as Rule 104(b) contemplates a situation in which proof is introduced later. *Id.* at 14. *see also* Fed. R. Evid. 104(b) ("The court may admit the proposed evidence on the condition that the proof be introduced later."). And Defendants highlight that Dr. Feland and Dr. Pratt used the same methodology to opine on the obviousness of

the last-standing asserted claim, and Plaintiffs did not object to Dr. Pratt's use of this methodology previously. *See* Opp'n 5.

The Court is unpersuaded by Plaintiff's arguments that Dr. Feland may not rely on certain assumptions made by counsel regarding the A.G. Pro Pole, especially where Defendants intend to produce testimony and evidence to support their argument that the A.G. Pro Pole is prior art. *See* Opp'n 13–14; *see also supra* order re: Pls' MILS 1, 2. The Court accordingly denies Plaintiff's request to exclude Dr. Feland's obviousness combination(s) that may rely on the A.G. Pro Pole.

Third, regarding legal conclusions, Plaintiff argues that Dr. Feland's opinion that Resh's evidence is "insufficient to demonstrate copying as a matter of law" is a legal conclusion. Mot. 7. Defendants do not oppose barring discussion of whether "copying as a matter of law" occurred as stated in the relevant paragraph of Dr. Pratt's report. Opp'n 14. The Court accordingly grants Plaintiff's request to exclude this opinion.

Finally, regarding undisclosed inspection, because Dr. Feland's report does not disclose the September 14, 2026, inspection, Plaintiff asserts that Rule 37(c)(1) bars opinions drawn from that inspection. Mot. 7. Defendants explain that this was "merely an in-person inspection of the same physical poles that Dr. Feland previously inspected by video," and the failure to reserve the right to rely on an in-person inspection in addition to using the poles as demonstratives was harmless. Opp'n 14–15. Plaintiff further notes that Resh does not "identify any specific objectionable 'opinions drawn from that inspection.'" *Id.* at 15. For the first time in Reply, Plaintiff asserts that Dr. Feland disassembled the Skimlite 500 and Dually poles for the first time at the inspection and offered new opinions regarding whether the Dually had issues with slipping under massive force. Reply 7. Plaintiff argues that these opinions exceed the scope of Dr. Pratt's report and were not previously disclosed. *Id.*

The Court uses its discretion to consider opinions resulting from an undisclosed inspection identified for the first time in Plaintiff's reply. To the extent that new opinions exceeding the scope of Dr. Pratt's previous report resulted from the September 14, 2026, inspection, those opinions will be excluded. Otherwise, however, the Court adopts Defendants' reasoning as to the



United States District Court
Northern District of California

harmlessness of their failure to reserve a right to rely on the in-person inspection.

### 6. Conclusion

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's *Daubert* motion. The Court **GRANTS** Plaintiff's unopposed request not to introduce Dr. Pratt's expert report into evidence and unopposed request to strike Dr. Feland's opinion that Plaintiff's evidence is "insufficient to demonstrate copying as a matter of law." The Court likewise **GRANTS** Plaintiff's request that Defendants disclose the materials upon which Dr. Feland relied and its request that Dr. Feland's testimony resulting from the September 14, 2026, inspection be limited to opinions reflected in Dr. Pratt's report. All other requests are **DENIED**.

## V. CONCLUSION

In summary, the Court rules as follows:

- Plaintiff's MIL No. 1: **DENIED;**
- Plaintiff's MIL No. 2: **DENIED;**
- Defendants' MIL No. 1: **GRANTED;**
- Defendants' MIL No. 2: **DEFERRED;**
- Defendants' MIL No. 3: **GRANTED;**
- Defendants' MIL No. 4: **GRANTED IN PART** and **DEFERRED IN PART;**
- Plaintiff's Motion to Amend Exhibit and Witness Lists (ECF No. 206): **DENIED**;
- Plaintiff's Motion to Amend Exhibit List (ECF No. 208): **DENIED**;
- Plaintiff's Motion to Amend Exhibit List (ECF No. 221): **DENIED**;
- Plaintiff's Motion to Amend the Complaint (ECF No. 224): **DENIED;**
- Plaintiff's Motion for Leave to Conduct Limited Discovery (ECF No. 226): **DENIED**; and
- Plaintiff's *Daubert* Motion (ECF No. 238): **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: October 24, 2026

EDWARD J. DAVILA
United States District Judge