UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RESH, INC,

Plaintiff,

v.

BARRETT CONRAD, et al.,

Defendants.

Case No. 5:22-cv-01427-EJD

**ORDER GRANTING JOINT MOTION FOR VACATUR OF ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF No. 265

United States District Court
Northern District of California

Plaintiff, Resh, Inc. ("Plaintiff"), and Defendants Robert Conrad, Inc., d/b/a Skimlite Manufacturing, and James R. Conrad (collectively, "Defendants") jointly move this Court to vacate its Order on Cross Motions for Summary Judgment ("MSJ Order"). Mot., ECF No. 265; MSJ Order, ECF No. 248.

## I. BACKGROUND

On March 7, 2022, Plaintiff filed a complaint alleging patent infringement by Defendants and former Defendant Barrett Conrad ("Barrett Conrad"). ECF No. 1. The Court granted Defendants' motion to dismiss Plaintiff's complaint on March 31, 2023, and granted Plaintiff leave to file an amended complaint. ECF No. 71. Thereafter, the parties engaged in two rounds of motion to dismiss briefing, before arriving at the operative Second Amended Complaint (ECF No. 114). *See* Order Granting Defs' Mot. to Dismiss FAC, ECF No. 77; Order Granting in Part & Denying in Part MTD SAC, ECF No. 138.

Plaintiff filed a motion for summary judgment on June 19, 2024, seeking a finding that Defendants: infringed Resh's U.S. Pat. No. 11,141,852 (the '852 Patent); failed to prove the relevant '852 claims to be invalid; and failed to corroborate two items of alleged prior art. ECF

United States District Court
Northern District of California

No. 126. Defendants filed an opposition and cross motion for summary judgment of patent invalidity on July 17, 2024. ECF No. 129. The Court heard argument on the parties' cross motions on September 12, 2024. ECF No. 139. Based on the voluminous record before it, as well as the arguments presented during the proceedings, the Court issued an order granting in part and denying in party the parties' motions for summary judgment. MSJ Order, ECF No. 148. The Court found that Resh was entitled to summary judgment that Defendants' two-tube poles infringe claims 2, 11, 16, 18, 19, and 21 of the '852 Patent, and that Defendants' three-tube poles infringe claim 20. MSJ Order 36. The Court also found that Defendants were entitled to summary judgment that claims 1–3, 6–8, 11, 16, 18–19, and 21–24 of the '852 Patent were invalid as obvious under 35 U.S.C. §103. *Id.*

Three days after the Court's MSJ Order, Plaintiff sought leave to file a request for reconsideration of the MSJ Order, stating that "with all due respect, it appears that the Court's recent Order . . . reflects a 'manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court.'" Mot. for Leave to File Request for Reconsideration, ECF No. 150. The Court found that reconsideration was unwarranted for three reasons. Order Denying Mot. for Leave to File Mot. for Reconsideration 2, ECF No. 151. First, despite Plaintiff's assertions to the contrary, its pleadings and oral argument were not extensive on any long-felt need. *Id.* Second, the "Court *did* consider, and give due weight to, all the secondary considerations Resh presented, including any purported long-felt but unresolved needs, in reaching the ultimate conclusion on obviousness." *Id.* at 3 (citing MSJ Order 33–34). And third, even reviewing the issue again, the Court remained unconvinced that Resh's secondary considerations overcame the showing of obviousness made by Defendants. *See id.* at 3.

Following the Court's order denying Plaintiff's motion for leave to file a motion for reconsideration, the parties participated in a settlement conference with Magistrate Judge DeMarchi on June 26, 2025. ECF No. 157. The parties did not reach agreement, however, and continued with trial preparations in earnest, filing motions *in limine*, a proposed verdict form, and witness and exhibit lists. *See, e.g.*, ECF Nos. 168–174, 194–198. After trial was rescheduled once

United States District Court
Northern District of California

to allow Plaintiff's counsel time to depose Defendants' substituted technical expert, trial began with jury selection on November 2, 2026. ECF No. 262. With jury selection only partially completed, the parties expressed that they were interested in participating in further settlement discussions, mediated by Judge DeMarchi. ECF No. 261. Following negotiations which lasted approximately seven hours—and well into the night—the parties reached a settlement agreement that was contingent on this Court's vacatur of the MSJ Order. Mot. 1 ("the parties' settlement is conditioned on vacatur"). On November 4, 2026, following oral argument on November 3, 2026, the parties filed a joint motion requesting vacatur of the Court's MSJ order, and to the extent it is not mooted by the vacatur of the MSJ Order, the Order Denying Motion for Leave to File a Motion for Reconsideration (ECF No. 151). *Id.* The parties confirm that their settlement agreement is conditioned upon this court's granting their joint motion. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). This Rule provides district courts with "wide latitude to revise prior orders." *Atain Specialty Ins. Co. v. Reno Cab Co., Inc.*, No. 315CV00406MMDCBC, 2019 WL 320825, at *1 (D. Nev. Jan. 23, 2019). "A court has complete power over interlocutory orders made therein and has authority to revise them when it is 'consonant with equity' to do so." *De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2008 WL 4192033, at *1 (E.D. Wash. Aug. 27, 2008) (citing *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82 (1922)). A summary judgment order that does not fully adjudicate the rights and claims of the parties is interlocutory in nature. *See U.S. Gypsum Co. v. Pac. Award Metals, Inc.*, No. C 04-04941JSW, 2006 WL 1825705, at *1 (N.D. Cal. July 3, 2006); *Persistence Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626 (N.D. Cal. 2001).

In recent years, courts have looked to the factors articulated in *Cisco Sys., Inc. v. Telcordia Techs., Inc.*, to assess whether vacatur of interlocutory orders would be equitable. 590 F. Supp. 2d

United States District Court
Northern District of California

828, 830 (E.D. Tex. 2008); *see Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-CV-01858-EMC, 2021 WL 3373292, at *1 (N.D. Cal. Aug. 3, 2021); *Contour Hardening, Inc. v. Vanair Mfg., Inc.*, No. 114CV00026JMSMJD, 2016 WL 10490508, at *1 (S.D. Ind. Feb. 23, 2016); *RE2CON, LLC v. Telfer Oil Co.*, No. 2:10-CV-00786-KJM, 2013 WL 1325183, at *3 (E.D. Cal. Mar. 29, 2013). The "*Cisco*" factors are:

(1) The public interest in the orderly operation of the federal judicial system;

(2) The parties' desire to avoid any potential preclusive effect;

(3) The court's resources that will be expended if the case continues; and

(4) The parties' interest in conserving their resources.

*Cisco Sys., Inc. v. Telcordia Techs., Inc.*, 590 F. Supp. 2d at 830. Additionally, courts consider whether all the parties involved request and agree to vacatur as a condition of the proposed settlement action, whether a former party to the action would be adversely affected by vacatur, and whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement of the action. *Cuviello v. Cal Expo*, No. 2:11-CV-2456 KJM EFB, 2014 WL 1379873, at *3 (E.D. Cal. Apr. 8, 2014) (citing *De La O*, 2008 WL 4192033, at *1).

## III. DISCUSSION

The parties argue that on balance, all four *Cisco* factors weigh in favor of vacatur of the Court's MSJ Order. The Court addresses each of these factors in turn below.

### A. Orderly Operation of the Federal Judicial System (First Factor)

The court must consider the impact of vacating the MSJ Order on the orderly operation of the judicial system. *Cuviello*, 2014 WL 1379873, at *3. Although courts have noted the "public policy encouraging the settlement of private dispute[s,]" the Court is also keenly aware that "there is a 'systemic' interest in preserving district court judgments because 'they play a significant role in the development of decisional law by providing guidance to private parties with respect to the availability of remedies and to litigation strategy.'" *Automated Packaging Sys., Inc. v. Free Flow Packaging Int'l, Inc.*, No. 18-CV-00356-EMC, 2018 WL 6251051, at *2 (N.D. Cal. Nov. 29, 2018) (citing *Lycos, Inc. v. Blockbuster, Inc.*, No. C.A. 07-11469-MLW, 2010 WL 5437226, at *3

(D. Mass. Dec. 23, 2010)); *Cuviello*, 2014 WL 1379873, at *4. After all, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole [and] are not merely the property of private litigants." *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651 EMC, 2006 WL 3741946, at *7 (N.D. Cal. Dec. 19, 2006).

Further still, courts in this district have expressed concerns about permitting patent holders to litigate infringement issues, "only to settle and obtain vacatur of any unfavorable rulings." *Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2008 WL 1847183, at *2 (N.D. Cal. Apr. 23, 2008). If such a sequence of events became routine, "it would not only waste significant judicial resources, but could also relegate courts to playing the role of oddsmakers rather than adjudicators." *Cisco Sys., Inc.*, 2021 WL 3373292, at *2.

Here, the parties recognize concerns that vacatur may disincentivize parties from early settlement where litigants might test their legal arguments via full-blown motions practice and decision, before settling on the condition of vacatur. Mot. 5. Nonetheless, they argue that they did not use the court system to test legal theories, only to promptly settle after receiving an unfavorable decision. Rather, the parties litigated the action for a year and a half after the Court issued its MSJ Order. Therefore, the parties contend that the course of this litigation would not incentivize other parties to litigate up to, and until they received a judgment or order that they disliked, only to turn to vacatur as a remedy. *Id.* The parties explain that their settlement is a clear example of "settling on the courthouse steps," which is both consistent with the public policy in favor of settlement and conserves judicial resources that would be required for a two-week unnecessary jury trial. *Id.* at 6; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (strong judicial policy favoring settlement); *Salmonson v. Bed Bath & Beyond, Inc.*, No. CV 2011-2293-SVW-SS, 2013 WL 12171817, at *2 (C.D. Cal. Mar. 14, 2013) (same); *Ramparts, Inc. v. Weldon*, No. 2:10-CV-01665-GMN, 2011 WL 4527383, at *5 (D. Nev. Sept. 28, 2011) (same). Further, the parties, both small, family-owned companies, distinguish themselves from institutional litigants that may have sufficient resources to test out different theories, or that may face "likely" future litigation for which a settlement-contingent vacatur could eliminate or

United States District Court
Northern District of California

avoid potentially unfavorable orders in that litigation. *See* Mot. 6.

While the parties' points are well-taken, because vacatur can be abused as a mechanism for litigants to obtain a kind of trial run of the merits of their patent claims without being subject to binding consequences, thus potentially delaying settlement and wasting judicial resources, the Court finds that this factor weighs against vacatur. The Court is not convinced that vacatur here is not a mechanism for a party to avoid binding consequences of an unfavorable ruling.

**B. Potential Preclusive Effect (Second Factor)**

In *Cisco*, the court explained there is "logic in preventing a party from taking inconsistent positions in successive cases on issues that affect important public interests such as invalidity." *Cisco Sys., Inc.*, 2021 WL 3373292, at *3. The parties admit in their motion that the MSJ Order will lose any collateral estoppel effect once a final judgment is issued in this action. Mot. 7. But, even after vacatur, the Court's "well-reasoned opinion" will remain publicly accessible, as it has been published electronically, such that it "will not go to waste." Mot. 7–8. And as Counsel explained, the distinction is really between the "technical" application of collateral estoppel and the "practical" application of collateral estoppel. Practically, the Court's decision and analysis will remain available to future litigants, which may limit either party from taking inconsistent positions in future cases concerning the '852 patent. But simultaneously, vacatur avoids any potential "chilling" effect that the order could have on future entrepreneurial endeavors by the parties. *See cf. Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2023 WL 12282405, at *1 (N.D. Cal. Aug. 17, 2023) (noting concerns about "the potential chilling effect the order could have on technological development in this rapidly growing and changing arena"). Further, unlike in *Cisco*, where the risk of defendant taking inconsistent positions was "especially acute" because the plaintiff had several pending matters before the same court involving the same patent, the parties aver that they are "not driven by a desire to 'buy and bury' an adverse ruling as part of an overall litigation strategy." Mot. 8.

In view of these considerations, this factor is neutral.

**C. Time and Resources of the Court and Parties (Third and Fourth Factors)**

The parties contend that their settlement "and thus vacatur would undoubtedly conserve judicial and party resources." Mot. 3. The Court agrees that if the parties were to complete jury selection and proceed with the anticipated two-week jury trial, the Court, the parties, and the jurors would invest substantial time and resources. *Id.* After trial, the Court and the parties would likely continue to invest resources to resolve post-trial motions and to the extent appealed, the Circuit Court's resources would also be taxed. *See White v. Shen*, No. C09-0989 BZ, 2011 WL 2790475, at *2 (N.D. Cal. July 13, 2011). Aside from investing resources to resolve numerous motions to date, the Court has also invested significant resources to assist the parties in reaching this settlement. Mot. 4. Most recently, Magistrate Judge DeMarchi accommodated the parties' impromptu settlement conference which lasted approximately seven hours, ending around 9:00 PM. *Id.*

As discussed elsewhere in this order, where the parties are small, family-owned businesses, the Court is particularly cognizant of how continued litigation and a multi-week trial represent a significant drain on the parties' resources that may be avoided by settlement. *Id.* at 3 ("the financial burden caused by trial will be meaningful"). The Court recognizes the value that small entrepreneurial endeavors offer to society, and, especially where the parties have otherwise agreed to settlement terms, finds that this factor weighs particularly heavily in favor of granting the parties' request for vacatur to preserve the resources of the Court, parties, and prospective jurors. *See Cuviello*, 2014 WL 1379873, at *3 (weight to be given to the fact that settlement is expressly conditioned on vacatur); *U.S. Gypsum Co.*, 2006 WL 1825705, at *1 (same); *Weisberg v. Unum Life Ins. Co. of Am.*, No. 21-CV-07422-EMC, 2024 WL 1120384, at *1 (N.D. Cal. Mar. 13, 2024) (same).

**D. Remaining Considerations**

Finally, the Court evaluates several remaining considerations, each of which favor vacating the Order. *Cuviello*, 2014 WL 1379873, at *3. First, the parties' contingent settlement agreement was a negotiated compromise reached without either party exercising undue influence over the

United States District Court
Northern District of California

other. Mot. 9. Second, no former party to the action will be adversely affected by a vacatur—Barrett Conrad, the only former party—signed the agreement on behalf of Skimlite and claims against Barrett Conrad were dismissed in this action before the Court's MSJ Order. *Id.* And finally, the parties explain that this case does not "involve the type of constitutional or statutory interpretation questions that affect the rights and obligations of the public as a whole." *Id.*; *see De La O*, 2008 WL 4192033, at *1.

***

Balancing all of these factors, the Court concludes that the overriding consideration is the beneficial effect of the settlement of the parties. This outweighs the other factors the Court has considered. That said, the Court remains concerned with the potential effect on the public interest in maintaining the integrity of the justice system. The public interest in the MSJ Order remains the same as when the Court issued it. Indeed, in seeking vacatur of the orders, the parties note the MSJ Order is "well-reasoned." The parties have not asked that the Court—nor will it—disturb the reasoning, rationale, or decisions of the MSJ Order. The Court abides by its ruling on the merits. While the ruling of a district court is not binding on other district court judges, the MSJ Order has been electronically published by both Westlaw, 2025 WL 770363, and Lexis, 2025 U.S. Dist. LEXIS 44328. It is also available on the court's docket to anyone who has internet and PACER access. The Court encourages future courts and litigants to consider the Court's analysis for any persuasive guidance that it may offer.

## IV. CONCLUSION

For the foregoing reasons, the Court VACATES its Order on Cross Motions for Summary Judgment to permit settlement of this action. To the extent it is not mooted by vacatur of the underlying order, the Court's Order Denying Plaintiff's Motion for Leave to File a Motion for Reconsideration is also VACATED.

///

///

///

**IT IS SO ORDERED.**

Dated: November 5, 2026

EDWARD J. DAVILA
United States District Judge